1  LOCKE LORD BISSELL & LIDDELL LLP
2  Daniel A. Solitro (SBN: 243908)
   dsolitro@lockelord.com
3  300 South Grand Avenue, Suite 2600
4  Los Angeles, California 90071
   Telephone:  213-485-1500
5  Facsimile:  213-485-1200

6

7  Attorneys for Defendant
   INTERNATIONAL LEASE FINANCE CORPORATION
8

FILED
CLERK, U.S. DISTRICT COURT

MAR 16 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

9            UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11

12  MMADI MLATAMOU HASSANATI,          )  CASE NO.
    individually, as heir and as Successor in )  **CV11-02251** MMM (MANx)
13  Interest to MOHAMED ABDOU SAID,    )
14  deceased; MMADI MLATAMOU          )  **DEFENDANT INTERNATIONAL**
    HASSANATI, as Guardian ad Litem for )  **LEASE FINANCE**
15  MMADI MLATAMOU RAFIK, MMADI       )  **CORPORATION'S NOTICE OF**
16  MLATAMOU RAHIMA, MOHAMED          )  **REMOVAL OF ACTION UNDER**
    RAKIB, MMADI MLATAMOU HAIRIA,      )  **28 U.S.C. §§ 1369, 1441 AND 1446**
17  and MMADI MLATAMOU HAIRATI,       )
    minors and heirs to MOHAMED ABDOU )
18  SAID, deceased,                    )
19                                     )  [Removed from Superior Court of
              Plaintiff,               )  California, County of Los Angeles –
20                                     )  Case No. BC452279]
21       vs.                           )
22  INTERNATIONAL LEASE FINANCE       )
    CORPORATION and DOES 1-100,        )  Complaint Filed:  January 10, 2010]
23                                     )
24            Defendant.               )

25

26

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1  TO THE CLERK OF THE UNITED STATES DISTRICT COURT AND ALL

2  INTERESTED PARTIES OF RECORD:

3      PLEASE TAKE NOTICE that defendant International Lease Finance

4  Corporation ("ILFC"), through its undersigned counsel, hereby removes the above-

5  captioned action from the Superior Court of California, County of Los Angeles, to the

6  United States District Court for the Central District of California.  Removal is

7  pursuant to 28 U.S.C. § 1369, 1441 and 1446.

8  **I.    INTRODUCTION**

9      Plaintiffs' Complaint seeks damages for wrongful death and survival arising out

10  of the June 30, 2009 crash of an Airbus A310-300 bearing Yemeni registration ADJ-

11  70 and operated as Yemenia Airlines Flight IY 626 ("Subject Aircraft").  A true and

12  correct copy of the plaintiffs' Complaint is attached hereto in Exhibit A.

13      According to an initial report issued by the Yemen government through its

14  Canadian Embassy, the Subject Aircraft departed Sana'a, Yemen at 9:56 p.m. local

15  time on June 29, 2011 carrying 142 passengers and 11 crew members and was bound

16  for Moroni, the capital city of the island nation of Comoros.  *See* Exhibit B (Initial

17  Report); *see also* Complaint at ¶22.  The flight was scheduled to arrive at Moroni-

18  Prince Said Ibrahim International Airport at approximately 2:00 a.m. local time on

19  June 30, 2011, but during an approach to land, the Subject Aircraft crashed into the

20  Indian Ocean ("the Accident").  *Id*.; *see also* Complaint at ¶¶22-23.  One passenger

21  aboard the aircraft survived the Accident.  *Id*.  Of the 153 people on board the Subject

22  Aircraft, 75 were Comoran, 65 were French, 6 were Yemeni, 2 were Moroccan, 1 was

23  Canadian, 1 was Palestinian, 1 was Ethiopian, and 1 was Filipino.  *Id*.  Pursuant to

24  Annex 13 of the Convention on International Civil Aviation, representatives of

25  Yemen, Comoros and France are jointly leading an investigation of the Accident. *Id*.

26      Plaintiffs in this action are alleged to be heirs, successors in interest of, or to

27  represent minor heirs, of the deceased passenger, Mohamed Abdou Said. *See*

28  Complaint ¶¶1-4.  Plaintiffs filed their Complaint in the Superior Court of the State of

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    California for the County of Los Angeles on January 10, 2010 as Case No. BC452279.
2    Additionally, prior to the filing of the instant Complaint, plaintiffs Mrs. Hassanati
3    Mmadi Mlatamou (the alleged spouse of the decedent), Ms. Rahima Mmadi
4    Mlatamou (the alleged minor step-daughter of the decedent) and Mr. Rakib Mohamed
5    (the alleged minor son of the decedent) filed claims, as did other alleged relatives and
6    heirs of the decedent, against Yemenia Airways in Aix-en-Provence, France.  Certain
7    of these actions remain pending in France.

8         In the instant action, Plaintiffs specifically named only ILFC as a defendant and
9    initiated substitute service of process as of February 14, 2011, completing same per
10   Cal. C.C.P. § 415.20 on February 25, 2011.  Defendant ILFC is a California
11   corporation that has its principal place of business in California.  Plaintiffs have also
12   named 100 DOE defendants.  A true and correct copy of the February 14, 2011
13   Summons is attached hereto as Exhibit C.  Accordingly, the removal of this action is
14   timely.

15              **II.     GROUNDS FOR REMOVAL**

16        This action is removable pursuant to the Multiparty, Multiforum Trial
17   Jurisdiction Act of 2002 (MMTJA), 28 U.S.C. §§1369, 1441(a) and 1441(e)(1)(A).
18   Title 28 U.S.C. § 1441(a) authorizes removal of "any civil action brought in State
19   court of which the district courts of the United States have original jurisdiction."  The
20   MMTJA provides:

21        (a)   In general.–The district courts shall have original jurisdiction of any
22             civil action involving minimal diversity between adverse parties that
23             arises from a single accident, where at least 75 natural persons have
24             died in the accident at a discrete location, if–
25             (1)   a defendant resides in a State and a substantial part of the
26                  accident took place in another State or other location, regardless
27                  of whether that defendant is also a resident of the State where a
28                  substantial part of the accident took place;

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1      (2)   any two defendants reside in different States, regardless of

2             whether such defendants are also resident of the same State or

3             States; or

4      (3)   substantial parts of the accident took place in different States.

5             28 U.S.C. §1369(a).

6      Accordingly, this Court has original jurisdiction when: 1) there is minimal

7 diversity between the parties; 2) the action arises from a single accident at a discrete

8 location, where at least 75 natural persons have died; and, 3) one defendant resides in

9 one state and a substantial part of the accident took place in another state or country.

10 There is no amount in controversy requirement for jurisdiction under the MMTJA and

11 a case remains removable under 28 U.S.C. §§1369 and 1441(e) even if a defendant is

12 a citizen of the state where the action is brought. *See* 28 U.S.C. §1441(e)(1).

13      As explained in more detail below, these three requirements are present here.

14 There is minimal diversity between the parties, the case arises from a single accident

15 involving 152 deaths at a discrete location, and the accident occurred at a location

16 outside of California – the domicile of the only named defendant.   In short, this case

17 is removable.

18 **A.**    **There is Minimal Diversity.**

19      The first requirement to original federal jurisdiction under the MMTJA is that

20 there is at least minimal diversity between the parties.  Pursuant to 28 U.S.C.

21 §1369(c)(1), "minimal diversity exists between adverse parties if any party is a citizen

22 of a State and any adverse party is a citizen of another State, a citizen or subject of a

23 foreign state, or a foreign state as defined in section 1603(a) of this title".  Plaintiff

24 Mmadi Mlatamou Hassanati filed individually, as an heir and Successor In Interest to

25 the deceased and as Guardian ad Litem for minors and heirs of the deceased. The

26 decedent was, and plaintiff Mmadi Mlatamou Hassanati is, a citizen of Comoros and

27 resident of France.  ILFC is, and was at the time plaintiffs filed this action, a

28 California corporation with its principal place of business in Los Angeles, California.

1   Pursuant to 28 U.S.C. §1369(c)(2), ILFC is a citizen of California for purposes of the

2   MMTJA.

3        Thus, minimal diversity exists sufficient to satisfy 28 U.S.C. §1369(a).

4   **B.    The Single Accident, 75 Deaths, and Discrete Location Requirement Are**

5        **Satisfied.**

6        The second requirement to federal jurisdiction under the MMTJA is that the

7   civil action arises from a single accident in which at least 75 persons died at a discrete

8   location. *See* 28 U.S.C. §1369(a).  The single accident in this instance was the crash

9   of the Subject Aircraft on June 30, 2009.  There were reported to be 142 passengers

10  and 11 crew members on the flight, with only 1 survivor. *See* Exhibit B; *see also*

11  Complaint ¶23.  Thus, the crash of the Subject Aircraft was a single accident in which

12  more than 75 persons died at a discrete location satisfying the second requirement of

13  the MMTJA.

14  **C.    One Defendant Resides at a Location Other Than where a Substantial Part**

15       **of the Accident Occurred.**

16       The third requirement to federal jurisdiction under the MMTJA is that the civil

17  action also satisfies one of the criteria of 28 U.S.C. §1369 (a)(1)-(3): 1) a defendant

18  resides in a State and a substantial part of the accident took place in another State or

19  other location, regardless of whether that defendant is also a resident the State

20  where a substantial part of the accident took place; 2) any two defendants reside in

21  different States, regardless of whether such defendants are also residents of the same

22  State or States; or 3) substantial parts of the accident took place in different States.

23  Here, ILFC resides in California and the accident took place near Comoros in the

24  Indian Ocean, satisfying at least the first of the noted criteria.

25  **D.    28 U.S.C. §1369(b) Does Not apply**

26       28 U.S.C. §1369(b) requires the district court to abstain from hearing any civil

27  action as described in 28 U.S.C. §1369(a) when, "1) the substantial majority of all

28  plaintiffs are citizens of a single State of which the primary defendants are also

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1   citizens; and 2) the claims asserted will be governed primarily by the laws of that

2   State." As noted above, the deceased was a resident of France and citizen of Comoros

3   as is the plaintiff. Additionally, ILFC is, per 28 U.S.C. §1369(c)(2), a citizen of

4   California. Further, of the 142 passengers, 65 were French, 75 were Comoron and

5   none were American. Abstention under Section 1369(b) does not apply.

6   **E.   All other Requirements for Removal are Satisfied**

7        Venue of this removed action is proper pursuant to 28 U.S.C. §1441(a) because

8   this Court is the United States District Court for the district and division embracing

9   the place where the removed action was pending.

10       Consent from all the defendants is not required for removal pursuant to the

11  MMTJA. Nevertheless, there are no other named defendants.

12       In accordance with 28 U.S.C. 1446(a), a copy of all pleading and papers that

13  have been served on ILFC in the state court litigation and all of the pleading and

14  papers on file with the state court available as of the date of removal are attached

15  hereto in Exhibits A and C.

16       In accordance with 28 U.S.C. 1446(d), ILFC is today serving this notice of

17  removal on plaintiffs and will file a copy of this Notice with the Clerk of the Superior

18  Court for the State of California for the County of Los Angeles.

19                    **III.   CONCLUSION**

20       This action is properly removed to the Central District of California pursuant to

21  28 U.S.C. §§ 1369, 1441(a) and 1441(e)(1)(A). By this Notice of Removal and the

22  associated attachments, ILFC does not waive any objections as to service, jurisdiction

23  or venue, or any other defenses or objections to this action. ILFC intends no

24  admission of fact, law or liability by this Notice and expressly reserves all defenses,

25  motions and/or pleas.

26

27       WHEREFORE, defendant ILFC respectfully removes this action from the

28  Superior Court of the State of California Los Angeles County, bearing Case No.
    BC452279, to this Court pursuant to 28 U.S.C. §§1369, 1441, and 1446

*Locke Lord Bissell & Liddell LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA, 90071-3119*

1   Dated:  March 16, 2011        LOCKE LORD BISSELL & LIDDELL LLP

2

3

4                           By:      _____

                                   Daniel A. Solitro

5

6                    Attorney for Defendant

7                    INTERNATIONAL LEASE FINANCE
                    CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

International Lease Finance Corporation's Notice of Removal

EXHIBIT A

1  WALTER J. LACK, ESQ. (SBN 57550)
    MARK E. MILLARD, ESQ. (SBN 175169)
2  ENGSTROM, LIPSCOMB & LACK
    A Professional Corporation
3  10100 Santa Monica Boulevard, 12th Floor
    Los Angeles, CA 90067-4107
4  Tel.: (310) 552-3800
    Fax: (310) 552-9434
5  Email: wlack@elllaw.com
    Email: mmillard@elllaw.com
6
    THOMAS V. GIRARDI, ESQ. (SBN 36603)
7  KEITH D. GRIFFIN, ESQ. (SBN 204388)
    **GIRARDI & KEESE**
8  1126 Wilshire Boulevard
    Los Angeles, California 90017
9  (213)977-0211; Fax (213) 481-1554
    Email: tgirardi@girardikeese.com
10
    Attorneys for Plaintiffs,
11  Mmadi Mlatamou Hassanati,
    Mmadi Mlatamou Rafik, Mmadi Mlatamou Rahima,
12  Mohamed Rakib, Mmadi Mlatamou Hairia, and
    Mmadi Mlatamou Hairati

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 10 2010

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A.E. LaFLEUR-CLAYTON

14         SUPERIOR COURT OF THE STATE OF CALIFORNIA

15            FOR THE COUNTY OF LOS ANGELES

16

17  MMADI MLATAMOU HASSANATI,  )  CASE NO.:
    individually, as heir and as Successor in  )  **BC452279**
18  Interest to MOHAMED ABDOU SAID,  )
    deceased; MMADI MLATAMOU  )  COMPLAINT FOR DAMAGES FOR
19  HASSANATI, as Guardian ad Litem for  )  WRONGFUL DEATH
    MMADI MLATAMOU RAFIK, MMADI  )
20  MLATAMOU RAHIMA, MOHAMED  )
    RAKIB, MMADI MLATAMOU HAIRIA,  )
21  and MMADI MLATAMOU HAIRATI,  )
    minors and heirs to MOHAMED ABDOU  )
22  SAID, deceased,  )
               )
23               )
          Plaintiffs,  )
24               )
      vs.  )
25               )
    INTERNATIONAL LEASE FINANCE  )
26  CORPORATION and DOES 1-100,  )
               )
27               )
          Defendants.  )
28

344122.1                1

COMPLAINT

Exhibit A, Pg. 8

1       Plaintiffs, MMADI MLATAMOU HASSANATI, individually, as heir and as Successor in Interest

2 to MOHAMED ABDOU SAID, deceased and MMADI MLATAMOU HASSANATI, as Guardian ad Litem

3 for MMADI MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI

4 MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI, minors and heirs to MOHAMED ABDOU

5 SAID, deceased, sue the defendant, INTERNATIONAL LEASE FINANCE CORPORATION and DOES

6 1-100, and in support thereof allege as follows:

7

8                                __GENERAL ALLEGATIONS__

9       1.     Plaintiff, MMADI MLATAMOU HASSANATI, is filing this action individually, as heir and

10 as Successor in Interest to her late husband MOHAMED ABDOU SAID, deceased.

11       2.     Plaintiff, MMADI MLATAMOU HASSANATI, is also filing this action as Guardian ad

12 Litem for MMADI MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB,

13 MMADI MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI, minors and heirs to their father

14 MOHAMED ABDOU SAID, deceased.

15       3.     Plaintiff, MMADI MLATAMOU HASSANATI, individually, as the heir of MOHAMED

16 ABDOU SAID, deceased, and as Guardian ad Litem for her five surviving children, MMADI MLATAMOU

17 RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and

18 MMADI MLATAMOU HAIRATI, minors, hereby asserts a wrongful death claim for the death of the

19 deceased, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court

20 deems to apply.

21       4.     Plaintiff, MMADI MLATAMOU HASSANATI, as successor in interest, hereby asserts

22 survivors claims on behalf of MOHAMED ABDOU SAID, deceased, pursuant to California Code of Civil

23 Procedure, Sections 377.10, 377.20 and 377.30 et. seq. and thereby succeeds to causes of action that might

24 have been brought by decedent. Plaintiff will execute and file a declaration under penalty of perjury as

25 required by California Code of Civil Procedure, Section 377.32.

26       5.     Plaintiffs are informed and believe and thereon allege that defendant, INTERNATIONAL

27 LEASE FINANCE CORPORATION (hereinafter referred to as "ILFC") is and at all times herein

28 mentioned was a corporation duly organized and existing under the laws of the State of California with its

COMPLAINT

Exhibit __A__, Pg. __9__

1 | principal place of business in Los Angeles, California. Plaintiffs are further informed and believe and

2 | thereon allege that defendant, ILFC is and at all times herein mentioned was a corporation, regularly doing

3 | business in the State of California, including, but not limited to, Los Angeles County, California.

4 |       6.    Plaintiffs are further informed and believe and thereon allege that, defendant ILFC is in the

5 | business of owning and leasing aircraft to airlines on a worldwide basis.

6 |       7.    Plaintiffs are further informed and believe and thereon allege that, defendant ILFC, owned,

7 | leased, operated, serviced and/or maintained that certain 1990 Airbus Model A310-300 aircraft bearing, at

8 | the time of the crash, a Yemin registration of 70-ADJ (hereafter "ACCIDENT AIRCRAFT").

9 |       8.    Plaintiffs are further informed and believe and thereon allege that, defendant ILFC, as part

10 | of its Master Lease Agreements provides that:

11 |           A.    The title to the ACCIDENT AIRCRAFT remains vested in ILFC;

12 |           B.    ILFC shall have the right to inspect the ACCIDENT AIRCRAFT at any time upon

13 |               reasonable notice;

14 |           C.    The ACCIDENT AIRCRAFT shall maintain affixed to its airframe and engine at

15 |               all times identification plates stating that "This Aircraft/Engine is owned by

16 |               International Lease Finance Corporation";

17 |           D.    Insurance will be maintained that provides for ILFC to be named as an additional

18 |               insured;

19 |           E.    To return the ACCIDENT AIRCRAFT to ILFC in the United States at the end of

20 |               the lease term;

21 |           F.    That the lease is being delivered in the State of California and will in all respects be

22 |               governed and construed in accordance with the laws of the State of California.

23 |       9.    Plaintiffs are informed and believe that in approximately September 1999, as part of its

24 | Aircraft Lease Services, ILFC entered into an Aircraft Lease Agreement with Yemenia Airlines, owned by

25 | the Governments of Yemen and Saudi Arabia (Yemen is a 51% owner and the Government of Saudi Arabia

26 | owns the other 49%) and headquartered in Yemen.

27 |       10.    The Yemenia Airlines Lease Agreement entrusted the ACCIDENT AIRCRAFT to Yemenia

28 | Airlines for use in commercial passenger transportation.

344122.1

3

COMPLAINT

Exhibit A , Pg. 10

11.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100 and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of such fictitiously-named defendants is tortuously responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages were proximately caused by the acts or omissions of each of them.

12.    Defendant and DOES 1-100 are and at all times mentioned herein were the agents, servants and employees and/or joint venturers of their co-defendants and, in doing the things herein alleged, were acting within the course, scope, purpose and authority of said agency, employment, and/or joint venture and as agents, servants and employees acted with the permission and consent of their co-defendants and/or said acts and/or actions were ratified by their co-defendants. That each and every defendant as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every defendant as an agent, servant, employee or joint venturer.

13.    At all times herein mentioned, Defendant and DOES 1-100, and each of them, were in the business of designing, manufacturing, fabricating, converting, maintaining, repairing, modifying, assembling, servicing, inspecting, warrantying, advertising, marketing, distributing, selling, buying, leasing, operating, flying and/or chartering aircraft and aircraft component parts, including the ACCIDENT AIRCRAFT and its component parts, for use in international commerce, including California, and for use by pilots transporting passengers, as well as others. Defendants knew, or in the exercise of reasonable care should have known, that the ACCIDENT AIRCRAFT and its component parts would be used in the manner for which they were designed and manufactured, including transporting passengers and would be used without inspection for defects in parts, mechanisms or design.

14.    This Complaint brings claims seeking damages under California's survival and wrongful death Statutes by the Plaintiffs and heirs of MOHAMED ABDOU SAID, deceased, who was a fare paying passenger killed onboard the ACCIDENT AIRCRAFT.

15.    On June 30, 2009, Plaintiffs' late husband and father, MOHAMED ABDOU SAID, deceased, was a passenger on the ACCIDENT AIRCRAFT and was killed in the crash of the ACCIDENT AIRCRAFT when it plunged into the Indian Ocean after a failed approach into the Moroni-Prince Said

Ibrahim International Airport in Moroni, Comoros.

16.   The Comoros Islands lie in the Indian Ocean East of Africa closest to Mozambique and West of Madagascar.  Moroni, the capital of the Comoros Islands, is located on Grande Comore (also known as Njazidja) the largest of the four semi-autonomous islands which make up the Comoros archipelago.  The Comoros islands were under French rule until three of the four declared independence in 1975, while the fourth island within the archipelago of Comoros, Mayotte, remained under French control.  The Comoros Islands maintain a strong French connection.

17.   The Accident flight, for many of the passengers, originated on Monday June 29, 2009 at approximately 8:55 a.m., local time, when a Yemenia Airlines Airbus A330-200 designated as Flight number IY 749, departed Charles de Gaulle International Airport, Paris, France destined for Sana'a, Yemen.

18.   Yemen is located on the coast of the Arabian Sea and lies between Saudi Arabia to the North and Ethiopia across the Red Sea to the South.  The Comoros Islands are approximately 2,900 kilometers (1,800 miles) South of Yemen.

19.   Yemenia Flight IY 749, first flew from Paris to Marseille in Southern France with approximately 67 passengers onboard. While stopped in Marseille, the flight took on additional passengers, including Plaintiffs' decedent, then totaling approximately 100 when it departed Marseille heading directly to Sana'a, Yemen.

20.   After arriving in Sana'a, the passengers were caused to deplane and board another Yemenia aircraft, an older model Airbus, an A310-300, registered 70-ADJ, the ACCIDENT AIRCRAFT.  During this process, additional passengers from various Arab states joined the flight. The change of planes was required because the ACCIDENT AIRCRAFT was barred from entering French air space due to serious and long standing maintenance deficiencies for which Yemenia was prohibited from landing this aircraft in France and departing directly to Comoros.  To avoid the prohibition, Yemenia brought French and other passengers out of France on an aircraft permitted to fly in French airspace, to be then transferred in Sana'a, unbeknownst to them, onto the ACCIDENT AIRCRAFT for the remainder of the flight to the Comoros Islands.

21.   The Accident flight, then designated as Flight number IY 626, departed Sana'a at approximately 8:00 p.m. local time headed first on a short flight to Djibouti, located south of Yemen and

COMPLAINT

Exhibit  A , Pg. 12

1   just across the Red Sea on the Gulf of Aden coast.

2       22.   The final and ill-fated leg of Flight IY 626, departed from Djibouti at approximately 9:45 pm

3   local time for its final destination, a four hour flight to the Moroni-Prince Said Ibrahim International Airport

4   (hereafter the "Moroni Airport") in Comoros.

5       23.   Yemenia Flight IY 626 never reached the Moroni airport. As the **ACCIDENT AIRCRAFT**

6   was approaching the Moroni Airport, Air Traffic Control lost contact with the aircraft at approximately 1:51

7   a.m. local time. It was discovered that Flight IY 626 crashed into the Indian Ocean, approximately 8 nautical

8   miles from the coast of Grande Comore, on a failed approach to the airport just minutes before landing. All

9   persons onboard perished in the crash excepting one 14 year old girl who miraculously survived.

10       24.   Plaintiffs are informed and believe and thereon allege that, prior to September 1999 and at

11   all material times thereafter, ILFC had reason to know and did know or, in the exercise or reasonable

12   diligence should have known, that Yemenia Airlines, was incompetent, unfit, inexperienced and/or reckless

13   in its operation as an air carrier, evidenced by, but not limited to, a long and notorious history of poor

14   maintenance on an epic scale, poor pilot training and total lack of compliance with minimum standards of

15   safety at every level of the company from 1999 to the present, as more fully set forth below:

16       A.   Since 2004, the state of Yemen and the Yemenia state owned company has violated

17   clauses of the Chicago Convention of December 7, 1944 on international civil aviation. This convention,

18   aimed at providing for the safe and orderly development of civil aviation by the International Civil Aviation

19   Organization, requires compliance by all signatory States, including, specifically requisites that concern

20   aviation safety.

21       B.   Yemen ratified the Chicago Convention on April 17, 1964.

22       C.   The International Civil Aviation Organization (ICAO), established uniformity in

23   aviation standards necessary for safety, reliability, regularity and efficiency of air services through

24   established practices and procedures. In practice, compliance with the Convention is reflected in the

25   implementation and adoption of its Standards and Recommended Practices ("SARPs") that address 18

26   specific topics.

27           (1).   Licenses;

28           (2).   Air Regulation;

344122.1                                    6

COMPLAINT

Exhibit _A_, Pg. _13_

(3).   Meteorology;

(4).   Aeronautical Charts;

(5).   Units of measurement in Air/Ground communications;

(6).   Aircraft Operations;

(7).   Nationality marks and registration;

(8).   Certificates of Airworthiness;

(9).   Facilitation;

(10).   Aeronautical Telecommunications;

(11).   Air Traffic Services;

(12).   Search and Rescue;

(13).   Accident Investigations;

(14).   Airfields;

(15).   Aeronautical Information Services;

(16).   Aircraft Noise;

(17).   Safety and protection of international civil aviation against unlawful acts;

(18).   Aviation security of dangerous goods.

D.   The ICAO inspectors had visited the Yemenia Airlines facilities in April 2004 to audit the correct application of ICAO standards. The ICAO Inspector's audit revealed noncompliance with many of the 18 uniform standards, including, but not limited to, the following:

(1).   The regulation of Yemen is, in all respects, inconsistent with ICAO SARPs standards.

(2).   The requisite policies and/or training programs for technical staff have not been established.

(3).   The Flight Operations Division suffers from a lack of qualified and experienced inspectors.

(4).   A comprehensive system for the certification and supervision of air operators required by Annex 6 has not been established.

(5).   The CAMA [Yemen civil aviation] does not comply, in many ways,

Exhibit _A_, Pg. _14_

1        with the SARPs of Annex 6, Chapter 8 and 11 and Annex 8 regarding

2        the supervision of airworthiness of aircraft and control.

3        (6).    A comprehensive global system for maintenance, maintenance

4        programs and to ensure continuous compliance with the requisites of

5        Annex 6 have not been established.

6        (7).    The Yemenia inspectors responsible for the airworthiness of aircraft

7        are not properly qualified and/or experienced to perform their

8        respective roles as inspectors.

9        (8).    Yemenia's Inspectors lack proper training, its regulations are not

10       properly updated and it's documentation and procedures have not

11       been properly developed.

12       E.    The ICAO audit demonstrated that, at least as of April 2004, inadequate resources had

13  been implemented for aircraft maintenance in clear violation of international safety standards established by

14  ICAO.

15       F.    On July 24, 2008, four years after operational and maintenance failures were cited in

16  the ICAO audit, the European Commission noted Yemenia's non-compliance with air safety, stating in

17  Regulation (EC) No 715 of July 24, 2008:

18       *"It is clear that the carrier Yemenia - Yemen Airways does not satisfy*

19       *certain specific safety standards established by the Chicago Convention*

20       *when it operates within the Community. These deficiencies have been*

21       *identified by the competent authorities of France, Germany and Italy,*

22       *during ground inspections performed under the SAFA program."*

23       G.    According to the European Commission, the French Civil Aviation Central Office

24  (DGAC) has identified four safety violations in 2005, six violations in 2006, four violations in 2007 and two

25  violations in 2008 on Yemenia company aircraft according to the following reports from the DGAC:

26       (1).    DGAC / F-2005-270; DGAC / F-2005-1291; DGAC / F-2005-471; DGAC /

27       F-2005-1054;

28       (2).    DGAC / F-2006-60; DGAC / F-2006-1465; DGAC / F-2006-1760; DGAC /

344122.1                                8

COMPLAINT

Exhibit A , Pg. 15

1       F-2006-716; DGAC / F-2006-2066; DGAC / F-2006-601;

2    (3).  DGAC / F-2007-1332; DGAC / F-2007-119; DGAC / F-2007-2066; DGAC/

3       F-2007-1002;

4    (4).  DGAC / F-2008-478; DGAC / F-2008-1129.

5   H.  The Federal Office of German Civil Aviation (LBA) has also detected three safety

6 violations in 2006 and one in 2007 on Yemenia Airlines aircraft.

7    (1).  LBA/D-2006-47; LBA/D-2006-103; LBA/D-2006-157;

8    (2).  LBA/D-2007-477.

9   I.  Additionally, the Authority of the Italian Civil Aviation (ENAC) has also identified

10 three safety violations in 2005, one violation in 2006 and one in 2008 concerning Yemenia Airlines aircraft:

11    (1).  ENAC-IT-2005-51 ; ENAC-IT-2005-218 ; ENAC-IT-2005-648;

12    (2).  ENAC-IT-2006-330;

13    (3).  ENAC-IT-2008-126.

14   J.  The European Commission added that a corrective action plan was submitted on May

15 26, 2008, based on recommendations made by Airbus, but that it did not in any way solve the detected

16 problems. In particular, serious deficiencies persist in it's safety program, technical operations, ground and

17 flight training, as well as, it's maintenance and engineering technical library. Also, Yemenia Airlines has been

18 invited by the Commission to provide further clarification regarding the revised corrective action plan.

19   K.  The European Agency of Aviation Safety (EASA) discovered during a February 24,

20 2009 inspection of the Yemenia Airlines headquarters in Sana'a Yemen, serious maintenance deficiencies

21 resulting in an immediate suspension of the approval No. EASA.145.0177 for it's maintenance program.

22   L.  Following the findings of EASA, the French authorities also suspended the

23 airworthiness certificates of the Yemenia aircraft registered in France, specifically, two Airbus A-310s -

24 registered as F-OHPR and F-OHPS, respectively. The ACCIDENT AIRCRAFT, an Airbus A310-300

25 registered 70-ADJ was registered and provided its certificate of airworthiness in Yemen. As stated above,

26 Yemen and Yemenia Airlines were the focus of continuous monitoring, oversight and audits by the ICAO,

27 DGAC, LBA, the ENAC and EASA resulting in repeated citations for demonstrated deficiencies in air safety.

28   M.  Because Yemenia's aircraft was not permitted to enter French airspace and/or land in

1   France, the decedent was caused to change planes in Sana'a and board The ACCIDENT AIRCRAFT, an

2   Airbus A310-300 registered 70-ADJ with a destination of Comoros.

3        25.     Consequently, during the early morning hours of June 30, 2009, the A310-300 owned by

4   ILFC and Leased to Yemenia, the ACCIDENT AIRCRAFT, crashed at sea on a failed approach to the

5   Moroni Airport killing Plaintiffs' decedent.

6        26.     Plaintiffs are further informed and believe and thereon allege that, two weeks after the

7   accident, the European Commission adopted EC Regulation No. 619/2009 of July 13, 2009 that "[was] taking

8   note of the violations of regulations" applicable to the Yemenia airline and which referred to "official

9   discussions" with this company to assess the compliance of its operations and the maintenance of its aircraft

10   with ICAO standards.

11        27.     The operational, maintenance and safety failures of Yemenia Airlines have resulted in

12   numerous aviation accidents culminating in the subject crash taking the lives of all on board, excepting one.

13   These prior accidents include, but are not limited to, the following:

14        A.     Plaintiffs are informed and believe that, on or about June 26, 2000, a Boeing 737-

15   200C, registered 70-AQC, operated by Yemenia, during a Yemenia flight destined for Khartoum-Civil

16   Airport (KRT/HSSS) Sudan was involved in a failed landing due to pilot error. This 16 year old Boeing was

17   first flown June 14, 1984. Despite plans to carry out a runway 36 approach, the crew landed straight-in on

18   runway 18. As a result, the aircraft departed the left side of the runway. The nose gear collapsed as it

19   contacted obstructions.

20        B.     Plaintiffs are informed and believe that, on or about January 21, 2001, a Boeing 727-

21   2N8, operated by Yemenia Airlines as Yemenia Flight 448 after departing from Sana'a International Airport

22   (SAH/ODSN) in Yemen, was hijacked due to a lack of security.

23        C.     Plaintiffs are informed and believe that, on or about, August 1, 2001, a Boeing 727-

24   2N8, registered 70-ACW and being operated by Yemenia Airlines, during a flight destined for Asmara,

25   overran the runway. Fortunately, none of the 111 occupants were injured. This Yemenia 22 year old Boeing

26   737 had its first flight September 17, 1979. The subject flight departed Sana'a International Airport

27   (SAH/ODSN) in Yemen and destined for Asmara International Airport (ASM/HAAY) in Eritrea. As it

28   approached Asmara, the weather was good, however, rain had wet the 3000m/9842ft asphalt runway. After

1  touchdown the aircraft did not decelerate as expected and overran the runway. The main landing gear failed

2  after colliding with a large block of concrete.

3        D.      Plaintiffs are informed and believe that, Yemenia Airlines has been under scrutiny by

4  the European Union and numerous other individual countries due specifically to its inefficient, inept and/or

5  reckless operations. Additional examples of publically available information regarding Yemenia Airlines

6  inability to safely operate commercial flights, include, but are not limited to, the following:

7        (1)     Plaintiffs are informed and believe that, the European Union ("EU"), has raised

8  concerns over Yemenia Airlines ability to safely operate commercial flights within European airspace.

9  Concerns over the deficiencies in Yemenia's maintenance and engineering operations were looked into. The

10  EU's investigation led to the discovery of "verified evidence of non-compliance with specific safety

11  standards." Reportedly, in May of 2008, Yemenia drew up a corrective plan which was found to still be

12  lacking.

13        (2)     Plaintiffs are informed and believe that, it was reported that 70-ADJ was

14  inspected by the French DGAC in 2007. The French DGAC inspectors reportedly found numerous faults on

15  this aircraft during this inspection. As a result of these safety deficiencies, the French Aviation Authorities

16  reportedly banned this specific aircraft from flying in French airspace due to these safety concerns.

17        (3)     Plaintiffs are informed and believe that, publically available documents also

18  evidence the aviation authorities of Italy and Germany having also raised concerns about Yemenia Airlines

19  ability to safely carry out commercial flights in their respective countries.

20        (4)     Plaintiffs are informed and believe that, publically available reports have also

21  disclosed witnesses to Yemenia Airlines permitting more passengers on board certain of its flights than the

22  available seats with some passengers standing for the flight. Others have reported a lack of seatbelts for all

23  the seated passengers.

24     28.    As a result of the foregoing, Plaintiffs' decedent who perished on Flight 626, was forced to

25  endure severe mental anguish, fear of impending death and ultimately suffered severe physical blunt force

26  and asphyxiation injuries which caused his death.

27     29.    At all times material hereto, the ACCIDENT AIRCRAFT was operated as a common air

28  carrier engaged in the business of transporting fare-paying passengers. As a common air carrier, Yemenia

1   Airlines and, by and through its own negligent entrustment, ILFC, owed the highest duty of care to its

2   passengers, including Plaintiffs' decedent who perished onboard the **ACCIDENT AIRCRAFT**.

3         30.    As a direct consequence and result of the crash of the **ACCIDENT AIRCRAFT** on June 30,

4   2009 and the matters herein alleged, Plaintiffs, MMADI MLATAMOU HASSANATI, MMADI

5   MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU

6   HAIRIA, and MMADI MLATAMOU HAIRATI, as the heirs of and successors in interest to MOHAMED

7   ABDOU SAID, deceased, have sustained economic, non-economic and pecuniary damages, together with

8   loss of the future contributions from decedent, the value of personal services, the loss of the decedent's love,

9   companionship, comfort, affection, society, solace and moral support and/or have suffered mental shock and

10  suffering, wounded feelings, grief and sorrow, the loss of companionship and deprivation of society, loss of

11  decedent's experience, knowledge and judgment in business affairs, and loss of decedent's protection, as well

12  as, loss of inheritance, loss of accumulations to the estate, funeral and burial expenses, property damage and

13  all other damages available by law.

14        31.    Immediately prior to his death and as a direct consequence and result of the matters herein

15  alleged, Plaintiffs' decedent, MOHAMED ABDOU SAID, who perished on the **ACCIDENT AIRCRAFT**,

16  suffered pre-impact fear and terror, physical injury, pain and suffering, property damage and was injured in

17  a personal and pecuniary manner.

18        32.    As a direct consequence and result of the crash of the **ACCIDENT AIRCRAFT** on June 30,

19  2009, the personal property of Plaintiffs' decedent, MOHAMED ABDOU SAID, who perished onboard

20  Flight 626, was damaged, lost and/or destroyed.

21

22                  **FIRST CAUSE OF ACTION**
                  **AGAINST DEFENDANT**

23      **INTERNATIONAL LEASE FINANCE CORPORATION**
       **(NEGLIGENT ENTRUSTMENT ALLEGATIONS)**

24

25        33.    Plaintiffs incorporate herein by reference paragraphs 1 through 32 inclusive, as if fully set

    forth at length herein.

26

27        34.    At all times material hereto, defendant INTERNATIONAL LEASE FINANCE

    CORPORATION ("ILFC") owned, marketed, distributed, leased, sold, serviced, maintained and repaired

28

1  the ACCIDENT AIRCRAFT.

2      35.    Prior to September 1999 and at all material times thereafter, Yemenia Airlines, was
3  incompetent, unfit, inexperienced and/or reckless in its operation as an air carrier, evidenced by, but not
4  limited to, the following:

5      A.    Those factual allegations set forth at paragraphs 24-27, supra, which Plaintiffs
6  incorporate herein by reference as if fully set forth at length herein.

7      B.    Plaintiffs are informed and believe that, Yemenia Airlines has been under scrutiny by
8  the European Union and numerous other individual countries due specifically to its inefficient, inept and/or
9  reckless operations.  Examples of publically available information regarding the concerns over Yemenia
10  Airlines ability to safely operate commercial flights, includes, but is not limited to, the following:

11      (1)    Plaintiffs are informed and believe that, the European Union ("EU"), has raised
12  concerns over Yemenia Airlines ability to safely operate commercial flights within European airspace.
13  Concerns over the deficiencies in Yemenia's maintenance and engineering operations were looked into. The
14  EU's investigation led to the discovery of "verified evidence of non-compliance with specific safety
15  standards." Reportedly, in May of 2008, Yemenia drew up a corrective plan which was found to still be
16  lacking.

17      (2)    Plaintiffs are informed and believe that the ACCIDENT AIRCRAFT was
18  inspected by the French DGAC in 2007 whom reportedly found numerous faults on this aircraft during their
19  inspection. As a result of these safety deficiencies, the French Aviation Authorities banned this specific
20  aircraft from flying in French airspace.

21      (3)    Plaintiffs are informed and believe that, publically available documents also
22  evidence the aviation authorities of Italy and Germany having raised concerns about Yemenia Airlines ability
23  to safely carry out commercial flights in their respective countries.

24      (4)    Plaintiffs are informed and believe that, publically available reports have also
25  disclosed witnesses to Yemenia Airlines permitting more passengers on board certain of its flights than the
26  available seats with some passengers standing for the flight.  Others have reported a lack of seatbelts for all
27  the seated passengers.

28      36.    Prior to September 1999 and at all material times thereafter, ILFC had reason to know and

Exhibit _A_, Pg. _20_

1  did know or, in the exercise or reasonable diligence should have known, that Yemenia Airlines, as stated

2  above, was incompetent, unfit, inexperienced and/or reckless in its operation as an air carrier.

3      37.    On or about September 1999 and at all material times thereafter, ILFC entrusted to Yemenia

4  Airlines a dangerous instrumentality, the ACCIDENT AIRCRAFT.

5      38.    At all material times relevant hereto, Yemenia Airline's operation of the ACCIDENT

6  AIRCRAFT created a risk of harm to the Plaintiffs' decedent, MOHAMED ABDOU SAID.

7      39.    On or about June 30, 2009, Yemenia Airlines, operated the ACCIDENT AIRCRAFT in an

8  incompetent, unfit, inexperienced and/or reckless manner, failing to properly follow the established landing

9  pattern for the Moroni-Prince Said Ibrahim In Airport in Comoros, resulting in the aircraft impacting the

10  ocean. As a direct and proximate result, Plaintiffs' decedent MOHAMED ABDOU SAID, lost his life and

11  his heirs, MMADI MLATAMOU HASSANATI, MMADI MLATAMOU RAFIK, MMADI MLATAMOU

12  RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI,

13  suffered severe emotional injuries and resulting damages.

14      40.    The crash of the ACCIDENT AIRCRAFT carrying Plaintiffs' husband and father onboard,

15  resulting in his death, was caused and contributed to by ILFC's negligent entrustment of the ACCIDENT

16  AIRCRAFT to Yemenia Airlines, an airlines that has a long history of operating its aircraft, in particular,

17  the ACCIDENT AIRCRAFT in an incompetent, unfit, inexperienced and/or reckless manner.

18      41.    The liability sought to be imposed upon ILFC is not based upon any vicarious liability, rather,

19  liability is based solely on its ownership of the ACCIDENT AIRCRAFT. The liability is based upon a

20  common law claim that the aircraft was carelessly entrusted to a third party.

21      42.    As a direct result and consequence of the acts and/or omissions of defendants, the

22  ACCIDENT AIRCRAFT crashed killing Plaintiffs' decedent,MOHAMED ABDOU SAID. As a direct

23  result thereof, Plaintiffs, MMADI MLATAMOU HASSANATI, MMADI MLATAMOU RAFIK, MMADI

24  MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI

25  MLATAMOU HAIRATI, as the heirs of MOHAMED ABDOU SAID, who was fatally injured onboard

26  Yemenia Airlines Flight 626, were injured and damaged as alleged herein.

27      43.    Plaintiffs reallege as though fully set forth at length, and incorporate herein by reference, each

28  and every allegation and statement contained in paragraphs 28 through 32 inclusive, of the General

1  Allegations, above, and charge said allegations to the Defendant complained of in this First Cause of Action.

2

3      WHEREFORE, Plaintiffs, MMADI MLATAMOU HASSANATI, MMADI MLATAMOU RAFIK,

4  MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI

5  MLATAMOU HAIRATI, as the heirs of MOHAMED ABDOU SAID who perished onboard Flight 626,

6  pray for judgment against Defendants, and each of them, for damages as follows:

7

8      1.   Pain and suffering, mental anguish, psychological and emotional distress, and disfigurement

9           of Plaintiffs' decedent prior to his death and for his pre-impact fear of death;

10     2.   Loss of care, comfort, love, society, solace, moral support, companionship, guidance, and

11          services of the decedent to the survivors, beneficiaries and heirs and the resulting grief and

12          sorrow;

13     3.   Loss of support and services in money or in kind;

14     4.   Loss of net accumulations;

15     5.   Loss of earnings and earning capacity;

16     6.   Loss of inheritance;

17     7.   Funeral and burial expenses;

18     8.   Mental shock and suffering, wounded feelings, grief and sorrow;

19     9.   Loss of companionship and deprivation of society;

20     10.  Loss of decedent's experience, knowledge and judgment in business affairs;

21     11.  Loss of decedent's protection;

22     12.  Property damage;

23     13.  Prejudgment interest;

24     14.  Costs of suit; and

25  ///

26  ///

27  ///

28

344122.1

15

COMPLAINT

Exhibit _A_, Pg. 22

1    15.    Any other damages to which Plaintiffs and/or the beneficiaries may be entitled under all

2          applicable laws.

3

4    DATED: January __10__ , 2011                    ENGSTROM, LIPSCOMB & LACK

5                                              By:  _____

6                                                   WALTER J. LACK, ESQ.
                                                    MARK E. MILLARD, ESQ.
7                                                   Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| SHORT TITLE: Hassanati, et al.v.INTERNATIONAL LEASE FINANCE CORPORATION | CASE NUMBER BC 452 279 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 In all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL ___14___ ☐ HOURS/ ☑ DAYS.

Item II.  Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☑ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., ②, 4. |
| **Non-Personal Injury/Property** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | ☐ A6016  Intellectual Property | 2., 3. |

Exhibit _A_, Pg. _24_

| SHORT TITLE:  Hassanati,et al.v.INTERNATIONAL LEASE FINANCE CORPORATION | CASE NUMBER  BC 452 279 |
|---|---|

| A  Civil Case Cover Sheet Category No. | B  Type of Action  (Check only one) | C  Applicable Reasons  -See Step 3 Above |
|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** Professional Negligence (25) | ☐ A6017  Legal Malpractice  ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.  1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case  ☐ A6109  Labor Commissioner Appeals | 1., 2., 3.  10. |
| **Contract** Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)  ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)  ☐ A6019  Negligent Breach of Contract/Warranty (no fraud)  ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.  2., 5.  1., 2., 5.  1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff  ☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.  2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud  ☐ A6031  Tortious Interference  ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.  1., 2., 3., 5.  1., 2., 3., 8. |
| **Real Property** Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure  ☐ A6032  Quiet Title  ☐ A6060  Other Real Property(not eminent domain, landlord/tenant, foreclosure) | 2., 6.  2., 6.  2., 6. |
| **Judicial Review   Unlawful Detainer** Unlawful Detainer- Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer- Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer- Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

CIV 109 03-04 (Rev. 03/06)

LASC Approved

CIVIL CASE COVER SHEET ADDENDUM  
AND STATEMENT OF LOCATION

LASC, rule 2.0

Page 2 of 4

Exhibit __A__ , Pg. _25_

| SHORT TITLE. Hassanati,et al.v.INTERNATIONAL LEASE FINANCE CORPORATION | CASE NUMBER BC 452279 |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151   Writ - Administrative Mandamus<br>☐ A6152   Writ - Mandamus on Limited Court Case Matter<br>☐ A6153   Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141   Sister State Judgment<br>☐ A6160   Abstract of Judgment<br>☐ A6107   Confession of Judgment (non-domestic relations)<br>☐ A6140   Administrative Agency Award (not unpaid taxes)<br>☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112   Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030   Declaratory Relief Only<br>☐ A6040   Injunctive Relief Only (not domestic/harassment)<br>☐ A6011   Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121   Civil Harassment<br>☐ A6123   Workplace Harassment<br>☐ A6124   Elder/Dependent Adult Abuse Case<br>☐ A6190   Election Contest<br>☐ A6110   Petition for Change of Name<br>☐ A6170   Petition for Relief from Late Claim Law<br>☐ A6100   Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

CIV 109 03-04 (Rev. 03/06)

LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0

Page 3 of 4

Exhibit _A_, Pg. _26_

| SHORT TITLE: Hassanati, et al. v. INTERNATIONAL LEASE FINANCE CORPORATION | CASE NUMBER: BC 452 279 |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE<br><br>☐1.☑2.☐3.☐4.☐5.☐6.☐7.☐8.☐9.☐10. | ADDRESS:<br>111 North Hill Street |
|---|---|
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |

Item IV. *Declaration of Assignment*. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _____Stanley Mosk_____ courthouse in the _____CENTRAL_____ District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: January 10, 2011

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

## PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

Exhibit A, Pg. 27

Case Number

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

BC452279

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3©).  There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Hon. John A. Kronstadt | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Willliam F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

**\*Class Actions**

All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the Outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     JOHN A. CLARKE, Executive Officer/Clerk

By_____, Deputy Clerk

LACIV CCH 190 (Rev. 04/10)          NOTICE OF CASE ASSIGNMENT –          Page 1 of 2
LASC Approved 05-06                    UNLIMITED CIVIL CASE

Exhibit _A_, Pg. 28

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
(CRC 3.221 Information about Alternative Dispute Resolution)
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court.  ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR.  All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leave control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.
>
> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.
>
> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.
>
> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

Exhibit __A__, Pg. __29__

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:
- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):
- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:
- **Mediation**
- **Settlement Conference**

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| | | | | | |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8585 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-5072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)568-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

Exhibit _A_, Pg. 30

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Exhibit _A_ , Pg. _31_

# EXHIBIT B

*IN THE NAME OF GOD THE MOST COMPASSIONATE, THE MOST MERCIFUL*

## STATEMENT

Subject: Initial report on the crashed Yemenia airplane
70-ADJ, flight IY626 to Moroni

**First: Factual information on the crashed plane:**
Transport company:  Yemen Airways (Yemenia Airlines)
Aircraft: A310-300
Registration #: ADJ-70
Manufacturing date: 1990, operated by Yemenia Airline since September 1999
Accumulated flying hours: 53,587 hrs
Total running time for Engine 1: 211 hours, Engine 2: 3400 hrs, powered by P & W 400 engines.  The engines suppositional minimum life cycle is 10,000 hours according to the manufacturing standards.

**Second: Flight information**
Flight route:  Sana'a to Moroni
Fight number: IY626
Number of passengers: 142 passengers, and 11 crew members
Approximate flight duration: 4.45 hours

- The plane took off from Sana'a Airport at 9:56 p.m. (Sana'a local time).  There were absolutely no faults or notifications.  It has been inspected by the Civil Aviation Authority in accordance with the customary measures and standards.

- After its departure from Sana'a airport heading towards Moroni it went through the airspace of Addis Ababa, Nairobi, Dar-asylum and Madagascar.

- Expected arrival time of the flight was 2:00 a.m. according to the flights arrival schedule.

- According to the available information, the wind speed was approximately between 20 to 30 knots (50 km per hour approx.)

- Furthermore, the air traffic control tower in Sana'a Governorate didn't receive any report from aviation control units of other governorates, where the plane passed through, or receive any message from the pilot reporting any kind of a problem during the flight.

- The authorities from Moroni airport informed that there were no technical problems reported during the flight, according to the controller at Moroni Air Traffic Control

1

**Third: Additional information pertaining to the accident:**

I.  Description of the runway of Moroni Airport:
    a.  Length: 2900 meters
    b.  Runway 02 is equipped with an automatic instrument landing system (ILS)
    c.  Runway 20 is equipped with VOR-DME system  (VHF Omni-directional Range navigation system, and Distance Measuring Equipment)

II.  The plane went though intensive comprehensive maintenance (C-check) completed at the maintenance center on 2/5/2009 and conducted a fight test after the maintenance in accordance with the regulations and standards.  Since then, the plane completed a number of international flights.

III.  The Civil Aviation Authority, represented by the safety sector, undertakes continuous inspection and thorough surveillance on the Yemenia Airlines and all national and foreign airlines that fly to local airports within the Republic of Yemen in accordance with the safety requirements and rules and regulations of local and international organizations.

Furthermore, we would like to indicate that the European Aviation Agency has expressed its satisfaction and appreciation to the Civil Aviation Authority and Yemenia Airlines in its report dated November 2008.

2

On board the plane there were:
- 142 passengers including 3 infants
- 11 crew members

Passengers' nationalities:

| NATIONALITY | NUMBER |
|---|---|
| French | 65 |
| Comorian | 75 |
| Canadian | 1 |
| Palestinian | 1 |
| TOTAL | 142 |

Nationalities of crew members:

| NATIONALITY | NUMBER |
|---|---|
| Yemeni | 6 |
| Moroccan | 2 |
| Indonesian | 1 |
| Ethiopian | 1 |
| Filipino | 1 |
| TOTAL | 11 |

IV. Information on the crew members:

| Captain | | Co-pilot | |
|---|---|---|---|
| Name | Khaled Mohamed Hajib | Name | Ali Hussein Atif |
| - Date of commercial air transport pilot's license | 11/03/1990 | - Date of commercial air transport pilot's license | 07/04/1994 |
| - Addition of type Dash-7 | 27/11/1990 | - Addition of type Dash-7 | 19/12/1996 |
| - Date of license as airline captain | 15/08/2005 | | |
| - Flying hours | 7950 | Flying hours | 3641 of which 3076 on airbus A310 |
| - Number of flights Sana'a- Moroni as captain, since 2006 till he last flight | 65 flights | | |

3

Exhibit __B__, Pg. _34_

**Fourth: Undertaken measures:**

A high level follow-up committee was formed headed by the Minister of Transport and membership of the Chairman of the Civil Aviation and Metreology Authority, Undersecretary of the Ministry of Transport for the air and land transportation sector, Chairman of Yemenia Airlines, Assistant Undersecretary of the Ministry of Transport for the air transportation sector, Director General of Sana'a International Airport and a number of specialists.

Also, an investigative technical team was formed immediately from the Civil Aviation Authority and Yemenia Airlines and arrangements were made for the team to travel to the crash site on the same day of the accident only a few hours after the crash (morning of Tuesday 30/06/2009) to participate in the rescue and search operation efforts and investigation.

The Deputy General of the Civil Aviation and Meteorology Authority has been designated as the official spokesman for the High Commission of Civil Aviation Accidents (Airbus A310-300 – 1YE 626 crash.)

An information office has been formed at Sana'a International Airport to receive queries and to provide information on the incident around-the-clock to insure that the information is conveyed from genuine resources.

The supreme committee continued its duties at the Operations and Crisis Management Unit at Sana'a International Airport.  It is equipped with required means for communication, interconnection and follow- up around-the-clock.  Furthermore, telephonic communication was established in the morning of the accident with the Vice President of the Comoro Island, in charge of transportation and tourism affairs, to convey the deepest condolences of the government and people of Yemen to the families of the victims and those who are affected by this calamity.  He requested the Vice President to provide support and facilitate the work of the investigative team which will arrive in Moroni to participate in the investigation of the accident.

A contact with the French Secretary of the State for Transportation was established to coordinate and unify the efforts, and to convey the condolences of the government and people of Yemen in the loss of a number of French friends in this regrettable accident, and to reassure and restore confidence on the capability and safety of Yemenia Airways.

A continuous communication with all concerned internal and external parties which includes French rescue and search centers located on the Indian Ocean, center for search and rescue of the Republic of Comoro Islands, Moroni Airport Air Traffic Tower, crisis cell in Paris, Paris airport operations, the office of the Vice-president of the Republic of Comoro Islands, Protocol Department of the Presidency and Foreign Affairs of Comoro Islands and the French ministries of Transport and Foreign Affairs.

4

Since the first instants, the follow-up high committee started to coordinate the follow-up actions of the search and rescue operations, issue press releases and hold press conferences to immediately announce the confirmed information received from the source.

The committee was vigilant not to announce unconfirmed information about the causes of the crash and was careful not to provide conclusions based on speculations. At the same time we were careful to provide all media outlets with the facts and all available information and details of the path of the flight from Sana'a to Moroni, and the loss of contact with the plane. The wind speed was 61 Km per hour when the accident happened, the sea conditions were rough with strong winds and high seas and tides between 10 to 15 meters high. Communication with the pilot during the flight didn't indicate signs of any problem or defect. On the contrary; the results of our data analysis of the recording of the Control Tower of Sana'a Airport indicates that the flight was very normal until the moments when it approached Moroni Airport and its attempt to turn to the other side of the runway due to windy weather conditions, according to the customary measures. The control tower lost contact with the plane and no distress call of any form was received, which indicates that a sudden emergency matter happened that lead the plane to crash

Continuing bad weather conditions and rough seas were some of the reasons hindering the rescue and search operations, and hopes dwindled for finding other survivors.

A team of divers from the Special Forces along with their equipment has been sent to participate in the rescue and search operations lead by Yemeni-Comorian-French-American collaborative joint efforts. President of the Republic of Comoro Islands visited the team members welcoming and thanking them for coming and requested for them assistance to facilitate their mission.

Also, an additional technical support team has been sent to participate in the investigation.

Until now, only one survivor was found, a French girl of Comorian origin 14 years old. named Bakari Bayah. We haven't received information on other survivors, as hope of finding survivors diminishes as time goes by.

Until now, 20 bodies were recovered in Tanzania and three body parts found in Moroni expected to be of the plane victims. According to the information received from the French; the plane may be lying at 2000 meters deep underwater but the exact location is unknown. Location of the black box has been confirmed within an area of only100 square meters, as its signal emits for 30 days.

**Fifth:**
In regard to international safety standards and aircraft inspection measures; Yemeni Airways goes through periodic inspection measures at the national level conducted by the Yemeni Civil Aviation Authority. External inspection is done by a number of

5

international agencies the same way measures are undertaken for other airline companies. On top of the European safety institutions is the European Aviation Safety Agency, which is considered to be the highest competent authority in Europe in the domain of overseeing and monitoring civil aviation safety and security. Its competencies are practiced over all international air transportation companies and institutions, including European companies and not limited to the Yemeni airways, as understood by some media outlets. The European Aviation Safety Agency monitors and applies the measures and standards as well as technical, legal and operational requirements on companies according to the European rules and regulations of air transportation and international civil aviation.

Worth mentioning, that Yemeni Airways, similar to other international airline companies that fly to European airports, has been inspected, and undergoes regular inspection and monitoring. The Yemeni Civil Aviation Authority applies the same safety inspection standards and measures on international airline companies at the Yemeni airports. In case of detection of any fault on one of the aircrafts, the Yemeni Civil Aviation Authority, a specialized body, reviews the corrective plan for repair of any defect, including the very minor faults.

In response to what has been stated that the crashed plane received notifications two years ago; these notifications were mended at the time and the repair was confirmed by the European Aviation Agency.

Furthermore, in November 2008 the Yemenia Airlines and the Yemeni Civil Aviation Authority met several times with the European Aviation Safety Agency of the European Union, and presented an explicit and comprehensive report on the procedures and measures carried out by the Yemeni Aviation Authority and Yemenia Airline to ensure the safety and security of the planes and passengers. The strict measures taken by the Civil Aviation Authority and the Yemenia airlines were greatly welcomed.

Announcement of a prior judgment on the Yemenia plane crash in Moroni before the emergence of the investigation results, which is still being carried out by a joint Yemeni-French-Comorian task force, is a premature judgement of the situation and the investigation results and an unjust and unprofessional interpretation of the events as it is not possible to establish judgment on the standards of the technical performance of the Yemenia Airlines or any other airline before having the results of the investigation. It is the international procedure that is followed in the event of a plane crash, according to Annex 13 of the International Civil Aviation Organization Agreement pertaining to plane accident investigations (Chicago Convention of 1944), which is considered to be the constitution of international civil aviation.

It is known to the experts that the Yemeni Civil Aviation and Metrology Authority received reports of the SAFA (Safety Assessment of Foreign Aircraft) program which is conducted by European aviation authorities on the Yemenia plane in European airports and the French airports in particular. These reports illustrate the results of the inspection. The following are mentioned as examples but are not the full accounts of the actions:

Exhibit _B_, Pg. _37_

1. In 2006 an inspection of the Yemenia (crashed) plane was carried out in Frankfurt-Germany and the inspection results were positive as there were no notifications on the plane.

2. In 2007 the crashed plane was inspected in Marseille.  There were seven minor faults with no effect on the safety of the plane.  The issue has been passed immediately to the Yemenia airline and was required to have a corrective plan and put it into action.  The Yemenia repaired the faults, and the undertaken corrective measures were confirmed by inspectors from the Yemeni Civil Aviation Authority

3. No technical notifications were observed in the last inspection of Yemenia planes in the European airports, as well as the results of the inspections carried out, during the last year and what passed from this year, on the Yemenia planes were excellent and no fault worth mentioning were found.

4. The Yemeni Civil Aviation Authority carried out and still conduction various inspection programs in different centers for maintenance, aprons, aircrafts, local and external stations, according to the accreditation inspection programs.  In addition to that it conducted unscheduled and additional inspections on Yemenia, Arab and foreign airlines agencies equally according to the accreditation inspection program.

5. There has been continuous and long time communication between the Yemeni Civil Aviation Authority, European Aviation Agency and European civil aviation authorities including the French Civil Aviation Authority.   Several meetings were held; the last was in November 2008, between the European Agency and the (Yemeni) Civil Aviation and Meteoroly Authority and Yemenia Airlines.  During these meetings, the European Aviation agency commended the undertaken positive measures carried out be the Yemeni Civil Aviation and Yemenia.  These events are documented.

It is worth mentioning that the Republic of Comoro Islands does not own national airline companies and that the Yemenia Airlines is almost the sole carrier of passengers between Moroni and Europe.   Passengers are transported from various locations in Europe to Sana'a International Airport to be transported to Moroni according to the sixth freedom of the regulations of international air transportation.

We have been delegated by H.E. the President of the Republic of Yemen and H.E. the Prime Minister to travel to France on Thursday July 02/2009 to offer our condolences and coordinate the efforts.  We arrived Friday at 8:30 a.m. and an immediate meeting was held at 9:30 a.m. with the Advisor of French Minister of Transportation, as the latter was out of country, and with the Chairman of the French Civil Aviation Authority.  The meeting was successful as the parties agreed not to speculate and jump to hurried conclusions and allegations.  They stressed the importance of coordinating their joint efforts to follow up on the search and rescue.

7

A meeting was held at the Elysées with Mr. Gyan, Secretary-General of the French Presidency and the French Advisor for Transportation Affairs, and they agreed on the following:

1. The importance of avoiding speculation and jumping to conclusions on the cause of the accident before revealing the results of the investigations.

2. France is not to put pressure on the European Aviation Safety Agency and let it work to achieve its duties with neutrality and professionalism.

3. Coordination of relief and rescue efforts for the passengers and providing support to the families of the victims.
   The same was agreed upon with H.E. the Minister of Tourism of Comoro Islands upon his visit at the same period of time..

The delegation traveled the same day to Brussels and held a meeting with the European Aviation Safety Agency (EASA) where lengthy discussions addressed and dealt with the misunderstandings the European side has and provided clarifications.  The (EASA) confirmed that their duties are only technical and vocational.  The meeting was productive and verified that the Yemenia Airlines was not listed in the blacklist in the latest publication

Summary:

The misunderstanding of the statement of the French Minister of Transport has lead to the following speculations and queries:

a. since there were notifications on the Yemenia Air in 2007; the cause of the crash must be technical,

b. Yemenia planes that operate between Europe and Yemen are different from The ones that fly between Yemen and Comoro Islands, and

c. what are the reasons for changing the type of plane from Sana'a and Moroni?

These assumptions are not correct for the following reasons:

a. The identified notifications in 2007 were not safety issues.  Faults have been repaired and the certification documents were given to the European Aviation Safety Agency, the French Civil Aviation and Airbus Company confirming that the repairs have been done and the file was closed at that time.

b. The original route of the crashed plane was flying to Europe continuously and through the French airspace without restriction which was later affirmed by

c.  Regarding the queries about changing the plane that arrived from Marseille-Paris to Sana'a, one may understand, that the plane that arrived from Paris was supposed to fly to Moroni.  This is not true, as Sana'a was the last destination of this plane.  Passengers of the crashed plane were in transit from different capital cities such as Dubai, Amman, Cairo and Paris.  Some of them arrived hours before the departure time, others arrived in Sana'a one or two days before.  The type of plane that is flying to a destination in another country is usually governed by commercial principles and the number of passengers as well as the size of the plane.

# EXHIBIT C

**BRIAN M. MONKARSH as Registered Agent for
INTERNATIONAL LEASE FINANCE CORPORATION**

**10250 CONSTELLATION BLVD
31ST FLOOR
LOS ANGELES CA 90067**

6636310



Exhibit _C_, Pg. _41_

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
  INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-100

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

FEB 0 4 2011

John A. Clarke, Executive Officer/Clerk
BY: _____ Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
  MMADI MLATAMOU HASSANATI, Individually, as heirs and as
  Successor in Interest to MOHAMED ABDOU SAID, deceased;
  (Continued on Additional Parties Attachment)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court<br>Central District<br>111 North Hill Street<br>Los Angeles, 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>BC452279 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Walter J. Lack, Esq. (SBN#57550)                    310-552-3800
ENGSTROM, LIPSCOMB & LACK, 10100 Santa Monica Blvd. 12th Fl.
Los Angeles, California 90067

| DATE:<br>*(Fecha)* FEB 0 4 2011 | John A. Clarke Clerk, by<br>*(Secretario)* MARIA E. VALENZUELA | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* INTERNATIONAL LEASE FINANCE CORPORATION
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | CEB | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

Exhibit *C* , Pg. 42

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| HASSANATI, et al. v. INTERNATIONAL LEASE FINANCE CORPORATION, et al. | BC452279 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[x] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

MMADI MLATAMOU HASSANATI, as Guardian ad Litem for MMADI MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI, minors and heirs to MOHAMED ABDOU SAID, deceased,

Page   1   of   1

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

CEB

Exhibit *C*, Pg. *43*

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar Number, and address):
**ENGSTROM, LIPSCOMB & LACK**
**10100 SANTA MONICA BLVD. 16th Floor**
**LOS ANGELES, CA 90067**
    TELEPHONE NO.: 310 552-3800       FAX NO. (Optional): 310 552-9434
EMAIL ADDRESS (Optional):
ATTORNEY FOR (Name):  HASSANATI

FOR COURT USE ONLY

**FILED**
SUPERIOR COURT OF CALIFOR
COUNTY OF LOS ANG

FEB 16 2011

John A. ____, Clerk
By ____
GLORIETTA ROBINSON  DEPT 13

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES.
    STREET ADDRESS: 111 North Hill Street
    MAILING ADDRESS: Room 109
    CITY AND ZIP CODE: Los Angeles 90012
    BRANCH NAME: Central District, Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: HASSANATI

CASE NUMBER: BC452279

DEFENDANT/RESPONDENT: INTERNATIONAL LEASE FINANCE CORPORATION

**PROOF OF SERVICE OF SUMMONS**

Ref. No. or File No.: 38000/3477

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the (specify documents):
    Summons; Complaint; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment;
    Adr Information Package

3. a.  Party served (specify name of party as shown on documents served):
    **INTERNATIONAL LEASE FINANCE CORPORATION**
    b.  [ X ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
         under item 5b whom substituted service was made) (specify name and relationship to the party named in item 3a):
    **BRIAN M. MONKARSH, Registered Agent**

4. Address where the party was served:
    **10250 CONSTELLATION Boulevard 31ST FLOOR, LOS ANGELES, CA 90067**

5. I served the party (check proper box)
    a.  [   ] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to
         receive service of process for the party  (1) on (date):          (2) at (time):
    b.  [ X ] by substituted service.  On (date): 2/14/2011  (2) at (time): 11:45 AM  I left the documents listed in item 2 with or in
         the presence of (name and title or relationship to person indicated in item 3):
         **GIAN LEONARDO, CLERK IN CHARGE, A Pacific Islander male approx. 30-35 years of age 5'6"-5'8" in height
         weighing 140-160 lbs with black hair**
        (1)  [ X ] (business) a person at least 18 years of age apparently in charge at the office or usual place of business of
              the person to be served. I informed him or her of the general nature of the papers.
        (2)  [   ] (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place
              of abode of the party. I informed him or her of the general nature of the papers.
        (3)  [   ] (physical address unknown) a person of at least 18 years of age apparently in charge at the usual mailing
              addresss of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.
        (4)  [   ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the
              place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date):          from
              (city):          or [ X ] a declaration of mailing is attached.
        (5)  [   ] I attach a declaration of diligence stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

Order No. 6636310 LAX FIL



BY FAX

Exhibit __C__, Pg. __44__

| PLAINTIFF/PETITIONER: HASSANATI | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: INTERNATIONAL LEASE FINANCE CORPORATION | BC452279 |

c. [ ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
(1) on *(date):*      (2) from *(city):*
(3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.)* (Code Civ. Proc., § 415.30)
(4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. [ ] **by other means** *(specify means of service and authorizing code section):*

{ } Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
a. [ ] as an individual defendant.
b. [ ] as the person sued under the fictitious name of *(specify):*
c. [ ] as occupant
d. [ X ] On behalf of *(specify):* INTERNATIONAL LEASE FINANCE CORPORATION
under the following Code of Civil Procedure section:

| [ X ] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
|---|---|
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other |

7. **Person who served papers**
a. Name:              John Gonzalez
b. Address:           201 South Figueroa Street, Suite 100, LOS ANGELES, CA 90012
c. Telephone number:  213-621-9999
d. The fee for service was:  $59.50
e. I am:
(1) [ ] not a registered California process server.
(2) [ ] exempt from registration under Business and Professions Code section 22350(b).
(3) [ X ] registered California process server:

(i) [ ] owner  [ ] employee  [ X ] independent contractor
(ii) [ X ] Registration No.:  2971
(iii) [ X ] County:           **Los Angeles**

8. [ X ] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. [ ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  2/15/2011

John Gonzalez
[NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL]                              (SIGNATURE)

BY FAX

---

POS-010 [Rev. January 1, 2007]                    **PROOF OF SERVICE OF SUMMONS**                    Page 2 of 2

Order No. 6636310 LAX FIL

Exhibit *C*, Pg. *45*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>ENGSTROM, LIPSCOMB & LACK<br>10100 SANTA MONICA BLVD. 16th Floor<br>LOS ANGELES, CA 90067<br>TELEPHONE NO.: 310 552-3800    FAX NO. *(Optional)*: 310 552-9434<br>EMAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: HASSANATI | FOR COURT USE ONLY |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES.<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS: Room 109<br>CITY AND ZIP CODE: Los Angeles 90012<br>BRANCH NAME: Central District, Stanley Mosk Courthouse | |
|---|---|

| PLAINTIFF/PETITIONER:  HASSANATI | CASE NUMBER:<br>BC452279 |
|---|---|
| DEFENDANT/RESPONDENT:  INTERNATIONAL LEASE FINANCE CORPORATION | |

| DECLARATION OF MAILING | Ref. No. or File No.:<br>38000/3477 |
|---|---|

The undersigned hereby declares: that I am over 18 years of age and not a party to this action. I am a resident of or employed in the county where the mailing took place.

My business address is 501 12th St., Sacramento, CA 95814.

That on **February 15th, 2011**, after substituted service was made, I mailed the following documents: **Summons; Complaint; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment; Adr Information Package** to the servee in this action by placing a true copy thereof enclosed in a sealed envelope with postage prepaid for first class mail and placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in **Sacramento, CA**.

That I addressed the envelope as follows:

INTERNATIONAL LEASE FINANCE CORPORATION
10250 CONSTELLATION Boulevard 31ST FLOOR
LOS ANGELES, CA 90067

BY FAX

That I declare under penalty of perjury of the state of California that the foregoing is true and correct.

That I executed this declaration on **February 15th, 2011** at Sacramento, CA.

_Russell Duane_
Declarant        Russell Duane



Order No. 6636310 LAX FIL

Exhibit _C_, Pg. _46_

STATE OF CALIFORNIA )                           **PROOF OF SERVICE**
COUNTY OF LOS ANGELES )   ss.

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is: 300 South Grand Avenue, Suite 2600, Los Angeles, CA 90071. On March 16, 2011, I served the foregoing document described as:

**DEFENDANT INTERNATIONAL LEASE FINANCE CORPORATION'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1369, 1441 AND 1446**

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service. (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list).

☐   **BY PERSONAL SERVICE.** I placed ___ the original or ___ a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties on the attached service list, and caused such envelope to be delivered by hand to the offices of each addressee.

☐   **BY FACSIMILE TRANSMISSION.** I caused ___ the original or ___ a true copy of the foregoing document to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

☑   **BY MAIL.** I placed ___ the original or ✓ a true copy of the foregoing document in a sealed enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at 300 South Grand Avenue, Suite 2600, Los Angeles, CA 90071. Each envelope was mailed with postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

☐   **BY E-MAIL.** I caused the foregoing document(s) to be transmitted by e-mail electronic transmission to the e-mail address on the attached service list as last given by that person on any document which he or she has filed in this action and served upon this office.

☐   **BY EXPRESS MAIL.** I placed ___ the original or ___ a true copy of the foregoing document in a sealed enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at 300 South Grand Avenue, Suite 2600, Los Angeles, CA 90071. Each envelope was mailed with Express Mail postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

☐   **BY FEDERAL EXPRESS.** I placed ___ the original or ___ a true copy of the foregoing document in a sealed enveloped or package designated by Federal Express with delivery fees paid or provided for, individually addressed to each of the parties on the attached service list, and caused such envelope or package to be delivered at 300 South Grand Avenue, Suite 2600, Los Angeles, CA 90071, to an authorized courier or driver authorized by Federal Express to receive documents.

☐   **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑   **(Federal)** I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

Executed on March 16, 2011, at Los Angeles, California.

                                         _Antoinette Y. Taylor_
                                              Antoinette Y. Taylor

<u>**SERVICE LIST**</u>

*Mmadi Mlatamou Hassanati, et al. v. International Lease Finance Corp., et al.*

Walter J. Lack, Esq.
Mark E. Millard, Esq.
ENGSTROM, LIPSCOMB & LACK
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, California 90067-4107
Telephone:     (310) 552-3800
Facsimile:      (310) 552-9434
Email:           wlack@elllaw.com
                     mmillard@elllaw.com

Attorneys for Plaintiffs: **MMADI MLATAMOU HASSANATI, MMADI MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI**

Thomas V. Girardi, Esq.
Keith D. Griffin, Esq.
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone:     (213) 977-0211
Facsimile:      (213) 481-1554
Email:           tgirardi@girardikeese.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV11- 2251 MMM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br> MMADI MLATAMOU HASSANATI, individually, as heir and as Successor in Interest to MOHAMED ABDOU SAID, deceased; MMADI MLATAMOU HASSANATI, as Guardian ad Litem for MMADI MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI, minors and heirs to MOHAMED ABDOU SAID, deceased | **DEFENDANTS** <br> INTERNATIONAL LEASE FINANCE CORPORATION |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Walter J. Lack (SBN: 57550); Mark E. Millard (SBN: 175169) <br> ENGSTROM, LIPSCOMB & LACK <br> 10100 Santa Monica Blvd., 12th Floor; Los Angeles, CA 90067 <br> Tel. (310) 552-3800; Facsimile: (310) 552-9434 | Attorneys (If Known) <br> Daniel A. Solitro, Esq. (SBN: 243908) <br> LOCKE LORD BISSELL & LIDDELL LLP <br> 300 South Grand Avenue, Suite 2600 <br> Los Angeles, California 90071 <br> Telephone: (213) 485-1500 <br> Facsimile: (213) 485-1200 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) 28 U.S.C. Sec. 1369

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Secs. 1369, 1441, 1446. ILFC removes this action for wrongful death/survival claims arising out of the Yemenia IY 626 crash in Indian Oceann

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☒ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11-02251

**FOR OFFICE USE ONLY:** Case Number:

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)        CIVIL COVER SHEET        Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Mmadi Mlatamou Hassanati (citizen of Comoros and resides in France) | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | International Lease Finance Corporation (Los Angeles County) |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Foreign Country (Indian Ocean, near Comoros) |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Daniel A. Solito_   Date March 16, 2011

Daniel A. Solitro

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

STATE OF CALIFORNIA           )                 **PROOF OF SERVICE**

COUNTY OF LOS ANGELES    )   ss.

         I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.  My business address is: 300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.  On March 16, 2011, I served the foregoing document described as:

**CIVIL COVER SHEET**

on the parties or attorneys for parties in this action who are identified on the attached service list, using the following means of service.  (If more than one means of service is checked, the means of service used for each party is indicated on the attached service list).

☐    **BY PERSONAL SERVICE.** I placed ___ the original or ___ a true copy of the foregoing document in sealed envelopes individually addressed to each of the parties on the attached service list, and caused such envelope to be delivered by hand to the offices of each addressee.

☐    **BY FACSIMILE TRANSMISSION.** I caused ___ the original or ___ a true copy of the foregoing document to be transmitted to each of the parties on the attached service list at the facsimile machine telephone number as last given by that person on any document which he or she has filed in this action and served upon this office.

☑    **BY MAIL.** I placed ___ the original or _✓_ a true copy of the foregoing document in a sealed enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at 300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.  Each envelope was mailed with postage thereon fully prepaid.  I am readily familiar with this firm's practice of collection and processing of correspondence for mailing.  Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

☐    **BY E-MAIL.** I caused the foregoing document(s) to be transmitted by e-mail electronic transmission to the e-mail address on the attached service list as last given by that person on any document which he or she has filed in this action and served upon this office.

☐    **BY EXPRESS MAIL.** I placed ___ the original or ____ a true copy of the foregoing document in a sealed enveloped individually addressed to each of the parties on the attached service list, and caused each such envelope to be deposited in the mail at 300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071.  Each envelope was mailed with Express Mail postage thereon fully prepaid.  I am readily familiar with this firm's practice of collection and processing of correspondence for mailing.  Under that practice, mail is deposited with the United States Postal Service the same day that it is collected in the ordinary course of business.

☐    **BY FEDERAL EXPRESS.** I placed ___ the original or ____ a true copy of the foregoing document in a sealed enveloped or package designated by Federal Express with delivery fees paid or provided for, individually addressed to each of the parties on the attached service list, and caused such envelope or package to be delivered at 300 South Grand Avenue, Suite 2600, Los Angeles, CA  90071, to an authorized courier or driver authorized by Federal Express to receive documents.

☐    **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑    **(Federal)** I declare that I am employed in the office of a member of the bar of this court, at whose direction the service was made.

Executed on March 16, 2011, at Los Angeles, California.

                                                 *Antoinette Y. Taylor*

                                               Antoinette Y. Taylor

## SERVICE LIST

*Mmadi Mlatamou Hassanati, et al. v. International Lease Finance Corp., et al.*

Walter J. Lack, Esq.
Mark E. Millard, Esq.
ENGSTROM, LIPSCOMB & LACK
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, California  90067-4107
Telephone:       (310) 552-3800
Facsimile:        (310) 552-9434
Email:             wlack@elllaw.com
                       mmillard@elllaw.com

Thomas V. Girardi, Esq.
Keith D. Griffin, Esq.
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, California  90017
Telephone:       (213) 977-0211
Facsimile:        (213) 481-1554
Email:             tgirardi@girardikeese.com

Attorneys for Plaintiffs:  **MMADI MLATAMOU HASSANATI, MMADI MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI**