LOCKE LORD BISSELL & LIDDELL LLP
Daniel A. Solitro (SBN: 243908)
dsolitro@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telephone: 213-485-1500
Facsimile: 213-485-1200

Gary W. Westerberg (*admitted pro hac vice*)
gwesterberg@lockelord.com
Matthew J. Kalas (*admitted pro hac vice*)
mkalas@lockelord.com
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336

Attorneys for Defendant
INTERNATIONAL LEASE FINANCE CORPORATION

**Locke Lord Bissell & Liddell LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA 90071**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| MMADI MLATAMOU HASSANATI, individually, as heir and as Successor in Interest to MOHAMED ABDOU SAID, deceased; MMADI MLATAMOU HASSANATI, as Guardian ad Litem for MMADI MLATAMOU RAFIK, MMADI MLATAMOU RAHIMA, MOHAMED RAKIB, MMADI MLATAMOU HAIRIA, and MMADI MLATAMOU HAIRATI, minors and heirs to MOHAMED ABDOU SAID, deceased, <br><br> Plaintiff, <br><br> vs. <br><br> INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-100, <br><br> Defendant. | CASE NO. 2:11-cv-02251-MMM-MAN <br><br> Hon. Margaret M. Morrow <br><br> **INTERNATIONAL LEASE FINANCE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:    August 29, 2011 <br> Time:    10:00 a.m. <br> Place:   Courtroom 780, Roybal Federal Building |

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 29, 2011 at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, defendant International Lease Finance Corporation ("ILFC") will bring for hearing before the Honorable Margaret M. Morrow, United States District Judge, in Courtroom No. 780 of the United States Courthouse located at the Roybal Federal Building, 255 East Temple Street, Los Angeles, California, a Motion to Dismiss the First Amended Complaint filed by plaintiffs  ("Plaintiffs").

Defendant, International Lease Finance Corporation ("ILFC"), by and through its attorneys Locke Lord Bissell & Liddell LLP and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully requests this Court to dismiss the Plaintiffs' complaint in its entirety and all claims therein with prejudice and in support thereof submits its memorandum of law and further states that Plaintiffs' single count amended complaint still does not state a cognizable claim upon which relief can be granted for at least three reasons:

1.      Plaintiffs' claim that ILFC owned the subject aircraft and leased it to the foreign sovereign, flag-carrier of Yemen, Yemenia Airways, and seek relief under California's wrongful death and survival statutes as a result of the crash of the subject aircraft into the Indian Ocean.  But, to the extent there is any cognizable cause of action under U.S. law, the U.S. Supreme Court has clearly noted that the <u>Death on the High Seas Act (DOHSA) preempts and provides the exclusive source</u>.  *See e.g. Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 123 (1998); *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 225-26, 229-30 (1996); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232-33 (1986)("…the conclusion that the state statutes are pre-empted by DOHSA where it applies is inevitable").  Under DOHSA, only the personal representative of the decedent may bring suit and then only for wrongful death in admiralty; there is no survival claim.  *Id*.  Plaintiffs have not alleged a DOHSA claim.

2.      Even if a DOHSA claim were to be stated, <u>ILFC is immune pursuant to</u>

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

49 U.S.C. §44112.  This statute provides "[a] *lessor, owner*, or secured party *is liable for* personal injury, *death*, or property loss or damage *on* land or *water only when a civil aircraft*, aircraft engine, or propeller is in the *actual possession or control* of the *lessor, owner*, or secured party, *and* the personal injury, *death*, or property loss or damage *occurs because of*— (1) *the aircraft*, engine, or propeller; *or* (2) *the flight of*, or an object falling from, *the aircraft*, engine, or propeller."  49 U.S.C. §44112(b)(emphasis added).  Despite their amendments, plaintiffs still allege that Yemenia Airlines, and not ILFC, was in <u>actual</u> possession and control of the aircraft at the time of the crash.  Accordingly, there is no claim against ILFC by operation of 49 U.S.C. §44112.

3.     Lastly, and importantly, the <u>Act of State doctrine bars this litigation</u>.  Plaintiffs' amended complaint still alleges a lone negligent entrustment claim that not only seeks to impugn the authority and reputation of Yemen and its flag-carrier but also calls for this Court to consider Yemen incompetent and unfit to act as a sovereign in licensing and overseeing its aircraft operators, such that the licenses and certificates issued by Yemen are rendered invalid.  This Court is obligated to abstain from hearing plaintiffs' claim because the validity of Yemen's official acts to authorize and license Yemenia Airways to operate the subject aircraft are squarely put at issue.  *See e.g. Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 416 (1964) *citing Underhill v. Hernandez*, 168 U.S. 250, 252 (1897).  As the U.S. Supreme Court has stated:

> Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory.

*Id*.; *see also In re: Philippine National Bank*, 397 F.3d 768, 773-74 (9th Cir. 2005) *citing Callejo v. Bancomer, S.A,* 764 F.2d 1101, 1121-25 (5th Cir. 1985) and *Tchacosh Co. v. Rockwell Int'l Corp.*, 766 F.2d 1333, 1337 (9th Cir. 1985)("[T]he [act of state] doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations."); *West v. Multibanco Comermex*, 807 F.2d 820, 827 (9th

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1  Cir. 1987)("The act of state doctrine is a combination justiciability and abstention rule
2  developed in pre-*Erie* days and reaffirmed in *Banco Nacional de Cuba v. Sabbatino*,
3  376 U.S. 398, 11 L. Ed. 2d 804, 84 S. Ct. 923 (1964)."); C*allejo,* 764 F.2d at 1121-25
4  (5th Cir. 1985) *citing Sabbatino*, 376 U.S. at 428 ("In the act of state context, even if
5  the defendant is a private party, not an instrumentality of a foreign state, and even if
6  the suit is not based specifically on a sovereign act, we nevertheless decline to decide
7  the merits of the case if in doing so we would need to judge the validity of the public
8  acts of a sovereign state performed within its own territory.")

9      And, more recently, the U.S. Supreme Court reiterated, "[i]n every case in
10  which we have held the act of state doctrine applicable, the relief sought or the
11  defense interposed would have required a court in the United States to declare invalid
12  the official act of a foreign sovereign performed within its own territory." *W.S.*
13  *Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp. Int'l*, 493 U.S. 400, 405
14  (1990).  This is precisely one of those cases and it must be dismissed.[1]

15      WHEREFORE, for the reasons set forth above and in the attached
16  memorandum in support, ILFC respectfully requests this court dismiss Plaintiffs' First
17  Amended Complaint in its entirety, with prejudice.

18      This motion is made following the conference of counsel pursuant to L.R. 7-3
19  which place on April 18, 2011.  Counsel for the parties were unable to reach an
20  agreement on the issues raised in this Motion.

21

22

23

24

---

25  [1] Additionally, this litigation involves claims brought by French residents for French resident decedents arising from the crash of a French-made aircraft.  In fact, approximately 1,038 claims on behalf of 116 passengers have been asserted in
26  France against the airline, including on behalf of some of these very decedents.  As such, ILFC stresses that this litigation is more appropriately conducted in France than in the U.S. and will separately request this Court to dismiss,
27  based on *forum non conveniens* (FNC), any claim that remains pending following disposition of the instant motion to dismiss presenting problems even more antecedent than this forum.  In contrast to a motion to dismiss, such as this one, or an Answer, a request for an FNC dismissal is not an initial responsive pleading to a complaint.  Accordingly, ILFC
28  presents this motion to dismiss as its initial responsive pleading without waiver of it right to request an FNC dismissal, to which the arguments herein fully support.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
*Hassanati v. International Lease Finance Corp.*, Case No. 2:11-cv-02251-MMM-MAN

Dated: May 31, 2011                    LOCKE LORD BISSELL & LIDDELL LLP


                                       By:  _/s/ Daniel A. Solitro_____
                                            Daniel A. Solitro
                                                      and
                                            Gary W. Westerberg (*admitted pro hac vice*)
                                            Matthew J. Kalas (*admitted pro hac vice*)
                                            Attorneys for Defendant
                                            INTERNATIONAL LEASE FINANCE
                                            CORPORATION

**Locke Lord Bissell & Liddell LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA 90071**

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
*Hassanati v. International Lease Finance Corp.*, Case No. 2:11-cv-02251-MMM-MAN

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ....................................................................................................... 4

    A.     DOHSA IS EXCLUSIVE – THERE IS NO CLAIM UNDER
          CALIFORNIA WRONGFUL DEATH OR SURVIVAL STATUTES ...4

    B.     49 U.S.C. §44112 BARS PLAINTIFFS CLAIMS ................................... 6

    C.     ACT OF STATE DOCTRINE BARS LITIGATION ............................... 9

CONCLUSION ......................................................................................................... 14

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
*Hassanati v. International Lease Finance Corp.*, Case No. 2:11-cv-02251-MMM-MAN

1

# <u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

## <u>*Federal Cases*</u>

4

*Banco Nacional de Cuba v. Sabbatino,*
5
    376 U.S. 398 (1964) .............................................................................3, 4, 9, 10

*British Caledonian Airways Limited v. Bond,*
6
    665 F.2d 1153, 1160 (D.C. Cir. 1981) ..............................................12, 13

7

*Callejo v. Bancomer, S.A,*
    764 F.2d 1101 (5th Cir. 1985)....................................................3, 4, 10, 11

8

*Dooley v. Korean Air Lines Co.,*
9
    524 U.S. 116 (1998) ...........................................................................2, 4, 6

*Gambra v. Int'l Lease Fin. Corp.,*
10
    377 F. Supp. 2d 810 (C.D. Cal. 2005)...........................................................3

11

*Helman v. Alcoa Global Fasteners Inc.,*
    --- F.3d ----, 2011 WL 855855 (9th Cir. Mar. 14, 2011) ..........................5

12

*In re Air Crash Disaster Near Bombay, India,*
13
    531 F. Supp. 1175..........................................................................................3, 5

*In re Inlow Accident,*
14
    2001 WL 331625 (S.D.Ind. Feb. 7, 2001) ...............................................8

15

*In re: Philippine National Bank,*
    397 F.3d 768 (9th Cir. 2005)..................................................................3, 10

16

*Martin v. Midwest Express Holdings, Inc.,*
17
    555 F.3d 806 (9th Cir. Cal. 2009) ...............................................................7

*Matei v. Cessna Aircraft Co.,*
18
    1990 WL 43351 (N.D. Ill. 1990)..................................................................8

19

*Matei v. Cessna Aircraft Co.,*
    35 F. 3d 1142 (7th Cir. 1994).......................................................................8

20

*Montalvo v. Spirit Airlines,*
21
    508 F.3d 464 (9th Cir. 2007).....................................................................6, 7

*Offshore Logistics, Inc. v. Tallentire,*
22
    477 U.S. 207 (1986) .................................................................................2, 4

23

*Spectrum Stores v. Citgo Petroleum Corp.,*
    638 F.3d 938 (5th Cir. 2011)......................................................................13

24

*Tchacosh Co. v. Rockwell Int'l Corp.,*
25
    766 F.2d 1333 (9th Cir. 1985).................................................................3, 10

*Underhill v. Hernandez,*
26
    168 U.S. 250 (1897) ...............................................................................3, 10

27

28

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

# TABLE OF AUTHORITIES
### (cont.)

**Page(s)**

*W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp. Int'l,*
  493 U.S. 400 (1990) ..................................................................4, 10, 13

*West v. Multibanco Comermex,*
  807 F.2d 820 (9th Cir. 1987)....................................................3, 4, 10, 11

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
  116 F.Supp.2d 98 (D.D.C. 2000) ......................................................11

*Zicherman v. Korean Air Lines Co.,*
  516 U.S. 217 (1996) ..........................................................................2, 4

### State Cases

*Beckett v. Mastercraft Boat Co.,*
  126 Cal.App.4th 1045 (2005)...............................................................6

*Gonzales v. Southern California Edison Co.,*
  77 Cal.App.4th 485 (1999)....................................................................6

### Federal Statutes

28 U.S.C. § 1369 ......................................................................................1

46 USCS § 30301, *et seq.* .......................................................................5

46 USCS § 30302 .....................................................................................5

46 USCS § 30307(c) .................................................................................5

49 U.S.C. § 401, *et seq.* ..........................................................................7

49 U.S.C. § 1404......................................................................................7

49 U.S.C. § 44112..............................................................................passim

49 U.S.C. § 44112(b) ...............................................................................7

### Federal Rules

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 2

### State Statutes

Code of Civil Procedure § 377.60 ............................................................6

### Misc.

Broderick, Anthony J., *Government Aviation Safety Oversight – Trust, but Verify,*
  67 J. Air L. & Com. 1035 (2002) .........................................................13

Dempsey, Paul Stephen, *Compliance & Enforcement in International Law: Achieving Global Uniformity in Aviation Safety,*
  30 N.C.J. Int'l L. & Com. Reg. 1 (2004) ...............................................13

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant International Lease Finance Corporation (ILFC) hereby moves this Court for an order dismissing all claims against them and in support thereof hereby submits the following memorandum:

## I.    INTRODUCTION

On April 22, 2011, ILFC moved to dismiss the original complaint that was filed in the Superior Court for the County of Los Angeles and removed based on 28 U.S.C. §1369.  See ECF Doc. No. 17; ECF Doc. No. 1.  Plaintiffs had moved to remand arguing that 28 U.S.C. §1369 does not apply, but have now filed a First Amended Complaint.  See ECF Doc. No. 22 (Amd. Complaint).  As a result, this Court denied as moot ILFC's original motion to dismiss.  See ECF Doc. No. 20.  The amendments to the complaint, however, did not substantively change the allegations of liability or address the bases for the motion to dismiss, rather 349 plaintiffs were added on behalf of 55 decedents.  See ECF Doc. No. 22 (Amd. Complaint, ¶¶2-44).  Accordingly, ILFC reasserts its motion to dismiss.

The First Amended Complaint, as did the original complaint, arises from the crash of an Airbus A310 aircraft on June 30, 2009 into the Indian Ocean near the island nation of Comoros, approximately 10,500 miles away from Los Angeles.  ILFC owned the accident aircraft and had leased it to Yemenia Airlines beginning in 1999.  Yemenia Airlines possessed and operated the subject aircraft since that time and its pilots were operating the aircraft at the time of the crash as Flight IY 626.  See ECF Doc. No. 22 (Amd. Complaint, ¶56); ECF Doc. No. 1, Ex. B (Yemen Initial Report).  The subject flight originated in Sana'a, Yemen and was destined for Moroni, Comoros.

### Comoros

Comoros consists of a small group of volcanic islands near Southern Africa, about two-thirds of the way between northern Madagascar and northern Mozambique.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

*See* The World Factbook 2009, Washington, DC: Central Intelligence Agency, 2009.[2] Comoros is a former French territorial possession, achieving its independence in 1975. *Id*.  French remains the official language of Comoros, along with Arabic, and its legal system is civil code based, combining French and Islamic law. *Id*.  France, particularly near Marseille, is reported to maintain a significant resident population of native Comorans.  As alleged by the plaintiffs, "The Comoros Islands maintain a strong French connection." (Amd. Complaint, ¶53).

### The Passengers and Crew

There were 142 passengers and 11 crew members aboard the Subject Aircraft, all of whom perished in the crash with the exception of a 14 year old French girl of Comoran origin. (Yemen Initial Report, p. 3-5); (Amd. Complaint, ¶70).  Of the 142 passengers, 65 were French, 75 were Comoran, 1 Canadian and 1 Palestinian citizen. *Id*.  The crew consisted of 6 Yemeni, 2 Moroccan, 1 Indonesian, 1 Ethiopian and 1 Filipino citizen.  *Id*.

### Yemenia Airlines

Yemenia Airlines is majority owned by the Yemen government.  (Amd. Complaint, ¶56).  The Yemeni government licenses Yemenia Airlines to operate aircraft, oversees their operation and issued the certificate of airworthiness for the accident aircraft.  (Yemen Initial Report, p. 2, 5-9); (Amd. Complaint, ¶71(L)). Yemenia Airlines is not a defendant in this litigation, but has been defending approximately 1,038 claims in France – including claims on behalf of at least the original plaintiffs' decedent, Mr. Said, and on behalf of sixteen (16) additional parties claiming to be relatives or heirs of this decedent.

### Accident Investigation

The investigation into the cause of the accident is ongoing and conducted by a joint team of Comoran, Yemeni and French investigators.  (Yemen Initial Report, p. 6).  No preliminary report of the investigation has issued, but the Yemeni government,

---

[2] https://www.cia.gov/library/publications/the-world-factbook/index.html.

through its Canadian Embassy, issued an initial statement critical of earlier comments made by the French Ministry of Transportation that Yemen considered unfounded and premature.  (*Id*., p. 8)  The foreign sovereign state of Yemen has demonstrated it is clearly, and appropriately, sensitive to commentary on its acts by other states.

### Forum Non Conveniens – French Connections Predominate

Given all the foregoing and that this litigation involves claims by French residents for French resident decedents arising from the crash of a French-made aircraft, ILFC stresses that this litigation is more appropriately conducted in France than in the U.S.  As such, ILFC will separately request this Court to dismiss, based on *forum non conveniens* (FNC), any claim that remains pending following disposition of the instant motion to dismiss.[3]

Perhaps lost in the zeal to mollify the appearance of an inappropriate forum, and as more fully noted herein, plaintiffs have failed to recognize they have not, and cannot, state a claim against ILFC.  In fact, there are at least 3 problems with this litigation even more antecedent than the forum that provide the grounds for the instant motion to dismiss:

- First, the <u>Death on the High Seas Act (DOHSA) provides the exclusive cause of action</u> for any relief that may be available under U.S. law in this case.  While ILFC does not concede U.S. law applies, Plaintiffs' claims based on California's wrongful death and survival statutes, and not DOHSA, must be dismissed.
- Second, even if a claim were stated pursuant DOHSA, <u>ILFC is immune pursuant to 49 U.S.C. §44112</u>.  This statute provides that an owner or lessor of an aircraft is liable "only when" they are "in actual possession or control" of the aircraft "and" the "death…occurs because of (1) the aircraft…or (2) the flight of…the aircraft…"  Yemenia and not ILFC was in actual possession and control of the aircraft at the time of the crash.
- Third, the <u>Act of State doctrine bars this litigation</u>.  Plaintiffs' claims seek to impugn the authority of Yemen and necessarily call for and

---

[3] *See e.g., In re Air Crash over the Mid-Atlantic on June 1, 2009*, 2010 U.S. Dist. LEXIS 105881, *41 (N.D. Cal. Oct. 4, 2010); *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 816 (C.D. Cal. 2005).  Further, the public and private interests demonstrate that there is insufficient reason for this litigation -- decidedly more connected to France than California -- to impose any burdens on this Court.

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
*Hassanati v. International Lease Finance Corp., Case No. 2:11-cv-02251-MMM-MAN*

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

require this Court to address the validity of the sovereign acts of Yemen. Plaintiffs claims intimate that the Yemeni government, which licenses and oversees its aviation industry and its state-owned, flag-carrier, Yemenia Airways, is incompetent to do so.  The Act of State doctrine provides that litigation is not to proceed where it will call for the judiciary to assess such acts of a foreign sovereign and adjudge their validity.

In short, plaintiffs' complaint, even replete as it is with ill-conceived and inaccurate aspersions disguised as allegations, does not state a cause of action against ILFC.[4]

## II.    ARGUMENT

### A.    DOHSA IS EXCLUSIVE – THERE IS NO CLAIM UNDER CALIFORNIA WRONGFUL DEATH OR SURVIVAL STATUTES

The U.S. Supreme Court has clearly noted that the Death on the High Seas Act (DOHSA) preempts state claims and provides the exclusive source for recovery of any damages.  *See e.g. Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 123 (1998); *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 225-26, 229-30 (1996); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232-33 (1986)("…the conclusion that the state statutes are pre-empted by DOHSA where it applies is inevitable").  Under DOHSA: only the personal representative can bring a claim and then only for wrongful death; there are no survival claims.  *Id.*  DOHSA provides:

---

[4] Indeed, despite amending their pleading, these plaintiffs have still failed to cite EC regulations that pre-date the crash and post-date those cited in the complaint that debunk their allegations.  For example, EC Regulation 1131/2008 dated 14 November 2008, provides that "[t]he Commission heard the carrier on 15 October, where it received documentation demonstrating that the carrier reacted appropriately and in a timely manner to resolve the findings [of the ramp checks noted by plaintiffs] in a sustainable manner.  Therefore, the Commission considers that, on the basis of this information, no further action is needed."  These EC regulations are published by the EU when it issues its black list of specific carriers and/or all carriers of a particular State that are barred from operating in the EU due to a failure to meet international standards – neither Yemen nor Yemenia has ever been placed on such list.

Additionally, the ICAO inspection plaintiffs cite as conducted in April of 2004 was voluntary and was as to the Yemen Civil Aviation and Meteorology Authority (CAMA), not the airline, and was actually initially conducted July 26 through Aug 2, 2000.  The follow-up inspection occurred April 11 -13, 2004 and reported satisfactory resolution of the issues in the initial review.  As noted in a May 2009 World Bank Review Note on the Republic of Yemen Air Transport Sector performed by the Middle East and North Africa Region, Energy and Transport Unit, "According to ICAO's Universal Safety Oversight Audit of 2000, and its follow-up audit of 2004, Yemen has a 91.75% compliance rate with ICAO's Standards and Recommend Practices, which is far better than the world average."  See Ex. A, p. 16.

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

4

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 USCS § 30302.  In the context of commercial aviation accidents, such as alleged here by the plaintiffs, the high seas are those beyond 12 nautical miles from the shore of any U.S. State so that DOHSA does not apply to accidents occurring within this range.  *See* 46 USCS § 30307(c)("This chapter [46 USCS §§ 30301 et seq.] does not apply if the death resulted from a commercial aviation accident occurring on the high seas 12 nautical miles or less from the shore of the United States.")

In this case, as plaintiffs allege, the subject accident occurred in the Indian Ocean, well more than 12 nautical miles from the shore of any U.S. state.  See (Amd. Complaint, ¶62); *Helman v. Alcoa Global Fasteners Inc.*, --- F.3d ----, 2011 WL 855855 (9th Cir. Mar. 14, 2011) (affirming dismissal by Central District of California, Hon. S. Wilson, based on preemption by DOHSA of state law claims arising from crash in Pacific Ocean); *In re Air Crash Disaster Near Bombay*, India, 531 F. Supp. 1175, 1182-91 (Indian Ocean is considered "high seas" for purposes of DOHSA). Accordingly, DOHSA applies.  But, the plaintiffs have not pled any claim under DOHSA, rather "[t]his Complaint brings claims seeking damages under California's survival and wrongful death statutes by the Plaintiffs and heirs of Mohamed Abdou Said…"  *See* (Amd. Complaint, ¶51).  Indeed, plaintiffs reiterate in their pending, albeit inappropriate, motion to remand that they are asserting claims under California's wrongful death and survival statutes.  Further, none of the plaintiffs have alleged, as required by DOHSA, that they are the personal representative of the decedent, but proceed individually, as alleged heirs of the decedent and/or as a

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

*guardian ad litem* for minors.[5]

Plaintiffs' survival claims seek damages that are not recoverable under DOHSA. In *Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116 (1998), the Supreme Court addressed whether DOHSA "permits a decedent's estate to recover damages that the decedent would have been able to recover but for his death" and held that no such cause of action was permitted. *Id*. at 123-124. The plaintiffs in *Dooley* argued, "because DOHSA is a wrongful-death statute -- giving surviving relatives a cause of action for losses they suffered as a result of the decedent's death -- it has no bearing on the availability of a survival action." *Id*. The Court rejected this argument stating: "DOHSA expresses Congress' judgment that there should be no such cause of action in cases of death on the high seas. By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas." *Id*.

The Death on the High Seas Act applies to this accident occurring in the Indian Ocean. Plaintiffs' California wrongful death and survival claims must therefore be dismissed.

**B.     49 U.S.C. §44112 BARS PLAINTIFFS CLAIMS**

Even if plaintiffs were to assert a DOHSA claim, <u>ILFC is immune pursuant to 49 U.S.C. §44112</u>.[6] This statute clearly and succinctly provides:

---

[5] It is also noted that plaintiffs have not even presented an appropriate claim under the California Wrongful Death statute as there are additional heirs of decedents, as disclosed in litigation in France, that are not named in this action. Accordingly, pursuant to CCP §377.60, the instant complaint does not represent a proper single action. *Gonzales v. Southern California Edison Co.*, 77 Cal.App.4th 485, 489 (1999). Nonetheless, a claim under the California Wrongful Death statute is not even colorable as the statute does not apply extraterritorially to accidents occurring on the high seas. *See e.g. Beckett v. Mastercraft Boat Co.*, 126 Cal.App.4th 1045, 1050 (2005)("Plaintiffs have no California right of action for wrongful death under Code of Civil Procedure section 377.60. The statute "does not expressly deal with wrongful deaths occurring outside the State of California. No reported California case has suggested that the territorial reach of the statute extends to deaths on the high seas. 'We find nothing in Code of Civil Procedure, section 377[.60], indicating that it was intended to have any extraterritorial effect.'")(internal citations omitted). As such, there is no claim under California law and the DOHSA claim is not pled necessitating dismissal.

[6] 49 U.S.C. §44112 itself preempts state-based claims as to allow such claims would conflict with the federal statute. Further, the 9th Circuit has determined the field of aviation safety is preempted. *See e.g., Montalvo v. Spirit Airlines*,

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

"[a] *lessor, owner*, or secured party *is liable* for personal injury, death, or property loss or damage on land or water *only when* a civil aircraft, aircraft engine, or propeller is *in the actual possession or control* of the lessor, owner, or secured party, *and* the personal injury, *death*, or property loss or damage *occurs because of*— (1) *the aircraft*, engine, or propeller; *or* (2) *the flight* of, or an object falling from, the aircraft, engine, or propeller."

49 U.S.C. §44112(b)(emphasis added).  Plaintiffs appropriately allege that Yemenia Airlines, and not ILFC, was in actual possession and control of the aircraft at the time of the crash.  Thus, there is no claim against ILFC by operation of 49 U.S.C. §44112.[7]

The clear language of the statute absolves lessors of aircraft from liability except when accidents occur while the leased aircraft is in their actual possession or control.  As is evident from the language of the statute: there is no exception to its applicability; there is no restriction of its applicability to only claims of vicarious liability; there is only a limited scope of potential liability afforded for when the owner or lessor is in actual possession of the aircraft when an accident occurs or is operating the aircraft when an accident occurs.  The plaintiffs' claims here do not satisfy, and cannot satisfy, these conditions that define the limited scope of potential liability provided by the statute.  Indeed, the plaintiffs even allege that ILFC's "liability is based solely on its ownership of the accident aircraft."  (Amd. Complaint,

---

508 F.3d 464, 468 (9th Cir. 2007); see also *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. Cal. 2009).

[7] This provision was originally enacted in 1948 as an amendment to the Civil Aeronautics Act of 1938.  As noted in the House Report: "[p]rovisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liability for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft.  This bill would remove this doubt by providing clearly that such persons have no liability under such circumstances.  The relief thus provided from potential unjust and discriminatory liability is necessary to encourage such persons to participate in the financing of aircraft purchases." (House Report No. 80-2091, regarding the addition of the above language as §504 to the Civil Aeronautics Act of 1938, 52 Stat. 973; 49 U.S.C. §401, *et. seq.*)  Further, it was noted that "[t]his bill would make it clear that the generally accepted rule applies and assures the security owner or lessee [sic], that he would not be liable when he is not in possession or control of the aircraft.  1948 U.S.C.C.A.N. 1836 at 2.  Section 504 was later included in the 1958 Federal Aviation Act as 49 U.S.C. §1404.  §1404 was further revised and renumbered to its current designation, §44112 as discussed herein.  Plaintiffs allegation that ILFC's, "liability is based solely on its ownership of the accident aircraft" reveals that this case precisely fits the concern addressed by the statute.  (Complaint, ¶41).

7

¶89).

Given the broad immunity provided by the statute, there are only a few decisions that have dealt with attempts by plaintiffs to circumvent it, but the Federal Courts of the United States consistently recognize the immunity where it applies.  In *Matei v. Cessna Aircraft Co.*, 35 F. 3d 1142, 1144-45 (7th Cir. 1994), the U.S. Court of Appeals for the Seventh Circuit upheld a decision of a District Court granting summary judgment to an aircraft owner/lessor where the lessee had exclusive possession and control of the aircraft. *Id*.  The district court opinion affirmed by the Seventh Circuit expressly noted that the statute, "…preempts any contrary state law." *Matei v. Cessna Aircraft Co.*, 1990 WL 43351 (N.D. Ill. 1990).

The Federal District Court in Indiana thoroughly reviewed the statute, and the cases decided thereunder, including *Matei v. Cessna Aircraft Co.*, and concluded that state common law claims against aircraft lessors, who do not operate or control the aircraft at the time of the accident, are preempted by the statute.  *In re Inlow Accident*, 2001 WL 331625 at 14-18 (S.D.Ind. Feb. 7, 2001) ("The plain language of [the Statute] establishes that it preempts state common law claims against covered lessors.").  And, in *Ellis, et. al., v. Flying Boat, Inc., et. al.*, Case No. 06-20066, the Hon. Patricia A. Seitz of the United States District Court for the Southern District of Florida dismissed with prejudice the negligence claims asserted against the non-operator lessor based on 49 U.S.C. §44112.  (See Exhibit B).  As in the instant case, the plaintiffs in *Ellis* brought negligence claims against the lessor of the accident aircraft alleging that the aircraft was leased and that it was operated by the lessee at the time of the crash.  The lessor moved to dismiss the plaintiffs' claims based on 49 U.S.C. §44112 asserting the statute protected them from all tort liability.  The court agreed and held, "[b]ased on plaintiffs' allegations, [the lessor] did not have actual possession or control of the aircraft when the accident occurred.  Thus, the statute shields [the lessor] from liability for Plaintiffs' losses." *Id*.

ILFC is clearly afforded the protection from liability provided in the statute as

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

8

they were, and are alleged by the plaintiffs to be, the owner and lessor of the subject aircraft. (Amd. Complaint, ¶81). Further, plaintiffs admit ILFC was not in actual possession or control of the subject aircraft at the time of the accident.[8]   Again, the plaintiffs properly alleged that Yemenia Airways, and not ILFC, was in actual possession and control of the subject aircraft on June 30, 2009 when it crashed into the Indian Ocean. (Amd. Complaint, ¶¶84-85, 87). As plaintiffs allege, the subject aircraft had been in the foreign sovereign Yemenia Airways' possession for nearly *10* years, under lease since September 1999. (Amd. Complaint, ¶¶56-57). Accordingly, as the subject aircraft was in the actual possession and control of Yemenia Airways at the time of the crash, the claims against the lessor ILFC must be dismissed as barred by 49 U.S.C. §44112.

## C.   ACT OF STATE DOCTRINE BARS LITIGATION

While both DOHSA and 49 U.S.C. 441112 each demand dismissal of the plaintiffs' complaint for the reasons stated above, the Act of State doctrine provides yet another and overarching basis upon which the case be dismissed with prejudice.

Plaintiffs' lone negligent entrustment claim calls for this Court to consider the Government of Yemen incompetent and unfit to act as a sovereign in licensing and overseeing its aircraft operators, such that the licenses and certificates issued by Yemen are rendered invalid. (Complaint, ¶71). But, this Court is not at liberty to make such a finding and, in fact, is bound to uphold and recognize the validity of the certificates and licenses issued by foreign States. It is impossible for the Yemen certificates and licenses issued to Yemenia Airlines and as to the Subject Aircraft to be valid and yet the airline be incompetent and unfit. This Court is thus obligated to abstain from hearing plaintiffs' claim because the validity of Yemen's official acts to authorize and license Yemenia Airways to operate the subject aircraft are squarely put at issue. *See e.g. Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 416 (1964)

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

---

[8] Plaintiffs have amended their complaint to assert a manner of constructive control over the aircraft (Amd. Complaint, ¶86), but the statute expressly demands actual control of the aircraft at the time of the accident.

*citing Underhill v. Hernandez*, 168 U.S. 250, 252 (1897).  As the U.S. Supreme Court has stated:

> Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory.

*Id*.; *see also In re: Philippine National Bank*, 397 F.3d 768, 773-74 (9th Cir. 2005) *citing Callejo v. Bancomer, S.A,* 764 F.2d 1101, 1121-25 (5th Cir. 1985) and *Tchacosh Co. v. Rockwell Int'l Corp.*, 766 F.2d 1333, 1337 (9th Cir. 1985)("[T]he [act of state] doctrine is to be applied pragmatically and flexibly, with reference to its underlying considerations."); *West v. Multibanco Comermex*, 807 F.2d 820, 827 (9th Cir. 1987)("The act of state doctrine is a combination justiciability and abstention rule developed in pre-*Erie* days and reaffirmed in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 11 L. Ed. 2d 804, 84 S. Ct. 923 (1964)."); C*allejo,* 764 F.2d at 1121-25 (5th Cir. 1985) *citing Sabbatino*, 376 U.S. at 428 ("In the act of state context, even if the defendant is a private party, not an instrumentality of a foreign state, and even if the suit is not based specifically on a sovereign act, we nevertheless decline to decide the merits of the case if in doing so we would need to judge the validity of the public acts of a sovereign state performed within its own territory.")

The U.S. Supreme Court reiterated, "[i]n every case in which we have held the act of state doctrine applicable, the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory."  *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp. Int'l*, 493 U.S. 400, 405 (1990).  The Supreme Court stated further that "[t]he act of state doctrine is not some vague doctrine of abstention but a principle of decision binding on federal and state courts alike....As we said in *Ricaud*, 'the act within its own boundaries of one sovereign State ... becomes ... a rule of decision for the courts of this country.'  Act of state issues only arise when a court must decide-that is, when the outcome of the case turns upon-the effect of official

10

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1   action by a foreign sovereign.  When that question is not in the case, neither is the act

2   of state doctrine." *Id*.

3         The official action of Yemen in certifying the airworthiness of the subject

4   aircraft, issuing the Air Operator's Certificate (AOC) to Yemenia Airways and

5   inspecting the operation of Yemenia Airways are squarely at issue in this case.

6   Plaintiffs even allege the approval of airworthiness was done by Yemen and the

7   aircraft was registered in Yemen.  (Amd. Complaint, ¶71(L)).  Yemenia's AOC is

8   issued by Yemen's Civil Aviation and Meteorology Authority (CAMA) which

9   authorizes it to operate aircraft.  *See e.g.* Exhibit C (Commission Regulation (EU) No.

10  273/2010) ("CAMA has the ability to conduct effective oversight of Yemenia Yemen

11  Airways and thus ensure carriers, to whom they issue an AOC, are able to maintain a

12  safe operation in accordance with ICAO standards; and that Yemenia Yemen Airways

13  control and supervision of their operation is adequate to ensure that they operate in

14  accordance with the requirements governing their AOC").

15        The acts of a foreign sovereign like Yemen in issuing licenses to aircraft

16  operators further to its aviation regulations is indisputably the type of act of state to

17  which the doctrine of abstention applies.  *See e.g. World Wide Minerals, Ltd. v.*

18  *Republic of Kazakhstan*, 116 F.Supp.2d 98 (D.D.C. 2000)(the act of state doctrine

19  barred the court from deciding claim that implicated the Republic of Kazakhstan's act

20  of not providing an export license to plaintiff); *Callejo v. Bancomer, S.A.*, 764 F.2d

21  1101 (5th Cir. 1985)(court refused to intervene in a dispute implicating the legitimacy

22  and applicability of Mexico's exchange control regulations.)  Further, the Ninth

23  Circuit has held that it is not appropriate for U.S. Courts to address cases where

24  compliance by foreign officials with foreign regulations would be put at issue.  *West*,

25  807 F.2d at 828 (9th Cir. 1987)("The plaintiffs here challenge the compliance of

26  Mexican officials with enforcement provisions of the Mexican regulatory scheme.

27  The acts or omissions of the sovereign is the determinative issue on this claim. The

28  evaluation by one sovereign of foreign officers' compliance with their own laws

1   would, at least in the absence of the foreign sovereign's consent, intrude upon that

2   state's coequal status.  Thus, further inquiry into the actual operation of the

3   nationalized Mexican banking system to the extent that it implicates the non-

4   compliance of officials with their own laws is barred under the act of state doctrine").

5   In this case, finding Yemenia Airlines incompetent and unfit to be an operator (as is

6   necessary to assert a negligent entrustment claim) requires the invalidation of the

7   certificate of airworthiness and AOC that was issued by Yemen.  Again, this is

8   precisely the type of result that the Act of State doctrine bars.

9         The Act of State doctrine is even further echoed in the instant matter in Article

10  33 of the Convention on International Civil Aviation (the Chicago Convention)

11  opened for signature, December 7, 1944, 61 Stat. 1180, 15 U.N.T.S. 295, T.I.A.S. No.

12  1591 (ratified by the United States August 9, 1946).  Art. 33 of the Chicago

13  Convention provides that, "Certificates of airworthiness and certificates of

14  competency and licenses issued or rendered valid by the contracting State in which the

15  aircraft is registered, shall be recognized as valid by the other contracting states,

16  provided that the requirements under which the certificates or licenses were issued or

17  rendered valid are equal to or above the minimum standards which may be established

18  from time to time pursuant to this Convention."  *Id.; see also British Caledonian*

19  *Airways Limited v. Bond*, 665 F.2d 1153, 1160 (D.C. Cir. 1981)(in action by foreign

20  carriers, Court of Appeals held order of FAA prohibiting operation of foreign

21  registered aircraft in the U.S. violated Chicago Convention).

22        As noted in *British Caledonian*, "[t]hus, under Article 33, the judgment of the

23  country of registry that an aircraft is airworthy must be respected, unless the country

24  of registry is not observing the 'minimum standards.'"  *Id.*  The Court of Appeals

25  further advised that "according to the FAA, "there are no 'judicially discoverable and

26  manageable standards' by which a court can determine whether the safety provisions

27  of the relevant international agreements have been properly implemented."  *Id.* at

28  1161.  The Court did not dispute the FAA's assertion, but "did not agree that our task

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

12

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

is to determine whether the petitioners' aircraft were certified under requirements that meet the minimum safety standards [in the Chicago Convention]." *Id.* Because the question before the court "does not entail examination of technical materials at all" the court held that it did not, "lack judicially manageable standards." *Id.* at 1162. In the instant case, the situation is quite the opposite. If this Court were to hold Yemenia incompetent to operate aircraft, it would necessarily invalidate the licenses issued by Yemen. And doing so, not only invokes the act of state doctrine, but would also inappropriately call for the court to assess whether Yemen's requirements meet minimum safety standards of the Chicago Convention – precisely the issue the court avoided in *British Caledonian* as it would reveal a "lack of judicially manageable standards."[9]

In short, the Act of State doctrine compels the court to leave to Yemen its decisions to oversee and license operation of aircraft registered in Yemen. The Chicago Convention further compels this conclusion and, consistent with the concerns of separation of powers reflected in the Act of State doctrine, leaves for the executive (here, the FAA) to assess whether a foreign sovereign is meeting international standards.[10] *See e.g. W.S. Kirkpatrick*, 493 U.S. at 404 ("We have more recently described [the Act of State Doctrine], however, as a consequence of domestic

---

[9] Indeed, such a lack of manageable standards renders this matter a nonjusticiable political question to which this Court must decline to adjudicate the merits. *See e.g. Spectrum Stores v. Citgo Petroleum Corp.*, 638 F.3d 938, 949-954 (5th Cir. 2011). Additionally, neither the ICAO, the European Union nor the FAA have found that Yemen's requirements are not equal to or above minimum standards. The cherry-picked language plaintiffs have quoted in their complaint are from out-dated EC Regulations. But, even these regulations do not suffice for plaintiffs. As stated *supra* note 4, these regulations are used to publish the list of carriers and countries the EU considers, after inspection, do not meet international standards. This "black-list" has never included Yemen or Yemenia Airways. It would be entirely inappropriate and impermissible for this Court to invalidate Yemen's certificates and adjudge whether Yemenia Airways was incompetent and unfit as plaintiffs allege.

[10] The FAA performs this function by way of its International Aviation Safety Assessment (IASA) program. The IASA is comprehensive and reveals precisely why such assessment is committed to the Executive branch, as it demands coordination and cooperation between the U.S. FAA and the subject civil aviation authority under review, it notes the significant relevant expertise and training required to perform such a review and compels the conclusion that this Court cannot perform such a review further to invalidating a foreign sovereign license. *See e.g.* Broderick, Anthony J., *Government Aviation Safety Oversight – Trust, but Verify*, 67 J. Air L. & Com. 1035 (2002); Dempsey, Paul Stephen, *Compliance & Enforcement in International Law: Achieving Global Uniformity in Aviation Safety*, 30 N.C.J. Int'l L. & Com. Reg. 1 (2004).

---

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
*Hassanati v. International Lease Finance Corp., Case No. 2:11-cv-02251-MMM-MAN*

Locke Lord Bissell & Liddell LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

separation of powers, reflecting "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder" the conduct of foreign affairs.")(internal citations omitted).  Because plaintiffs' claim requires this Court to find Yemenia Airways incompetent and unfit, it necessarily is asked to invalidate the act of the foreign sovereign, Yemen.  The Act of State doctrine precludes the court from addressing this case.

<u>**CONCLUSION**</u>

The plaintiffs have not and cannot state a claim against ILFC in this case.  Both DOHSA and 49 U.S.C. §44112 preempt the California state claims pled (themselves insufficiently asserted in view of the single action rule and the lack of extra-territorial application).  Further, 49 U.S.C. §44112 bars all tort claims against an aircraft owner or lessor, such as ILFC, except when the accident occurs while the aircraft is in the actual possession or control of the owner or lessor.  And, finally, the Act of State doctrine bars any consideration of the negligent entrustment matter as it improperly calls for the court to invalidate the act of a foreign sovereign, here Yemen, in authorizing and issuing Yemenia Airways' operators certificate and the subject aircraft's certificate of airworthiness.  Accordingly, plaintiffs' complaint and all claims asserted therein must be dismissed with prejudice.

Dated: May 31, 2011          LOCKE LORD BISSELL & LIDDELL LLP


By:   _/s/ Daniel A. Solitro_____
      Daniel A. Solitro
                    and
      Gary W. Westerberg (*admitted pro hac vice*)
      Matthew J. Kalas (*admitted pro hac vice*)
      Attorneys for Defendant
      INTERNATIONAL LEASE FINANCE
      CORPORATION

1

2

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel A. Solitro, an attorney, do hereby certify that on May 31, 2011, I electronically filed the foregoing **INTERNATIONAL LEASE FINANCE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** with the Clerk of the Court using the electronic case filing system, which will send notification of such filings to the parties registered with the Court's CM/ECF system.

Dated: May 31, 2011            By:   */s/ Daniel A. Solitro*
                                          Daniel A. Solitro

LA:1000772/00002:673681v2

**Locke Lord Bissell & Liddell LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA 90071**