Walter J. Lack, Esq. (State Bar #57550)
Mark E. Millard, Esq. (State Bar #175169)
ENGSTROM, LIPSCOMB & LACK
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4107
Tel: (310) 552-3800
Fax: (310) 552-9434
Email: wlack@elllaw.com
Email: mmillard@elllaw.com

Thomas V. Girardi, Esq. (State Bar #36603)
Keith D. Griffin, Esq. (State Bar #204388)
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554
Email: tgirardi@girardikeese.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| MMADI MLATAMOU HASSANATI, individually, as heirs and as Successor in Interest to MOHAMED ABDOU SAID, deceased<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-100,<br><br>Defendants. | CASE NO.: 2:11-CV-02251-MMM-Mn<br>Hon Margaret M. Morrow<br><br>**OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV.[sic] 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARK E. MILLARD; OBJECTIONS TO DEFENDANT'S EXHIBITS; and REQUEST FOR ORAL ARGUMENT**<br><br>**DATE: August 29, 2011**<br>**TIME: 10:00 A.M.**<br>**CTRM: 780** |

TO THE HONORABLE COURT, DEFENDANT AND TO ITS ATTORNEYS OF RECORD:

PLAINTIFFS submit their Opposition to Defendant's Motion to Dismiss (Fed. R. Civ. Proc. 12(b)(6).

This Opposition is made on the following grounds:

1) The Death on the High Seas Act (DOHSA) does not apply to this action. 28 U.S.C. §1441(b).

2) The Federal Aviation Act 49 U.S.C. §44112 Lessor Liability Immunity does not apply to this Action; and

3) The Act of State Doctrine does not apply to this Action.

4) Plaintiffs request an opportunity to conduct discovery should the Court conclude that insufficient allegations have been pled.

This Opposition, the attached Memorandum of Points and Authorities, the Declaration of Mark E. Millard and the exhibits attached thereto, on all pleadings, papers and records on file herein, and on such other and further oral and documentary evidence as may be presented at the hearing of this motion.

DATED: July 18, 2011 ENGSTROM, LIPSCOMB & LACK

By: /s/ Mark E. Millard
WALTER J. LACK, ESQ.
MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant presents a motion laden with irrelevant material outside the pleadings, to bolster its argument that a negligent lessor of a dangerous instrumentality should be exempt from liability. Because California and U.S. law recognize claims against negligent owners and lessors, the Motion should be denied.

## II. RELEVANT FACTS

On June 30, 2009 Yemenia Airlines Flight IY 626 crashed while on approach to the Moroni-Prince Said Ibrahim International Airport in Moroni, Comoros. All aboard the airplane save one perished in the crash into the Indean Ocean, a few miles short of the destination.

The Aircraft, a 1990 Airbus A310-300 bearing Yemeni registration of 70-ADJ, was owned by Defendant International Lease Finance Corporation (hereafter "ILFC"). In 1999, ILFC entered into an Aircraft Lease Agreement with Yemenia Airlines ("Yemenia"), an air carrier jointly owned by the Governments of Yemen and Saudi Arabia (Yemen is a 51% owner and the Government of Saudi Arabia owns the other 49%). ILFC provided a valuable and potentially dangerous instrumentality to Yemenia, and it naturally attached strong conditions when it did so, to ensure its ongoing control over the aircraft and its lessees. Thus, as part of its Master Lease Agreement, ILFC insisted that:

A. Title to the Aircraft remain vested in ILFC;

B. ILFC shall have the right to inspect the Aircraft at any time upon reasonable notice;

C. The Aircraft shall maintain affixed to its airframe and engine at all times identification plates stating that "This Aircraft/Engine is owned by International Lease Finance Corporation";

D. Insurance will be maintained that provides for ILFC to be named as an additional insured;

E. The Aircraft shall be returned to ILFC [located in Los Angeles, California] in the United States at the end of the lease term; and

F. The *lease is being delivered in the State of California* and ***will in all respects be governed and construed in accordance with the laws of the State of California.***[1]

For all its apparent concern about the aircraft, ILFC nonetheless neglected the single most important risk to the aircraft and those hapless individuals destined to fly in it: Yemenia's own incompetence. Yemenia had a long and sorry history of international incidents involving aircraft registered to it, and much of that history involved this particular aircraft. The airline and its crew were incompetent, unfit, inexperienced and incapable of safely maintaining and flying a complex and sophisticated jetliner like the Airbus.

Plaintiffs' complaint described some of the factors and incidents that, years ago, put ILFC on notice that Yemenia was unfit. Plaintiffs alleged that prior to September 1999, ILFC had reason to know and did know or, in the exercise or reasonable diligence should have known, that Yemenia had produced a long and notorious history of poor maintenance on an epic scale, poor pilot training and total lack of compliance with minimum standards of safety at every level of the company. (Complaint ¶¶24, 35 and 36; *see* Exh 1, attached for the Court's convenience.)

Plaintiffs, the families and heirs of many of those who perished, brought suit for negligent entrustment in California, where the lease was delivered, where ILFC does business and where it chose to be sued. The action is based on California law and involves no federal question. The liability sought to be imposed upon ILFC is not vicarious; rather, **liability is direct, based on ILFC's ownership of the Aircraft**, and its

---

[1] Plaintiffs base these conclusions on information and belief, and they believe that the operating lease contains these terms and conditions based on similar leases. Plaintiffs request the opportunity to examine the specific lease for the accident aircraft, which should be produced in connection with party disclosures.

negligent entrustment of it to a patently unfit operator. (Complaint ¶41) The complaint seeks damages under California's survival and wrongful death statutes.

ILFC's Motion to dismiss misses the mark. The conduct on which Plaintiffs' claims are predicated was the conduct of ILFC alone. That conduct occurred in Los Angeles, not in Yemen and not in the Indian Ocean. ILFC's fact-laden motion should be confined to the facts alleged in the Complaint alone, and on those facts, which will be proven at trial, Plaintiffs have stated a claim upon which relief may be had under California law. The motion should be denied.

## III. STANDARDS APPLICABLE TO RULE 12(b)(6) MOTIONS

A Rule 12(b)(6) motion tests the legal sufficiency of the claim stated in the complaint. The issue before the Court is whether the facts alleged, if true, would entitle the plaintiffs to legal relief. If plaintiffs are entitled to some relief, the motion must be denied. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957); *De La Cruz v. Tormey* 582 F.2d 45, 48 (9th Cir. 1978). Furthermore, courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified School Dist* 37 F.3d 517, 521 (9th Cir. 1994).

In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, and determine whether *any* set of facts can be proven to support a claim meriting relief. *Cahill v. Liberty Mut. Ins. Co.* 80 F.3d 336, 337-338 (9th Cir. 1996); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The Court should further accept as true all factual material allegations in the Complaint and indulge all reasonable inferences drawn from them. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993), *N.L. Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

Thus, dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.* 901 F.2d 696, 699 (9th Cir.

1990). "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.* 58 F.3d 295, 297 (7th Cir. 1995).

The Court must construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998); *Johnson v. Knowles,* 113 F.3d 1114,17 (9th Cir. 1997); *and see* 5B Wright & Miller, Federal Practice and Procedure §1357 (3d ed.), quoting *Conley*, *supra* 355 U.S. at 45-46. Under this rule, dismissal without leave to amend is appropriate only where deficiencies of the complaint cannot possibly be cured by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996); *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987).

## IV. EXTRINSIC EVIDENCE SHOULD BE DISREGARDED BY THIS COURT AS INADMISSIBLE, IMPROPER AND IRRELEVANT

In ruling on a motion to dismiss, a district court generally "may not consider any material beyond the pleadings." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Defendant attaches extrinsic materials well beyond the scope of the complaint, and not properly before this court on a motion to dismiss. *See, e.g., Arpin v. Santa Clara Valley Transp. Agency*, 261 F3d 912, 925 (9th Cir. 2001), *and see* Schwarzer et al, Cal. Prac. Guide Fed. Civ. Pro. Before Trial §9.211 (The Rutter Group). Were the Court to consider extrinsic matters (as a converted summary judgment), plaintiffs must be given ample time and reasonable opportunity to present all material evidence in their favor. Fed R.Civ.Proc. 12(d).

Plaintiffs object to the factual allegations in Defendant's motion and to its Exhibits, on the grounds that they are extrinsic to complaint, and do not qualify for judicial notice. Plaintiffs concurrently submit their formal objection to Defendant's exhibits.

## V. ARGUMENT

### A. Death On The High Seas Act Does Not Apply

The Death on the High Seas Act, 49 U.S.C. §30302 ("DOHSA") has no application to this action because the wrongful acts alleged by Plaintiffs, who are masters of their complaint, do not include wrongful acts on the high seas. DOHSA §30302 applies only:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States...

Plaintiffs' complaint unambiguously alleges negligent entrustment by ILFC beginning in 1999, right here in Los Angeles, not an event occurring on the high seas at all. ILFC chose to have its conduct under its lease adjudicated in California under California law, not maritime law. The wrongful act complained of is the negligent entrustment of a dangerous instrumentality, an Airbus A300, to a known unfit, incapable and incompetent airline.

#### 1. The Wrongful Acts And Neglect Did Not Occur On The High Seas

As Defendant concedes (Motion, p. 3, line 12), the complaint alleges a simple claim for negligent entrustment. "Liability for negligent entrustment is determined by applying general principles of negligence, and ordinarily it is for the jury to determine whether the owner [or other entruster] has exercised the required degree of care." *White v. Inbound Aviation*, 69 Cal.App.4th 910 (1999), citing *Allen v. Toledo,* 109 Cal.App.3d 415, 421 (1980), *and see* Restatement (Second) of Torts § 390, which sets forth a similar standard. "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them."

Liability is imposed on the owner/entruster for its own independent negligence, not that of the driver or operator. *Allen, supra,* 109 Call.App.3d at 420. The liability is direct, not vicarious, based on the owner's own conduct.

Defendant does not fault the allegations of negligent entrustment; rather, ILFC alleges that because, by happenstance, the landing accident put the aircraft in the water, the state law case is converted to a DOHSA case. But since the act of delivery and entrustment occurred in Los Angeles, and because ILFC's surveillance of its lessee all happened right here, the "wrongful act, neglect or default" did not happen on the high seas, in the parlance of DOHSA. *And see Lowe v. Trans World Airlines, Inc.* 396 F.Supp.9 (S.D.N.Y. 1975)(plaintiffs sued airline and individual officers for their failures to prevent and detect the planting of a bomb while on land; as plaintiffs had not invoked DOHSA, the Court concluded that the claims did not fit within DOHSA, for purposes of removal jurisdiction).

### 2. DOHSA Affords Pecuniary And Nonpecuniary Damage Remedies By The Commercial Exception To DOHSA

Even if Plaintiffs' claims against ILFC were deemed to have resulted from a wrongful act on the High Seas, that would afford no basis for dismissal, as the Complaint alleges a claim viable under DOHSA. This is so because the "Commercial Exception" to DOHSA, 49 USC §30307, provides that both pecuniary and nonpecuniary damages are available for a death within the terms of the statute – damages commensurate with those available under California law. For instance, nonpecuniary damages are defined as "damages for the loss of care, comfort, and companionship." 49 USC §30307(a).

Plaintiffs asserted damages pursuant to California Code of Civil Procedure §§377.60, 377.10, 377.20, 377.30 et seq., or any other law the court deems to apply. There was and is no requirement under the Federal pleading rules that they also expressly invoke DOHSA by name. As such, dismissal is not warranted and the Motion should be denied.

### 3. The Crash Occurred In Foreign Territorial Waters And, Therefore, This Action May At Plaintiffs' Option Be Brought Pursuant To Such Foreign Territory's Laws

Although it is premature to decide governing law, it is undisputed that DOHSA preserves the law of other jurisdictions. If DOHSA applies, (and Plaintiffs assert that it does not) an action may be brought in US courts based on foreign law at Plaintiffs' option. This is so because Congressional passage of DOHSA specifically preserved foreign law causes of action otherwise available:

> When a cause of action exists under the law of a foreign country for death by wrongful act, neglect, or default on the high seas, a civil action in admiralty may be brought in a court of the United States based on the foreign cause of action, without abatement of the amount for which recovery is authorized. 46 U.S.C. §30306.

In *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221-22 (1986), Justice O'Connor explained that "Section 4" (now revised as §30306) was designed to preserve, not preempt foreign law, and that it did so with an "explicit command."

Since DOHSA preserves foreign remedies, Plaintiffs need go no further in opposing ILFC's motion, as it is premised on the faulty notion that DOHSA extinguishes all claims other than those described in §30302. As demonstrated above, the governing statute for accidents in foreign territorial waters is §30306. ILFC hasn't carried its burden to show why, in the face of §30306, it may nonetheless prevail, and its motion thus fails. And, in the event the Court were to conclude that pleading rules demand amendment to identify the "personal representatives" of decedents, Plaintiffs request leave to do so.

## B. Lessor Liability Statute, 49 USC §44112, Affords No Immunity For The Claims Asserted In This Action

Defendant objects to being held accountable for having entrusted an extraordinarily dangerous instrumentality to a wholly unqualified foreign air carrier that boasted a dismal

safety record, culminating in the crash of Flight 626. ILFC contends that Congress bestowed upon it a blanket immunity that permits it to deliver the deadliest of instrumentalities, anywhere and anytime it pleases.[2]

Defendant is wrong on the law, the intent of the law and the facts of this case as applied to the law.

### 1. Liability Attaches To Lessor/Owner With Control

Defendant would frame §44112 as a limitation on liability when in fact, it does just the opposite, attaching liability on owners and lessors who have control over the aircraft. 49 U.S.C. §44112 provides:

> (b) Liability – ***A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage*** on land or water only when a civil aircraft, aircraft engine, or propeller is in the actual possession or control of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of –
>
> (1) the aircraft, engine, or propeller; or
>
> (2) the flight of, or an object falling from, the aircraft, engine, or propeller. (emphasis supplied.)

Congress plainly meant what it said when it recognized liability for two different types of status of the lessor/owner: 1) "actual possession" or 2) control. Congress was clear in stating that: "An owner in possession or control of aircraft, either personally or through an agent, should be liable for damages caused." House Report 8-2091.[3] The word "control" was neither equated with "operation" nor "use" – both terms are narrower in

---

[2] That modern jetliners are among the deadliest of weapons was catastrophically proven with the September 11, 2001 attacks on the World Trade Center and the Pentagon. If ILFC enjoys immunity even for its own negligence, what is to prevent it from delivering aircraft to those who would repeat that terrible day?

[3] Defendant cites to the House Report in support of its Motion, at fn. 7, *see* Exhibit 2.

concept and use in the law. Nor did Congress express any desire to exonerate an owner from its own ***direct*** malfeasance in supplying aircraft to those likely to misuse them.

Hence, ILFC as a lessor is liable for death when its aircraft over which it exercised "control" crashed. ILFC takes pains to explain that it wasn't in actual possession of the aircraft, but it cannot distance itself from its control of that jet – a different concept altogether. Plaintiffs have alleged facts on which a trier of fact can and will conclude that ILFC exercised control over the plane.

Defendant cites no case deciding, at the pleading stage or later, that Section §44112 grants immunity to a negligent lessor with control of the aircraft, a fact-driven inquiry. In the case at bar, at the pleading stage, Plaintiff respectfully submits dismissal would be inappropriate. Plaintiffs First Amended Complaint, sufficiently alleged as much in the following:

> 86. At all material times relevant hereto, ILFC maintained, by and through the lease, control over the ACCIDENT AIRCRAFT with respect to maintenance, inspections, operations, training and/or compliance with applicable safety standards.
>
> And
>
> 90. Because ILFC, by the terms of its Lease, maintained control over compliance with maintenance and operational requirements and compliance with required safety standards, ILFC knew or should have known that YEMENIA had failed and was continually failing to comply with such requirements, and, thereby, ILFC failed to comply with its own duty to cause the ACCIDENT AIRCRAFT to be deregistered, exported and returned to ILFC in Los Angeles, California before anyone could be injured.

The complaint alleges that ILFC is liable for its own negligent control, as an owner and lessor, for the deaths and damages occasioned by the crash of its aircraft, based on its role as an active owner that exercised and maintained control over the aircraft from the moment it delivered the lease to Yemenia – not as a passive owner holding a mere secured

interest. ILFC was in control of the airplane from the moment of its negligent entrustment and continuing to the crash.

**2. The Language and Intent of the Act Supports Plaintiffs Claims Against ILFC**

Section 44112 traces its origins to a 1948 amendment to the Civil Aeronautics Act of 1938. The Act has gone through a number of revisions and transformations since then. The original purpose of the Act is to promote and facilitate financing for the purchase of aircraft. *McCord v. Dixie Aviation Corp.*, 450 F.2d 1129, 1130 (10th Cir. 1971); *Rogers v. Ray Gardner Flying Service, Inc,* 435 F.2d 1389, 1394 (5th Cir. 1970). In addressing the 1948 amendments to the Civil Aeronautics Act of 1938, as set forth in House Report 8-2091, the Senate Committee on Interstate and Foreign Commerce observed: "It is the conviction of the committee that the bill should be passed to remove one of the obstacles to the financing of purchases of new aircraft." 1948 U.S.C.C.A.N.1836, at 2. The Committee also set forth its purpose and intent for including lessors in the language of the bill stating:

> The limitation with respect to leases of 30 days or more, ***in case of lessors of aircraft, was included for the purpose of confining the section to leases executed as a part of some arrangement for financing purchases of aircraft.*** Any lease in connection with any such arrangement would almost certainly be for a period in excess of 30 days. *Id.*

But the Committee also stressed that: "An owner in possession or control of aircraft, either personally or through an agent, should be liable for damages caused." Id. When given its plain English meaning, then, §44112 imposes liability on owners and lessors, unless that liability is purely vicarious, without blame or fault. Instances of "control" or independent negligence are not exonerated.

ILFC did not relinquish complete control as did the owner of the Cessna 210, Robert Hansel, discussed by the Seventh Circuit in *Matei v. Cessna Aircraft Co.*, 35 F.3d

1142 (7th Cir. 1994). In *Matei*, (not a pleading case) the Court was presented with undisputed evidence of an oral lease that provided Prompt Air with exclusive possession and control of the aircraft, a very different situation than present here.

In *Vreeland v. Ferrer*, __ So.3d.__, 2011 WL 2652187 (July 8, 2011), the Florida Supreme Court provided the most extensive analysis of the intent and reach of § 44112 yet. There a passenger's estate sued an aircraft owner for both direct negligence and vicarious negligence of the pilot. The trial court had granted summary judgment, reasoning that § 44112 foreclosed both claims. The District Court of Appeal reversed the summary judgment on direct negligence, but left intact the ruling on vicarious liability. The Florida Supreme Court examined the law, its history and the rules by which federal statues may preempt state law, and concluded in a carefully reasoned opinion that § 44112 does not preempt claims brought by passengers' estates under state law.

The Court first noted the Florida law imposes strict liability on product lessors. *Id.* at 4. It next looked to the federal statute and federal preemption rules and observed that Congress should not be deemed to "cavalierly pre-empt state-law causes of action" absent a "clear and manifest purpose of Congress." *Id.* at *5, quoting *Rice v. Santa Fe Elevator Corp.* 331 U.S. 218, 230 (1947), *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). The Court then noted that federal aviation law specifically preserves existing state law remedies: "A remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). Since § 44112 contains no express preemption language, it can only supplant state law if preemption is implied, a disfavored approach, particularly in the context of tort law. *Vreeland* at *6.

The Court then traced the statute through its history, beginning with its adoption as Section 504 in 1948. The Court observed that as enacted, the intent was to protect those who are owners *for security purposes only*. The liabilities from which those owners were protected were injuries "*on the surface of the earth (whether on land or water).*" On each recodification of the statute, House Reports reflected that there was no substantive change

to the enactments. Since every version of the statute, including the present version, insulates only a non-negligent, vicariously liable owner or lessor for injuries that occur on land or water or on the surface of the earth, that the statute means injuries to people physically underneath but not in the aircraft. This is both a correct and literal reading of the law and one in harmony with Congressional intent. The House Report accompanying §504 acknowledged then-existing liability rules under the Uniform Aeronautics Act applicable to injuries to persons "on the land or water beneath" which reinforced the Court's conviction that Congress understood and intended the terms it used. Indeed, 49 U.S.C. §40103 recognized a goal of the FAA and accompanying laws was "(B) *protecting individuals and property on the ground.*" *Vreeland* at *11, emphasis in original.

The Court examined the cited authority for purported preemption of state law and concluded that §44112 preempts only claims for injuries outside the aircraft. *Id.* at * 13. The Florida Supreme Court thus agreed with *Storie v. Southfield Leasing, Inc.* 90 Mich.App. 612, 282 N.W. 2d 417, 418 (Mich.Ct.App. 1979) (preemption only applies to injuries on the ground, not inside the aircraft). The Court concluded that §44112 does not preempt Florida's vicarious liability law for passengers, and it specifically left undisturbed the District Court of Appeal ruling reinstating direct negligence claims.

*Vreeland* and the extensive authority cited in it explain convincingly why §44112 has no application to Plaintiffs' claims here: First, they sue for direct negligence, a concept completely outside the scope of the statute, and second, the statute applies to exempt vicarious liability for harm on the ground, not inside the aircraft. Indeed, it is unimaginable that Congress would enact laws to promote the delivery of jet airplanes into the hands of carriers incapable of safely operating passenger carrying aircraft – or worse -- terrorists. This is, however, precisely the untenable position Defendant takes.

### 3. The Law and Facts Support Plaintiffs' Claims Against ILFC

ILFC is an active owner who maintained control over the aircraft, as well as financial responsibility for its use. Plaintiffs have alleged that ILFC reserved to itself the

right to maintain vigilant oversight and management of the aircraft's maintenance. ILFC controlled how, when and by which specifications all maintenance shall be done on the aircraft and required regular reporting, in English, of same. ILFC maintained control over the physical inspection of the aircraft at any time. Upon ILFC's determination, pursuant to its regular and routine oversight and control of the aircraft maintenance, concluded a failure to properly maintain the aircraft, ILFC could cause the aircraft to be flown to any location of its choice, to ground the aircraft, to take possession and/or to deregister and export the aircraft back to California. *See* complaint, ¶¶ 58 – 61.

Among those allegations supporting the conclusion that ILFC controlled the aircraft are these:

As an active owner, ILFC maintains control over the folowing nonexclusive list of matters:

(a) ILFC maintains control over its own physical inspection of the ACCIDENT AIRCRAFT and its documentation at any time during the Lease (Compl. ¶ 58 B, 60 E);

(b) ILFC maintains control over when, where and what specific maintenance shall be performed on the aircraft. Specifically that, Yemenia shall see that the Aircraft, its engine and parts, are maintained and repaired in accordance with all Manufacturer's scheduled maintenance, the Aviation Authority's Regulations and in accordance with any other regulations or requirements necessary to maintain a valid Certificate of Airworthiness and for issuance of a Standard Certificate of Airworthiness for transport category aircraft issued by the FAA in accordance with FAR Part 21 (Compl. ¶ 60 B);

(c) ILFC controls the aircraft through its active management of the aircraft's maintenance by requiring YEMENIA, on a monthly and annual basis, to prepare and provide to ILFC, reports written in English regarding the maintenance performed on the aircraft (Compl. ¶ 60 D);

(d) ILFC maintains control over the physical location of the Aircraft, requiring it to be flown to a destination of its choosing in the case of default in the lease (Compl. ¶ 61 A); and the right to take possession of the aircraft (Compl. ¶ 61 C);

(e) ILFC maintains financial responsibility for the aircraft during its operation. (Compl. ¶ 58 D.)

(f) ILFC maintains control over grounding and/or prohibiting the flight of the Aircraft, at any time during the lease for the failure to maintain insurance. (Compl. ¶ 61 E)

Plaintiffs' allegations withstand this attack on the pleadings. The issue before the Court is whether the facts alleged, if true, would entitle the plaintiffs to legal relief. On these facts, they would be so entitled.

**4. The Act Does Not Preempt State Law**

In *Vreeland*, *supra,* the Florida Supreme Court explained the rules of preemption, in concluding that the passenger's state law claims were not preempted. It joined other Courts that have produced published opinions. Defendant proposes now to resolve a divisive preemption issue on the basis of an unpublished U.S. District Court Order and two unpublished U.S. District Court opinions. These unpublished orders and opinions do not, however, take precedence over the United States Code and/or published opinions.

However, it is interesting to note that a Court Order out of the Circuit Court of Illinois, Cook County, *Layug v. AAR Parts Trading, Inc*, 2003 WL 25744436 (Ill. Cir. 2003), in which this defense firm was involved, found that the Illinois State law claims at issue therein, including a claim for negligent entrustment, was not preempted by 49 U.S.C. §44112. When confronted with the same argument as presented here, and also on a motion to dismiss, the District Court relied on a *Retzler v. Pratt and Whitney Company*, 723 N.E.2d 345 (Ill. App. 1st Dist. 1999) in finding no Federal preemption of plaintiff's state law claims. Both Courts flatly rejected the defense interpretation of *Matei v. Cessna,*

*supra,* and reconciled it concluding that "Thus, *Matei* implicitly rejected the idea that state claims against lessors were preempted by Section 1404."

The Court in *Retzler* further determined that "[o]ther states have also rejected the idea that state personal injury claims are preempted by section 1404 (now 49 U.S.C. § 44112 (1994)). In *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 418–19, 320 N.W.2d 843, 847 (1982), the Michigan Supreme Court rejected outright the lessor-defendant's claim that section 1404 precluded liability through preemption and ruled that Michigan state law governed the wrongful death action. *And see Storie v. Southfield Leasing, Inc., supra,* 90 Mich.App. 612, 282 N.W. 2d 417, *and see Margolis v. United Airlines, Inc.* 811 F.Supp. 318, 320 (E.D. Mich. 1993) recognizing the "savings clause" that preserves remedies at common law and by statute, embodied in 49 U.S.C.A.App. § 1506, (now, recodified at 49 USC §40120).

The Ninth Circuit has yet to address this precise issue under §44112, but it has given clear guidance that while federal regulations forbidding reckless "operation" of an aircraft do not create a private cause of action against a non-negligent owner not in agency with the pilot, "[I]f the owner negligently entrusts the aircraft, that is another matter." *Sanz v. Renton Aviation, Inc.*, 511 F.2d 1027 (9th Cir. 1975). Negligent entrustment has long been regarded a separate and proper basis of liability in this Circuit.

This Circuit approaches any preemption argument with caution, *see e.g,, Gee v. SW. Airlines*, 110 F.3d 1400, 1406 (9th Cir. 1997), *overruled on other grounds, Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998) (stating that "the Supreme Court in *Wolens* clearly indicated that *Morales* should not be extended to preempt personal injury safety-related negligence claims, as reflected in the majority, concurring, and dissenting opinions"). This is in keeping with *Medtronic, Inc. v. Lohr, supra,* 518 U.S. 470 (express preemption provision in the 1976 Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act does not preempt common law claims of negligent design and manufacture against manufacturer of pacemaker. The Court emphasized that

the States' historic police powers cannot be superseded by a federal act absent Congress' clear and manifest purpose. *Id.* at 485.)

If implied preemption were to arise under §44112, it could only be given the narrowest scope. Negligent entrustment was never within the scope of the statute at all, and because even as to vicarious liability, the statute is limited to injuries on the ground, Plaintiffs' tort claims don't conflict with the statute.

### C. THE ACT OF STATE DOCTRINE IS INAPPLICABLE TO THIS ACTION

Defendant finally pronounces that: "It is impossible for the Yemen certificates and licenses issued to Yemenia Airlines and as to the Subject Aircraft to be valid and yet the airline be incompetent and unfit." (Mot. P. 9:7-9). With this proclamation, ILFC heralds in a new and strange rule of law, that licensing, by anyone, anywhere, extinguishes all responsibilities.

Once again, this miscasts the legal issue. Whether the government of Yemen allowed the aircraft to operate there is not the issue, as that affords no measure of the standard of care of a negligent U.S. owner and lessor. Rather, the issue is: was ILFC negligent in handing over a dangerous instrumentality to Yemenia when ILFC was armed with the certain knowledge that Yemen's rules and regulations fall far below those demanded by simple safety *and* that Yemenia's own practices and procedures were deficient?

ILFC's liability is grounded in its negligent entrustment of the aircraft to an airline company operating below acceptable standards for airline safety. Nothing about that claim would challenge or offend Yemen in its "official acts" any more than the Federal Aviation Administration's official acts are at issue when a certified U.S. jetliner crashes

cause of pure operator error.[4] That is not a test of a foreign sovereign's laws, but rather an examination of ILFC's laissez-faire approach to its business.

The trier of fact will be called upon to consider evidence of the airline's operations, maintenance practices and flight safety and determine not whether it held valid certificates of airworthiness and the like, but whether holding the licences it did, maintaining its aircraft in the manner it did and, operating its airline the way it did, would put a reasonable lessor on notice of the impropriety of leasing an Airbus Aircraft capable of carrying up to 240 passengers to an air carrier thereunder.

**1. Plaintiffs' Domestic Law Claims do not Implicate Acts of State Doctrine**

In its longest stretch yet, Defendant grasps for a political foreign relations angle to what is purely a state law tort claim against a domestic defendant. Nothing contained in the amended complaint even hints at that direction, as no plaintiff is challenging the act of a foreign sovereign. Instead, Plaintiffs challenge the conduct of a California owner/lessor.

**2. This Action Neither Seeks Nor Requires Invalidation of Any Official Act.**

The Act of the State Doctrine concerns evaluation and challenges to the validity of public acts of a foreign sovereign, issues which are not present in this action. Indeed, as cited in the moving papers: "'***In every case in which we have held the act of the state doctrine applicable, the relief sought ... would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory.***'" (Mot. 10:3-6.)

---

[4] ILFC's "Act of State" argument also presumes that the licensing authority in Yemen trumps tort claims against those many steps removed – in this case, not the airline and not its licensed pilots, but an American based leasing company and owner. This is a remarkable contention that, if drawn to its logical conclusion would end claims worldwide for instrumentalities that happened to be licensed. Of course, in this Circuit, the state law standard of care applies even to a regulated industry with certified products – here, an airline, *see, e.g. Martin v. Midwest Express Holdings, Inc.* 555 F.3d 806 (9th Cir. 2009) (Federal Aviation Regulations do not preempt state law negligence claim).

This action does not seek or require the Court to "declare invalid" any official act. As set forth in great detail in Plaintiffs' Complaint (see, ¶¶ 71-75, 82-83, 86, 88 and 90), Yemenia Airlines failed to comply with international safety standards, matters made public by the European Union and which were known or should have been known to ILFC. Yet, armed with such knowledge, ILFC leased and continued to lease the subject Airbus Aircraft to Yemenia.

The defense position is akin to arguing that because a 16 year obtained a valid driver's license to operate a vehicle on the California roadway, in order to find a person liable who loaned her a vehicle with knowledge of her inexperience, a Court would be obliged to to invalidate the California Department of Motor Vehicles' licensing function. The issue is not the validity of the licensing procedure, but rather, the capability of the operator holding the license to operate the vehicle with reasonable care and the state of knowledge on the part of the entruster. Or, closer to the case at bar, if called upon to address negligent medical care by a physician holding a valid medical license obtained in a jurisdiction that issues such privileges on a much lower threshold than most other jurisdictions, would the employment of such doctor and permitting such doctor to render treatment be found to be negligent. Again, the licensing may be valid, yet the location from where it is issued does so based on standards which may be seen by jurors to fall so far below what a reasonable person would expect, so as to support a finding that the employment of such physician was negligent.

Indeed, just is was found by the United States Supreme Court in *W.S. Kirkpatrick & Co. V. Environmental Tectonics Corp. Int'l*, 493 U.S. 400, 406, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990), "regardless of what the Court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires. *Cf. Sharon v. Time, Inc.*, 599 F.Supp. 538, 546 (SDNY 1984) ('The

issue in this litigation is not whether the alleged acts are valid, but whether they occurred.')."'

"The proscription of the doctrine is limited to judicial determinations of the validity of acts of a foreign sovereign and to judicial redress ***of grievances predicated upon a finding of invalidity***." *Sharon v. Time, Inc.*, 599 F.Supp. 538, 545 (D.C.N.Y.,1984), emphasis supplied.

The question is not whether the certificates and licenses issued in Yemen should be invalidated, or even whether the system that produced the certificates was lacking, but rather, whether ILFC's entrustment and oversight was adequate to detect insufficiencies in the operation and/or whether fundamental safety standards were so flagrantly disregarded by the operator that such deficiencies and noncompliance became known to ILFC, who leased the Airbus to Yemenia anyway,

### 3. The Commercial Exception to the Act of State Doctrine Precludes its Application to the Case at Bar

Even if the Court was inclined to draw into question the validity of some unspecified act of a foreign state, it has long been held that the doctrine does not apply to commercial activities. "We decline to extend the act of state doctrine to acts committed by foreign sovereigns in the course of their purely commercial operations." *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 706, 96 S.Ct. 1854, 1867 (1976). The United States Supreme Court in the Dunhill case reasoned that:

> "It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates

itself, and takes the character which belongs to its associates, and to the business which is to be transacted." *Id.* at 1862

Indeed, "Of equal importance is the fact that subjecting foreign governments to the rule of law in their commercial dealings presents a much smaller risk of affronting their sovereignty than would an attempt to pass on the legality of their governmental acts. In their commercial capacities, foreign governments do not exercise powers peculiar to sovereigns. Instead, they exercise only those powers that can also be exercised by private citizens. Subjecting them in connection with such acts to the same rules of law that apply to private citizens is unlikely to touch very sharply on "'national nerves.'" *Id.* at 1866.

Nothing about Plaintiffs' tort claims is likely to have the slightest impact of American foreign relations, and that is the touchstone of any act of state analysis. The inquiry here is purely commercial, and can be decided by this Court. *Northrup Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1047 (9th Cir. 1983) (unfair competition claims involving production of military aircraft for foreign nations, among other things, was not barred by political question and act of state doctrines.) If military procurement contracts with foreign sovereigns do not implicate act of state, it is preposterous to claim that the mere fact of foreign aircraft registration does so.

## V. CONCLUSION

Based on all of the foregoing, ILFC's motion should be denied in its entirety. At the pleading stage, Plaintiffs have alleged facts supporting their claim for negligent entrustment, a claim that is not preempted by federal law, nor by DOHSA. The Motion should be denied.

Respectfully submitted,

DATED: July 18, 2011 ENGSTROM, LIPSCOMB & LACK

By: /s/ Mark E. Millard
WALTER J. LACK, ESQ.

MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

Walter J. Lack, Esq. (State Bar #57550)
Mark E. Millard, Esq. (State Bar #175169)
ENGSTROM, LIPSCOMB & LACK
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4107
Tel: (310) 552-3800
Fax: (310) 552-9434
Email: wlack@elllaw.com
Email: mmillard@elllaw.com

Thomas V. Girardi, Esq. (State Bar #36603)
Keith D. Griffin, Esq. (State Bar #204388)
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554
Email: tgirardi@girardikeese.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| MMADI MLATAMOU HASSANATI, individually, as heirs and as Successor in Interest to MOHAMED ABDOU SAID, deceased<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-100,<br><br>Defendants. | CASE NO.: 2:11-CV-02251-MMM-Mn<br>Hon Margaret M. Morrow<br><br>**DECLARATION OF MARK E. MILLARD IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>**DATE: August 29, 2011**<br>**TIME: 10:00 A.M.**<br>**CTRM: 780** |

I, Mark E. Millard, state and declare:

1. I am an attorney duly licensed to practice before the Courts of the State of California, and I am also admitted to the United States District Court for the Central District of California.

2. I am a member of the law firm of Engstrom, Lipscomb & Lack, counsel of record for Plaintiffs. I submit this declaration in support of Plaintiffs' Opposition to Motion to Dismiss Pursuant to Fed. R. Civ. [sic]. I have personal knowledge of the facts set forth in this declaration, except for those matters stated on information and belief, and as to those matters, I believe them to be true in good faith.

3. Attached as "Exhibit 1" is a true and correct copy of Plaintiffs' First Amended Complaint, which is supplied for the Court's ready convenience.

4. Attached hereto as "Exhibit 2" is a true and correct copy of House Report 8-2091, referred to in the moving papers at note 7, page 7. The same report is also mentioned in Plaintiffs' Opposition papers.

5. Attached as "Exhibit 3" is a true and correct copy of *Layug v. AAR Parts Trading, Inc*, 2003 WL 25744436 (Ill. Cir. 2003)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 16th day of July, 2011 at Fort Lauderdale, Florida.

Mark E. Millard



352294

# EXHIBIT 1

WALTER J. LACK, ESQ. (SBN 57550)
MARK E. MILLARD, ESQ. (SBN 175169)
**ENGSTROM, LIPSCOMB & LACK**
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4107
Tel.: (310) 552-3800
Fax: (310) 552-9434
Email: wlack@elllaw.com
Email: mmillard@elllaw.com

THOMAS V. GIRARDI, ESQ. (SBN 36603)
KEITH D. GRIFFIN, ESQ. (SBN 204388)
**GIRARDI & KEESE**
1126 Wilshire Boulevard
Los Angeles, California 90017
(213)977-0211; Fax (213) 481-1554
Email: tgirardi@girardikeese.com

Attorneys for Plaintiffs,
**Mmadi Mlatamou Hassanati, et al.**

FILED
CLERK, U.S. DISTRICT COURT
MAY 12 2011
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

MMADI MLATAMOU HASSANATI, individually, as heir and as Successor in Interest to MOHAMED ABDOU SAID, deceased; MMADI MLATAMOU HASSANATI, as Guardian ad Litem for MMR, MMR, MR, MMH, and MMH, minors and heirs to MOHAMED ABDOU SAID, deceased,

RACHIDA BOUAMRANE, individually, as heir and as Successor in Interest to SAID MOHAMED AHMED, deceased; RACHIDA BOUAMRANE, as Guardian ad Litem for JSM, RSM, SSM, and DSM, minors and heirs to SAID MOHAMED AHMED, deceased; THAMARATI ABDOUNOUROU, DJAFFAR AHMED SAID, MOINOUR AHMED, MOINAHADIDJA AHMED, BATOULI AHMED, ALLAOUI AHMED SAID HASSANI, and BAHASSANI AHMED, individually as heirs to SAID MOHAMED

CASE NO.: **2:11-cv-02251-MMM-MAN**
**Hon. Margaret M. Morrow**

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

AHMED, deceased; )

ABDOUL MADJID YASMINA, individually, as heir and as Successor in Interest to ABDOUNOUROU EL HAD, deceased; ABDOUL MADJID YASMINA, as Guardian ad Litem for AASH, a minor and heir to ABDOUNOUROU EL HAD, deceased; ABDOUMOUROU KEVIN, FATIMA TOIHIRI, ABDOUNOUROU DJAMILA, ABDOUNOUROU KARIMA, and ABDOUNOUROU ABDEREMANE, individually as heirs to ABDOUNOUROU EL HAD, deceased; )

MIKIDACHE ABDOURAHIM, individually, as heir and as Successor in Interest to FAHARDINE MIKIDACHE, deceased; MARIAMA BEN ALI, MIKIDACHE ARDRACHE, MIKIDACHE MOHAMED, DALIDA MIKIDACHE, MIKIDACHE MOUTHMIR, MIKIDACHE SATOUAT, DARCHARI MIKIDACHE, HELMAT MIKIDACHE, ELINA MIKIDACHE, NADJIDA MIKIDACHE, SANIYAT MIKIDACHE, WASSAT MIKIDACHE, AND SITI FATIMA BINT MIKIDACHE, individually as heirs to FAHARDINE MIKIDACHE, deceased; )

MOINAHADIDJA ABDOU, individually, as heir and as Successor in Interest to SAID BACAR BADRIA, deceased, SAID BACAR WAEL, deceased, SAID BACAR WADIWON, deceased and MOHAMED EL ARIF WALIA, deceased; SAID AHAMED EL KABIR SAID BACAR, THAMARATI SAID BACAR, SOULE HACHIMIA, SAID ABDALLAH SAID BACAR, NASSERDINE SAID BACAR, SAID BACAR KAMBI, SAID ALI ELMIHODHAR SAID BACAR, FATOUMIA SAID BACAR, SAID AHMED ELBADAOUI, AND SAID ALI SAID BACAR, individually )

as heirs to SAID BACAR BADRIA, deceased, SAID BACAR WAEL, deceased, SAID BACAR WADIWON, deceased and MOHAMED EL ARIF WALIA, deceased; )

DJAE AHAMADA CHANFI, individually, as heir and as Successor in Interest to ANZIZA BOINA, (DJAE), deceased, DJAE SAMIAT, deceased, DJAE MOUNTASSOUIM, deceased, DJAE DJURAIDJ, deceased; BIBI MOHAMED YOUSSOUF, BOINA BOINA FECOIL, and ANZIZE BOINA, individually as heirs to ANZIZA BOINA, (DJAE), deceased, DJAE SAMIAT, deceased, DJAE MOUNTASSOUIM, deceased, DJAE DJURAIDJ, deceased; )

RABIATA SAID MOHAMOUD, individually, as heir and as Successor in Interest to FARID HASSANI, deceased; FATOUMIA HASSANI, IBRAHIM HASSANI, YOUSSOUF HASSANI, ALI MKOUBOI HASSANI, ZALHATA HASSANI, and ALI HASSANI, individually as heir to FARID HASSANI, deceased; )

MDAHOMA KASSIM, individually, as heir and as Successor in Interest to MDAHOMA MARIAMA, deceased; MDAHOMA SAID, MDAHOMA BAKARY, MDAHOMA ZAINABA, MDAHOMA SALIMA, MDAHOMA MOINA BARAKA, MDAHOMA ZALIHATA, MDAHOMA BOUROHANI, MDAHOMA HALIMA, ECHATA SOILIHI, NADJATI ALI MTSAHOI, MDAHOMA YOUSSOUF, RAFOUANTA ALI, NASBATA ALI MTSAHOI, FATOUMIA ALI MTSAHOI, and MDOIHOMA MOINDZIOI, individually as heir to MDAHOMA MARIAMA, deceased; )

THINEYA HASSAN, individually, as heir and as Successor in Interest to MOHAMED ABUBAKAR, deceased; )

SALEH ABDUL HALIM ABUBAKAR, FAT-HIYA ABDUL HALIM ABUBAKAR, and FARIDA ABDUL HALIM ABUBAKAR, individually as heir to MOHAMED ABUBAKAR, deceased;

SAID BACAR ALI, individually, as heir and as Successor in Interest to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased; SAID BACAR ALI, as Guardian ad Litem for ASB, BOM, ASBH, and FM minors and heirs to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased; ACHATA HAMADA, BARAKA SAID BACAR, KHATIDJA SAID BACAR, DJAMILA SAID BACAR, CHARIFA SAID BACAR, FATIMA MOHAMED, MOUHAMED MOUSA RIAMA, YOUNOUSSA MOHAMED, MHOUMADI AHAMADA, ALI SAID BACAR, ZENABA MOHAMED, and MANSOUR MOHAMED, individually as heir to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased;

SAADATI MOHAMED, individually, as heir and as Successor in Interest to FATIMA MOHAMED SOILINI, deceased; SAADATI MOHAMED, as Guardian ad Litem for AM, a minor and heir to FATIMA MOHAMED SOILINI, deceased; SAID MOHAMED, NAIRATI MOHAMED, KAMOULATI MOHAMED, HADIDJA MOHAMED, KILADATI MOHAMED, and ABDOUL KADER MOHAMED, individually as heirs to FATIMA MOHAMED SOILINI, deceased;

DJAE MOHAMED, individually, as heir and as Successor in Interest to ANLIYA DJAE, deceased; DJAE MOHAMED, as Guardian ad Litem for TDM, MDM, and HDM, minors and heirs to ANLIYA DJAE, deceased; MOHAMED BEN MOHAMED, AHAMADA DJAE, KALIFOU DJAE MOHAMED ASSOUMANI, ALDJOUVAYNE DJAE, individually

as heirs to ANLIYA DJAE, deceased;

BOURHANI ABDALLAH, individually, as heir and as Successor in Interest to ICHATA RACHID, deceased; BOURHANI ABDALLAH, as Guardian ad Litem for AB and HBA, minors and heirs to ICHATA RACHID, deceased; YAHAYA BOURHANI, ABOUBACAR BOURHANI, RAHAMATA HAMADI, ALI RACHID, SAID RASHID, RASHID MOHAMED, ABDILLAHI RASHID, SAKINA RASHID, individually as heirs to ICHATA RACHID, deceased;

ACHATA ALI, individually, as heir and as Successor in Interest to MOHAMED HAMIDOU, deceased; ACHATA ALI, as Guardian ad Litem for SM and SMH, minors and heirs to MOHAMED HAMIDOU, deceased; HAMIDOU AHAMADA, FATIMA HAMIDOU AHAMADA, HADJI HAMIDOU, MOHAMED MISBABOU HAMIDOU, SOULAIMANA HAMIDOU, and NALISSA HAMIDOU MOUIGNI, individually as heirs to MOHAMED HAMIDOU, deceased;

ASSOUMANI HADIDJA, individually, as heir and as Successor in Interest to OUMOURI ALI, deceased; ASSOUMANI HADIDJA, as Guardian ad Litem for AO, and FO, minors and heirs to OUMOURI ALI, deceased; MOHAMED ACHIKALI, MARIAMA HALIDI, IBRAHIM ACHIKALI, FATOUMA OUMOUR, BINTI OUMOURI, SAID OUMOURI, MOUSSA OUMOURI, YOUNOUSSA ACHIKALI, OUMOURI HADIDJA, OUMOURI BINTI CHAHRAZADE, OUMOURI HAMID, ABOUBACAR OUMOURI MROIVILI, HASSANI ACHIKALI, AHMED HALIFA, MOHAMED ACHIKALI, and ZAINABA ACHIKALI, individually as heirs to OUMOURI ALI, deceased;

TOUMA HAMIDOU, individually, as heir and as Successor in Interest to ABDILLAH YOUSSOUF ALI, deceased; RADJABOU YOUSSOUF, AHAMED YOUSSOUF, RIVONE YOUSSOUF, CHANFIOU YOUSSOUF, MARIAM YOUSSOUF, and SAID YOUSSOUF, individually as heirs to ABDILLAH YOUSSOUF ALI, deceased;

MOHAMED MMADI MARIE, individually, as heir and as Successor in Interest to MMADI CHAHARZADE, deceased, MMADI LAILA, deceased, and MMADI HOUSSAMDINE, deceased;

MONAFATIMA ATTOUMANI, individually, as heir and as Successor in Interest to BACARI HOUSSEINE, deceased; BACARI HAMADI, individually and as Guardian ad Litem for BAM, SBAM, AMBA, HMBA and SMBA, minors and heirs to BACARI HOUSSEINE, deceased; ATTOUMANI MMADI SALMA, BACARI IDJIHADI BEN KOURREICH, BACARI IDJIHADI MBAE, MARIAMA ATTOUMANI, OUMIRCHADE ASSOUMANI, ASSMAHANE HASSANI, HASSANATI MOHAMED BEN ALI, NOUROU MOHAMED BEN ALI, and SALMA MOHAMED BEN ALI, individually as heirs to BACARI HOUSSEINE, deceased;

THAMARATI SAID ALI, individually, as heir and as Successor in Interest to ALI MOHAMED TOIBIBOU, deceased; THAMARATI SAID ALI, as Guardian ad Litem for TAM, a minor and heir to ALI MOHAMED TOIBIBOU, deceased; KARIM MOHAMED TOIBIBOU, MOHAMED TOIBIBOU, AMINA AHMADA, MOINAECHA SOILIHI, TOIBIBOU DJIMBA, SAID MOHAMED TOIBIBOU, MOUNAWAR MOHAMED TOIBIBOU, DARDAI MOHAMED

TOIBIBOU, HASSANE MOHAMED TOIBIBOU, BOUNYAMINE MOHAMED TOIBIBOU, HACHIMIA MOHAMED TOIBIBOU, HADIDJA MOHAMED TOIBIBOU, and NASURATA MOHAMED TOIBIBOU, individually as heirs to ALI MOHAMED TOIBIBOU, deceased; )

ZAKIA MDOIHOMA, individually, as heir and as Successor in Interest to SAID MMADI, deceased; KALATHOUMI MMADI, FATIMA HASSANI, MOHAMED MMADI, NASSABIA MADI, HADIDJA MMADI, AFIATI AMDJADI, AIDA AMDJADI, ANTOY AMDJAD, DJAMAL EDINE AMDJAD, and KAMARIA MHOUMADI, individually as heir to SAID MMADI, deceased; )

HIKIMA HASSANE ABDALLAH, individually, as heir and as Successor in Interest to ABDILLAHI MROIVILI BEDJA aka ABDILLAH YOUSSOUF BEDJA, deceased; YOUSSOUF MROIVILI BEDJA, AHMED MROIVILI, ZOUBOUDOU MROIVILI, ABDOU ALI HISSANI, HALIMA ADINANI, BOINA MROUDJAE ALI MARIAMA, ALI MIRADJI ABDOU, and ZAINABA ADINANI, individually as heirs to ABDILLAHI MROIVILI BEDJA, deceased; )

MZALENDRO MMADI, individually, as heir and as Successor in Interest to HALIMA YOUSSOUF, deceased; MAOULIDA ISSOUFA MADI, HASSANATI YOUSSOUF MADI, ALI YOUSSOUF, HALIMA YOUSSOUF, FATIMA YOUSSOUF MMADI, SAID YOUSSOUF, and MARIAMOU ISSOUFA, individually as heirs to HALIMA YOUSSOUF, deceased; )

SOIBRIDJAMAL RIDJALI, )

individually, as heir and as Successor in Interest to HAMID AHMED, deceased; SOIBRIDJAMAL RIDJALI, as Guardian ad Litem for TH, FZH, and LH, minors and heirs to HAMID AHMED, deceased; RADHUAT ABDALLAH HAIDAR, and HALIDI AHMED, individually as heirs to HAMID AHMED, deceased;

MOHAMED RACHADI, individually, as heir and as Successor in Interest to ZALBIA ABDALLAH, deceased; MOHAMED RACHADI, individually, as Guardian ad Litem to MMM, MN, SMMR, IS, AAM and SAM, minors and heirs to ZALBIA ABDALLAH, deceased; MOUSSA IBRAHIM, SALIM MOHAMED, ALI MOHAMED FOUMBOUNI, SAID MDAHOMA, ABDALLAH ABDILLAHI, ABDEREMANE ABDOU, CHOUAIB SOIFIA, DADA CHANFI, DJAMALDINE HALIFA, CHAMSIA DADA, and KOKO FIEDA MOHAMED, individually as heirs to ZALBIA ABDALLAH, deceased;

AHAMADA IBRAHIMA, individually, as heir and as Successor in Interest to IBRAHIMA ANNIE ALI, deceased and IBRAHIMA AMINE, deceased; AHAMADA IBRAHIMA, as Guardian ad Litem for IA and MFHI, minors and heirs to IBRAHIMA ANNIE ALI, deceased and IBRAHIMA AMINE, deceased;

YOUSSOUF MADI, individually, as heir and as Successor in Interest to BOUNOU (MADI) NASSIMA, YOUSSOUF RAKIB, and YOUSSOUF RAMZI, decedents; ECHAT DJABIRI, BOUNOU ABASSI, BOUNOU SAID, BOUNOU IBRAHIM, and BOUNOU AHMED, individually as heirs to BOUNOU (MADI) NASSIMA, deceased;

YOUSSOUFA HADIDJA, individually, as heir and as Successor

in Interest to YOUSSOUFA DJAMALI, deceased; YOUSSOUFA HADIDJA, as Guardian ad Litem for YH and YS, minors and heirs to YOUSSOUFA DJAMALI, deceased; YOUSSOUFA ITRISSO FATIMA, YOUSSOUFA NADJATI, YOUSSOUFA AHAMADA, and YOUSSOUFA ABDULFATAHOU, individually as heirs to YOUSSOUFA DJAMALI, deceased;

YOUSSOUFA FATIMA, individually, as heir and as Successor in Interest to YOUSSOUFA HASSANA, deceased; HALIDI AHMED, as Guardian ad Litem for IH, SD, SI, and YN, minors and heirs to YOUSSOUFA HASSANA, deceased; YOUSSOUFA NADJATI, YOUSSOUFA AHAMADA, YOUSSOUFA ABDULFATAHOU, HALIDI AHMED, and AMMAR HALIDI, individually as heirs to YOUSSOUFA HASSANA, deceased;

YOUSSOUFA ITRISSO FATIMA, individually, as heir and as Successor in Interest to YOUSSOUFA HASSANATI, deceased; ITRISSO ISSA, as Garduian ad Litem for ISS, IS, IS, and IS, minors and heirs to YOUSSOUFA HASSANATI, deceased; YOUSSOUFA ABDULFATAHOU, YOUSSOUFA AHAMADA, YOUSSOUFA NADJATI, ITRISSO OMAR, and ITRISSO ISSA, individually as heir to YOUSSOUFA HASSANATI, deceased;

YOUSSOUF ANTURIAT, individually, as heir and as Successor in Interest to YOUSSOUF MARIAME, deceased; YOUSSOUF ANTURIAT, as Guardian ad Litem for YN and YA, minors and heirs to YOUSSOUF MARIAME, deceased; YOUSSOUF NASSUFOU, and YOUSSOUF SALIM, individually as heir to YOUSSOUF MARIAME, deceased;

ALI FATIMA, individually, as heir and as Successor in Interest to MOHAMED AHAMADA, deceased and MOHAMED ABIDA, deceased; MADJADI MGORI ASSADI, MADI AHMADA, ZAIBABA AHMADA, individually as heirs to MOHAMED AHAMADA and MOHAMED ABIDA, decedents; )

MCHANGAMA ALI, individually, as heir and as Successor in Interest to YOUSSOUF HADJI, deceased; )

AHAMADA ZAFALA, individually, as heir and as Successor in Interest to MOHAMED MLINDASSE IBRAHIM, deceased; MOHAMED BAKARI, individually as heir to MOHAMED MLINDASSE IBRAHIM, deceased; )

MSA MOINDJIE MARIAMA, individually, as heir and as Successor in Interest to SAID AMADA MZE, deceased; MSA MOINDJIE MARIAMA, as Guardian ad Litem for SZ and ST, minors and heirs to SAID AMADA MZE, deceased; AHAMADA MZE MARIAMA, and ABDALLAH ASMAHANE, individually as heirs to SAID AMADA MZE, deceased; )

YASSINE AHMED ABDOU, individually, as heir and as Successor in Interest to AHMED ABDOU, deceased; ALI SAID HASSANATI MARIE, as Guardian ad Litem for RAA, minor and heir to AHMED ABDOU, deceased; KADDAFI AHMED ABDOU, and EL ABIDINE AHMED ABDOU, individually as heirs to AHMED ABDOU, deceased; )

SAID OMAR BACAR, individually, as heirs and as Successor in Interest to HAIRATI AHMED BACAR, deceased; KAIZ BACAR, as Guardian ad Litem for JB and LB, minors and heirs to HAIRATI AHMED BACAR, )

deceased; SOULEIMANE BACAR, MATHILDE BACAR, KAIZ BACAR, MAJWANE BACAR, ABDOUROIHAMANE BACAR, SOUMET BACAR, ABDALLAH BACAR, ZAITOUNE BACAR, MAHAMOUD BACAR, MOUHTAR BACAR, SOULAIMANE BACAR, and HAIDA BACAR, individually as heir to HAIRATI AHMED BACAR, deceased; )

ALI FATIMA, individually, as heir and as Successor in Interest to ALI MRAHATI, deceased; )

MOINAKOKO MVOUNA, individually, as heir and as Successor in Interest to M'SA SOULE MOHAMED, deceased; MOINAKOKO MVOUNA, as Guardian ad Litem for NM, minor and heir to M'SA SOULE MOHAMED, deceased; M'SA ZAHARIA, TIBA MVOUNA, and DOUDOU SAID MVOUNA, individually, as heirs to M'SA SOULE MOHAMED, deceased; )

MOHAMED SAID HAMADI, individually, as heir and as Successor in Interest to ECHAT MOIRABOU, deceased; FAISSOILI SAID, individually, as heir to ECHAT MOIRABOU, deceased; )

MOHAMED SAID HAMADI, individually, as heir and as Successor in Interest to AFFOUSSOITA SAID, deceased; MKOUFOUNDI MOEVA ZARIAM, as Guardian ad Litem for SHA, minor and heir to AFFOUSSOITA SAID, deceased; FAISSOILI SAID, and, individually, as heir to AFFOUSSOITA SAID, deceased; )

FATIMA MMADI, individually, as heirs and as Successor in Interest to ABDALLAH MOHAMED SAID, deceased; ABDALLAH MOHAMED )

MHADJOU, ABDALLAH MOHAMED IBRAHIM, ADBALLAH MOHAMED MOUINAHADIDJA, ABDALLAH MOHAMED MARIAMA, ABDALLAH MOHAMED RASMIA, and MDAHOMA MMADI, individually, as heirs to ABDALLAH MOHAMED SAID, deceased;

HAKI ASSIATI, individually, as heirs and as Successor in Interest to TOIYBA AHMED, deceased; HAKI ABOUHANIFA, HAKI ALHAMIDI, HAKI ASBAHATI, MOINAFATIMA AHMED, MOHAED AHMED, HAFFI AHMED, and LOUFIA AHMED, individually as heirs to TOIYBA AHMED, deceased;

FATIMA ALI MDAHOMA, individually, as heirs and as Successor in Interest to SAID ALI MDAHOMA, deceased; FAOUZATI ALI MDAHOMA, and IHIWANI ALI MDAHOMA, individually, as heirs to SAID ALI MDAHOMA, deceased;

MOINAKARIMA ABDOU, individually, as heirs and as Successor in Interest to EL-HADADE ABDOU NOUROU, deceased;

Plaintiffs,

vs.

INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-10,

Defendants.

1. The Heirs of MOHAMED ABDOU SAID, deceased assert claims for damages as follows:

A. MMADI MLATAMOU HASSANATI, individually, as heir and as

Successor in Interest to MOHAMED ABDOU SAID, deceased; MMADI MLATAMOU HASSANATI, as Guardian ad Litem for MMR, MMR, MR, MMH, and MMH, minors and heirs to MOHAMED ABDOU SAID, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MMADI MLATAMOU HASSANATI, is filing this action individually, as heir and as Successor in Interest to MOHAMED ABDOU SAID, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, MMADI MLATAMOU HASSANATI, is also filing this action as Guardian ad Litem for MMR, MMR MR, MMH, and MMH, minors and heirs to MOHAMED ABDOU SAID, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

2. The Heirs of SAID MOHAMED AHMED, deceased assert claims for damages as follows:

A. RACHIDA BOUAMRANE, individually, as heir and as Successor in Interest to SAID MOHAMED AHMED, deceased; RACHIDA BOUAMRANE, as Guardian ad Litem for JSM, RSM, SSM, and DSM, minors and heirs to SAID MOHAMED AHMED, deceased; THAMARATI ABDOUNOUROU, DJAFFAR AHMED SAID, MOINOUR AHMED, MOINAHADIDJA AHMED, BATOULI AHMED, ALLAOUI AHMED SAID HASSANI, and BAHASSANI AHMED, individually as heirs to SAID MOHAMED AHMED, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court

deems to apply.

B. Plaintiff, RACHIDA BOUAMRANE, is filing this action individually, as heir and as Successor in Interest to SAID MOHAMED AHMED, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, RACHIDA BOUAMRANE, is also filing this action as Guardian ad Litem for JSM, RSM, SSM, and DSM, minors and heirs to SAID MOHAMED AHMED, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

3. The Heirs of ABDOUNOUROU EL HAD, deceased assert claims for damages as follows:

A. ABDOUL MADJID YASMINA, individually, as heir and as Successor in Interest to ABDOUNOUROU EL HAD, deceased; ABDOUL MADJID YASMINA, as Guardian ad Litem for AASH, a minor and heir to ABDOUNOUROU EL HAD, deceased; ABDOUMOUROU KEVIN, FATIMA TOIHIRI, ABDOUNOUROU DJAMILA, ABDOUNOUROU KARIMA, AND ABDOUNOUROU ABDEREMANE, individually as heirs to ABDOUNOUROU EL HAD, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, ABDOUL MADJID YASMINA, is filing this action individually, as heir and as Successor in Interest to ABDOUNOUROU EL HAD, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court

deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, ABDOUL MADJID YASMINA, is also filing this action as Guardian ad Litem for AASH, a minor and heir to ABDOUNOUROU EL HAD, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

4. The Heirs of FAHARDINE MIKIDACHE, deceased assert claims for damages as follows:

A. MIKIDACHE ABDOURAHIM, individually, as heir and as Successor in Interest to Fahardine Mikidache, deceased; MARIAMA BEN ALI, MIKIDACHE ARDRACHE, MIKIDACHE MOHAMED, DALIDA MIKIDACHE, MIKIDACHE MOUTHMIR, MIKIDACHE SATOUAT, DARCHARI MIKIDACHE, HELMAT MIKIDACHE, ELINA MIKIDACHE, NADJIDA MIKIDACHE, SANIYAT MIKIDACHE, WASSAT MIKIDACHE, and SITI FATIMA BINT MIKIDACHE, individually as heirs to FAHARDINE MIKIDACHE, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MIKIDACHE ABDOURAHIM, is filing this action individually, as heir and as Successor in Interest to FAHARDINE MIKIDACHE, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

5. The Heirs of SAID BACAR BADRIA, SAID BACAR WAEL, SAID BACAR

WADIWON, and MOHAMED EL ARIF WALIA, decedents assert claims for damages as follows:

A. MOINAHADIDJA ABDOU, individually, as heir and as Successor in Interest to SAID BACAR BADRIA, SAID BACAR WAEL, SAID BACAR WADIWON, and MOHAMED EL ARIF WALIA, decedents; SAID AHAMED EL KABIR SAID BACAR, THAMARATI SAID BACAR, SOULE HACHIMIA, SAID ABDALLAH SAID BACAR, NASSERDINE SAID BACAR, SAID BACAR KAMBI, SAID ALI ELMIHODHAR SAID BACAR, FATOUMIA SAID BACAR, SAID AHMED ELBADAOUI, and SAID ALI SAID BACAR, individually as heirs to SAID BACAR BADRIA, SAID BACAR WAEL, SAID BACAR WADIWON, and MOHAMED EL ARIF WALIA, decedents, hereby assert a wrongful death claim for the death of decedents, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MOINAHADIDJA ABDOU, is filing this action individually, as heir and as Successor in Interest to SAID BACAR BADRIA, SAID BACAR WAEL, SAID BACAR WADIWON, and MOHAMED EL ARIF WALIA, decedents and, hereby asserts a survivor's claim on behalf of decedents, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedents. Plaintiff has or will execute and file a declaration(s) under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

6. The Heirs of ANZIZA BOINA, (DJAE), DJAE SAMIAT, DJAE MOUNTASSOUIM, and DJAE DJURAIDJ, decedents assert claims for damages as follows:

A. DJAE AHAMADA CHANFI, individually, as heir and as Successor in Interest to ANZIZA BOINA, (DJAE), DJAE SAMIAT, DJAE MOUNTASSOUIM, and DJAE DJURAIDJ, decedents; BIBI MOHAMED YOUSSOUF, BOINA BOINA FECOIL,

and ANZIZE BOINA, individually as heirs to ANZIZA BOINA, (DJAE), DJAE SAMIAT, DJAE MOUNTASSOUIM, and DJAE DJURAIDJ, decedents, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, DJAE AHAMADA CHANFI, is filing this action individually, as heir and as Successor in Interest to ANZIZA BOINA, (DJAE), DJAE SAMIAT, DJAE MOUNTASSOUIM, and DJAE DJURAIDJ, decedents and, hereby asserts a survivor's claim on behalf of decedents, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedents. Plaintiff has or will execute and file a declaration(s) under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

7. The Heirs of FARID HASSANI, deceased assert claims for damages as follows:

A. RABIATA SAID MOHAMOUD, individually, as heir and as Successor in Interest to FARID HASSANI, deceased; FATOUMIA HASSANI, IBRAHIM HASSANI, YOUSSOUF HASSANI, ALI MKOUBOI HASSANI, ZALHATA HASSANI, and ALI HASSANI, individually as heirs to FARID HASSANI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, RABIATA SAID MOHAMOUD, is filing this action individually, as heir and as Successor in Interest to FARID HASSANI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

8. The Heirs of MDAHOMA MARIAMA, deceased assert claims for damages as follows:

A. MDAHOMA KASSIM, individually, as heir and as Successor in Interest to MDAHOMA MARIAMA, deceased; MDAHOMA SAID, MDAHOMA BAKARY, MDAHOMA ZAINABA, MDAHOMA SALIMA, MDAHOMA MOINA BARAKA, MDAHOMA ZALIHATA, MDAHOMA BOUROHANI, MDAHOMA HALIMA, ECHATA SOILIHI, NADJATI ALI MTSAHOI, MDAHOMA YOUSSOUF, RAFOUANTA ALI, NASBATA ALI MTSAHOI, FATOUMIA ALI MTSAHOI, and MDOIHOMA MOINDZIOI, individually as heirs to MDAHOMA MARIAMA, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MDAHOMA KASSIM, is filing this action individually, as heir and as Successor in Interest to MDAHOMA MARIAMA, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

9. The Heirs of MOHAMED ABUBAKAR, deceased assert claims for damages as follows:

A. THINEYA HASSAN, individually, as heir and as Successor in Interest to MOHAMED ABUBAKAR, deceased; SALEH ABDUL HALIM ABUBAKAR, FATHIYA ABDUL HALIM ABUBAKAR, and FARIDA ABDUL HALIM ABUBAKAR, individually as heirs to MOHAMED ABUBAKAR, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, THINEYA HASSAN, is filing this action individually, as heir

and as Successor in Interest to MOHAMED ABUBAKAR, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

10. The Heirs of HALIMA MOHAMED, aka HALIMA MADI MISA, deceased assert claims for damages as follows:

A. SAID BACAR ALI, individually, as heir and as Successor in Interest to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased; SAID BACAR ALI, as Guardian ad Litem for ASB, BOM, ASBH, and FM minors and heirs to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased; ACHATA HAMADA, BARAKA SAID BACAR, KHATIDJA SAID BACAR, DJAMILA SAID BACAR, CHARIFA SAID BACAR, FATIMA MOHAMED, MOUHAMED MOUSA RIAMA, YOUNOUSSA MOHAMED, MHOUMADI AHAMADA, ALI SAID BACAR, ZENABA MOHAMED, and MANSOUR MOHAMED, individually as heirs to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, SAID BACAR ALI, is filing this action individually, as heir and as Successor in Interest to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, SAID BACAR ALI, is also filing this action as Guardian ad

Litem for ASB, BOM, ASBH, and FM, minors and heirs to HALIMA MOHAMED, aka HALIMA MADI MISA, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

11. The Heirs of FATIMA MOHAMED SOILINI, deceased assert claims for damages as follows:

A. SAADATI MOHAMED, individually, as heir and as Successor in Interest to FATIMA MOHAMED SOILINI, deceased; SAADATI MOHAMED, as Guardian ad Litem for AM, a minor and heir to FATIMA MOHAMED SOILINI, deceased; SAID MOHAMED, NAIRATI MOHAMED, KAMOULATI MOHAMED,HADIDJA MOHAMED, KILADATI MOHAMED, and ABDOUL KADER MOHAMED, individually as heirs to FATIMA MOHAMED SOILINI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, SAADATI MOHAMED, is filing this action individually, as heir and as Successor in Interest to FATIMA MOHAMED SOILINI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, SAADATI MOHAMED, is also filing this action as Guardian ad Litem for AM, a minor and heir to FATIMA MOHAMED SOILINI, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

12. The Heirs of ANLIYA DJAE, deceased assert claims for damages as follows:

A. DJAE MOHAMED, individually, as heir and as Successor in Interest to ANLIYA DJAE, deceased; DJAE MOHAMED, as Guardeian ad Litem for TDM, MDM, and HDM, minors and heirs to ANLIYA DJAE, deceased; MOHAMED BEN MOHAMED, AHAMADA DJAE, KALIFOU DJAE MOHAMED ASSOUMANI, ALDJOUVAYNE DJAE, individually as heirs to ANLIYA DJAE, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, DJAE MOHAMED, is filing this action individually, as heir and as Successor in Interest to ANLIYA DJAE, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, DJAE MOHAMED, is also filing this action as Guardian ad Litem for TDM, MDM, and HDM, minors and heirs to ANLIYA DJAE, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

13. The Heirs of ICHATA RACHID, deceased assert claims for damages as follows:

A. BOURHANI ABDALLAH, individually, as heir and as Successor in Interest to ICHATA RACHID, deceased; BOURHANI ABDALLAH, as Guardian ad Litem for AB and HBA, minors and heirs to ICHATA RACHID, deceased; YAHAYA BOURHANI, ABOUBACAR BOURHANI, RAHAMATA HAMADI, ALI RACHID, SAID RASHID, RASHID MOHAMED, ABDILLAHI RASHID, SAKINA RASHID, individually as heirs to ICHATA RACHID, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any

other law the court deems to apply.

B. Plaintiff, BOURHANI ABDALLAH, is filing this action individually, as heir and as Successor in Interest to ICHATA RACHID, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, BOURHANI ABDALLAH, is also filing this action as Guardian ad Litem for AB and HBA, minors and heirs to ICHATA RACHID, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

14. The Heirs of MOHAMED HAMIDOU, deceased assert claims for damages as follows:

A. ACHATA ALI, individually, as heir and as Successor in Interest to MOHAMED HAMIDOU, deceased; ACHATA ALI, as Guardian ad Litem for SM and SMH, minors and heirs to MOHAMED HAMIDOU, deceased; HAMIDOU AHAMADA, FATIMA HAMIDOU AHAMADA, HADJI HAMIDOU, MOHAMED MISBABOU HAMIDOU, SOULAIMANA HAMIDOU, and NALISSA HAMIDOU MOUIGNI, individually as heirs to MOHAMED HAMIDOU, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, ACHATA ALI, is filing this action individually, as heir and as Successor in Interest to MOHAMED HAMIDOU, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will

execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, ACHATA ALI, is also filing this action as Guardian ad Litem for SM and SMH, minors and heirs to MOHAMED HAMIDOU, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

15. The Heirs of OUMOURI ALI, deceased assert claims for damages as follows:

A. ASSOUMANI HADIDJA, individually, as heir and as Successor in Interest to OUMOURI ALI, deceased; ASSOUMANI HADIDJA, as Guardian ad Litem for AO, a minor and heir to OUMOURI ALI, deceased; MARIAMA HALIDI, as Guardian ad Litem for FO, a minor and heir to OUMOURI ALI, deceased; MOHAMED ACHIKALI, MARIAMA HALIDI, IBRAHIM ACHIKALI, FATOUMA OUMOUR, BINTI OUMOURI, SAID OUMOURI, MOUSSA OUMOURI, YOUNOUSSA ACHIKALI, OUMOURI HADIDJA, OUMOURI BINTI CHAHRAZADE, OUMOURI HAMID, ABOUBACAR OUMOURI MROIVILI, HASSANI ACHIKALI, AHMED HALIFA, MOHAMED ACHIKALI, and ZAINABA ACHIKALI, individually as heirs to OUMOURI ALI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, ASSOUMANI HADIDJA, is filing this action individually, as heir and as Successor in Interest to OUMOURI ALI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, ASSOUMANI HADIDJA, is also filing this action as Guardian

ad Litem for AH, a minor and heir to OUMOURI ALI, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

D. Plaintiff, MARIAMA HALIDI, is also filing this action as Guardian ad Litem for FO, a minor and heir to OUMOURI ALI, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

16. The Heirs of ABDILLAH YOUSSOUF ALI, deceased assert claims for damages as follows:

A. TOUMA HAMIDOU, individually, as heir and as Successor in Interest to ABDILLAH YOUSSOUF ALI, deceased; RADJABOU YOUSSOUF, AHAMED YOUSSOUF, RIVONE YOUSSOUF, CHANFIOU YOUSSOUF, MARIAM YOUSSOUF, and SAID YOUSSOUF, individually as heirs to ABDILLAH YOUSSOUF ALI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, TOUMA HAMIDOU, is filing this action individually, as heir and as Successor in Interest to ABDILLAH YOUSSOUF ALI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

17. The Heirs of MMADI CHAHARZADE, MMADI LAILA, and MMADI HOUSSAMDINE, decedents assert claims for damages as follows:

A. MOHAMED MMADI MARIE, individually, as heir and as Successor

in Interest to MMADI CHAHARZADE, MMADI LAILA, and MMADI HOUSSAMDINE, decedents, hereby asserts a wrongful death claim for the death of decedents, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MOHAMED MMADI MARIE, is filing this action individually, as heir and as Successor in Interest to MMADI CHAHARZADE, MMADI LAILA, and MMADI HOUSSAMDINE, decedents and, hereby asserts a survivor's claim on behalf of decedents, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedents. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

18. The Heirs of BACARI HOUSSEINE, deceased assert claims for damages as follows:

A. MONAFATIMA ATTOUMANI, individually, as heir and as Successor in Interest to BACARI HOUSSEINE, deceased; BACARI HAMADI, individually and as Guardian ad Litem for BAM, SBAM, AMBA, HMBA and SMBA, minors and heirs to BACARI HOUSSEINE, deceased; ATTOUMANI MMADI SALMA, BACARI IDJIHADI BEN KOURREICH, BACARI IDJIHADI MBAE, MARIAMA ATTOUMANI, OUMIRCHADE ASSOUMANI, ASSMAHANE HASSANI, HASSANATI MOHAMED BEN ALI, NOUROU MOHAMED BEN ALI, and SALMA MOHAMED BEN ALI, individually as heirs to BACARI HOUSSEINE, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MONAFATIMA ATTOUMANI, is filing this action individually, as heir and as Successor in Interest to BACARI HOUSSEINE, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil

Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, BACARI HAMADI, is also filing this action as Guardian ad Litem for BAM, SBAM, AMBA, HMBA and SMBA, minors and heirs to BACARI HOUSSEINE, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

19. The Heirs of ALI MOHAMED TOIBIBOU, deceased assert claims for damages as follows:

A. THAMARATI SAID ALI, individually, as heir and as Successor in Interest to ALI MOHAMED TOIBIBOU, deceased; THAMARATI SAID ALI, as Guardian ad Litem for TAM, a minor and heir to ALI MOHAMED TOIBIBOU, deceased; KARIM MOHAMED TOIBIBOU, MOHAMED TOIBIBOU, AMINA AHMADA, MOINAECHA SOILIHI, TOIBIBOU DJIMBA, SAID MOHAMED TOIBIBOU, MOUNAWAR MOHAMED TOIBIBOU, DARDAI MOHAMED TOIBIBOU, HASSANE MOHAMED TOIBIBOU, BOUNYAMINE MOHAMED TOIBIBOU, HACHIMIA MOHAMED TOIBIBOU, HADIDJA MOHAMED TOIBIBOU, and NASURATA MOHAMED TOIBIBOU, individually as heirs to ALI MOHAMED TOIBIBOU, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, THAMARATI SAID ALI, is filing this action individually, as heir and as Successor in Interest to ALI MOHAMED TOIBIBOU, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent.

Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, THAMARATI SAID ALI, is also filing this action as Guardian ad Litem for TAM, a minor and heir to ALI MOHAMED TOIBIBOU, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

20. The Heirs of SAID MMADI, deceased assert claims for damages as follows:

A. ZAKIA MDOIHOMA, individually, as heir and as Successor in Interest to SAID MMADI, deceased; KALATHOUMI MMADI, FATIMA HASSANI, MOHAMED MMADI, NASSABIA MADI, HADIDJA MMADI, AFIATI AMDJADI, AIDA AMDJADI, ANTOY AMDJAD, DJAMAL EDINE AMDJAD, and KAMARIA MHOUMADI, individually as heir to SAID MMADI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, ZAKIA MDOIHOMA, is filing this action individually, as heir and as Successor in Interest to SAID MMADI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

21. The Heirs of ABDILLAHI MROIVILI BEDJA aka ABDILLAH YOUSSOUF BEDJA, deceased assert claims for damages as follows:

A. HIKIMA HASSANE ABDALLAH, individually, as heir and as Successor in Interest to ABDILLAHI MROIVILI BEDJA aka ABDILLAH YOUSSOUF BEDJA, deceased; YOUSSOUF MROIVILI BEDJA, AHMED MROIVILI, ZOUBOUDOU

MROIVILI, ABDOU ALI HISSANI, HALIMA ADINANI, BOINA MROUDJAE ALI MARIAMA, ALI MIRADJI ABDOU, and ZAINABA ADINANI, individually as heirs to ABDILLAHI MROIVILI BEDJA, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, HAKIMA HASSANE ABDALLAH, is filing this action individually, as heir and as Successor in Interest to ABDILLAHI MROIVILI BEDJA aka ABDILLAH YOUSSOUF BEDJA, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

22. The Heirs of HALIMA YOUSSOUF, deceased assert claims for damages as follows:

A. MZALENDRO MMADI, individually, as heir and as Successor in Interest to HALIMA YOUSSOUF, deceased; MAOULIDA ISSOUFA MADI, HASSANATI YOUSSOUF MADI, ALI YOUSSOUF, HALIMA YOUSSOUF, FATIMA YOUSSOUF MMADI, SAID YOUSSOUF, and MARIAMOU ISSOUFA, individually as heirs to HALIMA YOUSSOUF, deceased;, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MZALENDRO MMADI, is filing this action individually, as heir and as Successor in Interest to HALIMA YOUSSOUF, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has

or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

23. The Heirs of HAMID AHMED, deceased assert claims for damages as follows:

A. SOIBRIDJAMAL RIDJALI, individually, as heir and as Successor in Interest to HAMID AHMED, deceased; SOIBRIDJAMAL RIDJALI, as Guardian ad Litem for TH, FZH, and LH, minors and heirs to HAMID AHMED, deceased; RADHUAT ABDALLAH HAIDAR, and HALIDI AHMED, individually as heirs to HAMID AHMED, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, SOIBRIDJAMAL RIDJALI, is filing this action individually, as heir and as Successor in Interest to HAMID AHMED, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, SOIBRIDJAMAL RIDJALI, is also filing this action as Guardian ad Litem for TH, FZH, and LH, minors and heirs to HAMID AHMED, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

24. The Heirs of ZALBIA ABDALLAH, deceased assert claims for damages as follows:

A. MOHAMED RACHADI, individually, as heir and as Successor in Interest to ZALBIA ABDALLAH, deceased; MOHAMED RACHADI, individually, as Guardian ad Litem to MMM, MN, SMMR, IS, AAM and SAM, minors and heirs to

ZALBIA ABDALLAH, deceased; MOUSSA IBRAHIM, SALIM MOHAMED, ALI MOHAMED FOUMBOUNI, SAID MDAHOMA, ABDALLAH ABDILLAHI, ABDEREMANE ABDOU, CHOUAIB SOIFIA, DADA CHANFI, DJAMALDINE HALIFA, CHAMSIA DADA, and KOKO FIEDA MOHAMED, individually as heirs to ZALBIA ABDALLAH, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MOHAMED RACHADI, is filing this action individually, as heir and as Successor in Interest to ZALBIA ABDALLAH, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, MOHAMED RACHADI, is also filing this action as Guardian ad Litem for MMM, MN, SMMR, IS, AAM and SAM, minors and heirs to ZALBIA ABDALLAH, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

25. The Heirs of IBRAHIMA ANNIE ALI and IBRAHIMA AMINE decedents assert claims for damages as follows:

A. AHAMADA IBRAHIMA, individually, as heir and as Successor in Interest to IBRAHIMA ANNIE ALI and IBRAHIMA AMINE, decedents; AHAMADA IBRAHIMA, as Guardian ad Litem for IA and MFHI, minors and heirs to IBRAHIMA ANNIE ALI and IBRAHIMA AMINE, decedents, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, AHAMADA IBRAHIMA, is filing this action individually, as heir and as Successor in Interest to IBRAHIMA ANNIE ALI and IBRAHIMA AMINE, decedents and, hereby asserts a survivor's claim on behalf of decedents, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedents. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, AHAMADA IBRAHIMA, is also filing this action as Guardian ad Litem for IAA and MF, HI, minors and heirs to IBRAHIMA ANNIE ALI and IBRAHIMA AMINE, decedents, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

26. The Heirs of BOUNOU (MADI) NASSIMA, YOUSSOUF RAKIB, and YOUSSOUF RAMZI decedents assert claims for damages as follows:

A. YOUSSOUF MADI, individually, as heir and as Successor in Interest to BOUNOU (MADI) NASSIMA, YOUSSOUF RAKIB, and YOUSSOUF RAMZI, decedents; ECHAT DJABIRI, BOUNOU ABASSI, BOUNOU SAID, BOUNOU IBRAHIM, and BOUNOU AHMED, individually as heirs to BOUNOU (MADI) NASSIMA, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, YOUSSOUF MADI, is filing this action individually, as heir and as Successor in Interest to BOUNOU (MADI) NASSIMA, YOUSSOUF RAKIB, and YOUSSOUF RAMZI, decedents and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file

a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

27. The Heirs of YOUSSOUFA DJAMALI, deceased assert claims for damages as follows:

A. YOUSSOUFA HADIDJA, individually, as heir and as Successor in Interest to YOUSSOUFA DJAMALI, deceased; YOUSSOUFA HADIDJA, as Guardian ad Litem for YH and YS, minors and heirs to YOUSSOUFA DJAMALI, deceased; YOUSSOUFA ITRISSO FATIMA, YOUSSOUFA NADJATI, YOUSSOUFA AHAMADA, and YOUSSOUFA ABDULFATAHOU, individually as heirs to YOUSSOUFA DJAMALI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, YOUSSOUFA HADIDJA, is filing this action individually, as heir and as Successor in Interest to YOUSSOUFA DJAMALI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et, seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, YOUSSOUFA HADIDJA, is also filing this action as Guardian ad Litem for YH and YS, minors and heirs to YD, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

28. The Heirs of YOUSSOUFA HASSANA, deceased assert claims for damages as follows:

A. YOUSSOUFA FATIMA, individually, as heir and as Successor in

Interest to YOUSSOUFA HASSANA, deceased; HALIDI AHMED, as Guardian ad Litem for IH, SD, SI, and YN, minors and heirs to YOUSSOUFA HASSANA, deceased; YOUSSOUFA NADJATI, YOUSSOUFA AHAMADA, YOUSSOUFA ABDULFATAHOU, HALIDI AHMED, and AMMAR HALIDI, individually as heirs to YOUSSOUFA HASSANA, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, YOUSSOUFA FATIMA, is filing this action individually, as heir and as Successor in Interest to YOUSSOUFA HASSANA, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, HALIDI AHMED, is also filing this action as Guardian ad Litem for IH, SD, SI, and YN, minors and heirs to YOUSSOUFA HASSANA, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

29. The Heirs of YOUSSOUFA HASSANATI, deceased assert claims for damages as follows:

A. YOUSSOUFA ITRISSO FATIMA, individually, as heir and as Successor in Interest to YOUSSOUFA HASSANATI, deceased; ITRISSO ISSA, as Guarduian ad Litem for ISS, IS, IS, and IS, minors and heirs to YOUSSOUFA HASSANATI, deceased; YOUSSOUFA ABDULFATAHOU, YOUSSOUFA AHAMADA, YOUSSOUFA NADJATI, ITRISSO OMAR, and ITRISSO ISSA, individually as heir to

YOUSSOUFA HASSANATI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, YOUSSOUFA ITRISSO FATIMA, is filing this action individually, as heir and as Successor in Interest to YOUSSOUFA HASSANATI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, YOUSSOUFA ITRISSO FATIMA, is also filing this action as Guardian ad Litem for ISS, IS, IS, and IS, minors and heirs to YOUSSOUFA HASSANATI, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

30. The Heirs of YOUSSOUF MARIAME, deceased assert claims for damages as follows:

A. YOUSSOUF ANTURIAT, individually, as heir and as Successor in Interest to YOUSSOUF MARIAME, deceased; YOUSSOUF ANTURIAT, as Guardian ad Litem for YN and YA, minors and heirs to YOUSSOUF MARIAME, deceased; YOUSSOUF NASSUFOU, and YOUSSOUF SALIM, individually as heir to YOUSSOUF MARIAME, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, YOUSSOUF ANTURIAT, is filing this action individually, as heir and as Successor in Interest to YOUSSOUF MARIAME, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and

thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, YOUSSOUF ANTURIAT, is also filing this action as Guardian ad Litem for YN and YA, minors and heirs to YOUSSOUF MARIAME, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

31. The Heirs of MOHAMED AHAMADA and MOHAMED ABIDA, decedents assert claims for damages as follows:

A. ALI FATIMA, individually, as heir and as Successor in Interest to MOHAMED AHAMADA and MOHAMED ABIDA, decedents; MADJADI MGORI ASSADI, MADI AHMADA, ZAIBABA AHMADA, individually as heirs to MOHAMED AHAMADA and MOHAMED ABIDA, decedents; hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, ALI FATIMA, is filing this action individually, as heir and as Successor in Interest to MOHAMED AHAMADA and MOHAMED ABIDA, decedents and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

32. The Heirs of YOUSSOUF HADJI, deceased assert claims for damages as follows:

A. MCHANGAMA ALI, individually, as heir and as Successor in Interest to YOUSSOUF HADJI, deceased, deceased, hereby asserts a wrongful death claim for the

death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MCHANGAMA ALI, is filing this action individually, as heir and as Successor in Interest to YOUSSOUF HADJI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

33. The Heirs of MOHAMED MLINDASSE IBRAHIM, deceased assert claims for damages as follows:

A. AHAMADA ZAFALA, individually, as heir and as Successor in Interest to MOHAMED MLINDASSE IBRAHIM, deceased; MOHAMED BAKARI, individually as heir to MOHAMED MLINDASSE IBRAHIM, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, AHAMADA ZAFALA, is filing this action individually, as heir and as Successor in Interest to MOHAMED MLINDASSE IBRAHIM, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

34. The Heirs of SAID AMADA MZE, deceased assert claims for damages as follows:

A. MSA MOINDJIE MARIAMA, individually, as heir and as Successor in Interest to SAID AMADA MZE, deceased; MSA MOINDJIE MARIAMA, as Guardian ad Litem for SZ and ST-A, minors and heirs to SAID AMADA MZE, deceased; AHAMADA MZE MARIAMA, and ABDALLAH ASMAHANE, individually as heirs to SAID AMADA MZE, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MSA MOINDJIE MARIAMA, is filing this action individually, as heir and as Successor in Interest to SAID AMADA MZE, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, MSA MOINDJIE MARIAMA, is also filing this action as Guardian ad Litem for SZ and ST-A, minors and heirs to SAID AMADA MZE, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

35. The Heirs of AHMED ABDOU, deceased assert claims for damages as follows:

A. YASSINE AHMED ABDOU, individually, as heir and as Successor in Interest to AHMED ABDOU, deceased; ALI SAID HASSANATI MARIE, as Guardian ad Litem for RAA, minor and heir to AHMED ABDOU, deceased; KADDAFI AHMED ABDOU, and EL ABIDINE AHMED ABDOU, individually as heirs to AHMED ABDOU, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, YASSINE AHMED ABDOU, is filing this action individually,

as heir and as Successor in Interest to AHMED ABDOU, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, ALI SAID HASSANATI MARIE, is also filing this action as Guardian ad Litem for RAA, minor and heir to AHMED ABDOU, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

36. The Heirs of HAIRATI AHMED BACAR, deceased assert claims for damages as follows:

A. SAID OMAR BACAR, individually, as heirs and as Successor in Interest to HAIRATI AHMED BACAR, deceased; KAIZ BACAR, as Guardian ad Litem for JB and LB, minors and heirs to HAIRATI AHMED BACAR, deceased; SOULEIMANE BACAR, MATHILDE BACAR, KAIZ BACAR, MAJWANE BACAR, ABDOUROIHAMANE BACAR, SOUMET BACAR, ABDALLAH BACAR, ZAITOUNE BACAR, MAHAMOUD BACAR, MOUHTAR BACAR, SOULAIMANE BACAR, and HAIDA BACAR, individually as heir to HAIRATI AHMED BACAR, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, SAID OMAR BACAR, is filing this action individually, as heir and as Successor in Interest to HAIRATI AHMED BACAR, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code*

*of Civil Procedure*, Section 377.32.

C. Plaintiff, KAIZ BACAR, is also filing this action as Guardian ad Litem for JB and LB, minors and heirs to HAIRATI AHMED BACAR, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

37. The Heirs of ALI MRAHATI, deceased assert claims for damages as follows:

A. ALI FATIMA, individually, as heir and as Successor in Interest to ALI MRAHATI, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, ALI FATIMA, is filing this action individually, as heir and as Successor in Interest to ALI MRAHATI, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

38. The Heirs of M'SA SOULE MOHAMED, deceased assert claims for damages as follows:

A. MOINAKOKO MVOUNA, individually, as heir and as Successor in Interest to M'SA SOULE MOHAMED, deceased; MOINAKOKO MVOUNA, as Guardian ad Litem for NM, minor and heir to M'SA SOULE MOHAMED, deceased; M'SA ZAHARIA, TIBA MVOUNA, and DOUDOU SAID MVOUNA, individually, as heirs to M'SA SOULE MOHAMED, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any

other law the court deems to apply.

B. Plaintiff, MOINAKOKO MVOUNA, is filing this action individually, as heir and as Successor in Interest to M'SA SOULE MOHAMED, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, MOINAKOKO MVOUNA, is also filing this action as Guardian ad Litem for NM, minor and heir to M'SA SOULE MOHAMED, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

39. The Heirs of ECHAT MOIRABOU, deceased assert claims for damages as follows:

A. MOHAMED SAID HAMADI, individually, as heir and as Successor in Interest to ECHAT MOIRABOU, deceased; FAISSOILI SAID, individually, as heir to ECHAT MOIRABOU, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MOHAMED SAID HAMADI, is filing this action individually, as heir and as Successor in Interest to ECHAT MOIRABOU, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

40. The Heirs of AFFOUSSOITA SAID, deceased assert claims for damages as follows:

A. MOHAMED SAID HAMADI, individually, as heir and as Successor in Interest to AFFOUSSOITA SAID, deceased; FAISSOILI SAID and SAID HAMMADI AMBALI, individually, as heirs to AFFOUSSOITA SAID, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MOHAMED SAID HAMADI, is filing this action individually, as heir and as Successor in Interest to AFFOUSSOITA SAID, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

C. Plaintiff, MKOUFOUNDI MOEVA ZARIAM, is also filing this action as Guardian ad Litem for SHA, a minor and heir to AFFOUSSOITA SAID, deceased, an Application for Appointment as Guardian ad Litem as required by California *Code of Civil Procedure*, Section 372 has or will be filed with this Court for approval.

41. The Heirs of ABDALLAH MOHAMED SAID, deceased assert claims for damages as follows:

A. FATIMA MMADI, individually, as heirs and as Successor in Interest to ABDALLAH MOHAMED SAID, deceased; ABDALLAH MOHAMED MHADJOU, ABDALLAH MOHAMED IBRAHIM, ADBALLAH MOHAMED MOUINAHADIDJA, ABDALLAH MOHAMED MARIAMA, ABDALLAH MOHAMED RASMIA, and MDAHOMA MMADI, individually, as heirs to ABDALLAH MOHAMED SAID, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code

of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, FATIMA MMADI, is filing this action individually, as heir and as Successor in Interest to ABDALLAH MOHAMED SAID, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

42. The Heirs of TOIYBA AHMED, deceased assert claims for damages as follows:

A. HAKI ASSIATI, individually, as heirs and as Successor in Interest to TOIYBA AHMED, deceased; HAKI ABOUHANIFA, HAKI ALHAMIDI, HAKI ASBAHATI, MOINAFATIMA AHMED, MOHAED AHMED, HAFFI AHMED, and LOUFIA AHMED, individually as heirs to TOIYBA AHMED, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, HAKI ASSIATI, is filing this action individually, as heir and as Successor in Interest to TOIYBA AHMED, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

43. The Heirs of SAID ALI MDAHOMA, deceased assert claims for damages as follows:

A. FATIMA ALI MDAHOMA, individually, as heirs and as Successor in

Interest to SAID ALI MDAHOMA, deceased; FAOUZATI ALI MDAHOMA, and IHIWANI ALI MDAHOMA, individually, as heirs to SAID ALI MDAHOMA, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, FATIMA ALI MDAHOMA, is filing this action individually, as heir and as Successor in Interest to SAID ALI MDAHOMA, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

44. The Heirs of EL-HADADE ABDOU NOUROU, deceased assert claims for damages as follows:

A. MOINAKARIMA ABDOU, individually, as heirs and as Successor in Interest to EL-HADADE ABDOU NOUROU, deceased;, deceased, hereby assert a wrongful death claim for the death of decedent, pursuant to California Code of Civil Procedure Section 377.60, et seq. or any other law the court deems to apply.

B. Plaintiff, MOINAKARIMA ABDOU, is filing this action individually, as heir and as Successor in Interest to EL-HADADE ABDOU NOUROU, deceased and, hereby asserts a survivor's claim on behalf of decedent, pursuant to California Code of Civil Procedure, Sections 377.10, 377.20 and 377.30 et. seq., or any other law the court deems to apply, and thereby succeeds to causes of action that might have been brought by decedent. Plaintiff has or will execute and file a declaration under penalty of perjury as required by California *Code of Civil Procedure*, Section 377.32.

45. Plaintiffs are informed and believe and thereon allege that defendant, INTERNATIONAL LEASE FINANCE CORPORATION (hereinafter referred to as

**"ILFC"**) is and at all times herein mentioned was a corporation duly organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California. Plaintiffs are further informed and believe and thereon allege that defendant, **ILFC** is and at all times herein mentioned was a corporation, regularly doing business in the State of California, including, but not limited to, Los Angeles County, California.

46. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10 and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of such fictitiously-named defendants is tortuously responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages were proximately caused by the acts or omissions of each of them.

47. Defendant and DOES 1-10 are and at all times mentioned herein were the agents, servants and employees and/or joint venturers of their co-defendants and, in doing the things herein alleged, were acting within the course, scope, purpose and authority of said agency, employment, and/or joint venture and as agents, servants and employees acted with the permission and consent of their co-defendants and/or said acts and/or actions were ratified by their co-defendants. That each and every defendant as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every defendant as an agent, servant, employee or joint venturer.

48. At all times herein mentioned, Defendant and DOES 1-10, and each of them, were in the business of designing, manufacturing, fabricating, converting, maintaining, repairing, modifying, assembling, servicing, inspecting, warrantying, advertising, marketing, distributing, selling, buying, leasing, operating, flying and/or chartering aircraft and aircraft component parts, including the **ACCIDENT AIRCRAFT** and its component parts, for use in international commerce, including California, and for use by pilots transporting passengers, as well as others. Defendants knew, or in the exercise of reasonable care should have known, that the **ACCIDENT AIRCRAFT** and its component parts would be used in

the manner for which they were designed and manufactured, including transporting passengers and would be used without inspection for defects in parts, mechanisms or design.

## GENERAL ALLEGATIONS

49. Plaintiffs are informed and believe and thereon allege that, defendant **ILFC** is in the business of owning and leasing aircraft to airlines on a worldwide basis.

50. Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, owned, controlled, leased, operated, serviced and/or maintained that certain 1990 Airbus Model A310-300 aircraft bearing, at the time of the crash, a Yemin registration of 70-ADJ (hereafter "**ACCIDENT AIRCRAFT**").

51. This Complaint brings claims seeking damages under California's survival and wrongful death Statutes by the Plaintiffs and heirs of the decedents who were fare paying passengers killed onboard the **ACCIDENT AIRCRAFT**.

56. Plaintiffs are informed and believe that in approximately September 1999, as part of its Aircraft Lease Services, **ILFC** entered into an Aircraft Lease Agreement with Yemenia Airlines, owned by the Governments of Yemen and Saudi Arabia (Yemen is a 51% owner and the Government of Saudi Arabia owns the other 49%) and headquartered in Yemen.

57. The Yemenia Airlines Lease Agreement entrusted the **ACCIDENT AIRCRAFT** to Yemenia Airlines for use in commercial passenger transportation.

58. Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, as part of its Master Lease Agreements provides that:

A. The title to the **ACCIDENT AIRCRAFT** remains vested in **ILFC**;

B. **ILFC** shall have the right to inspect the **ACCIDENT AIRCRAFT** at any time upon reasonable notice;

C. The **ACCIDENT AIRCRAFT** shall maintain affixed to its airframe and engine at all times identification plates stating that "This Aircraft/Engine is owned by International Lease Finance Corporation";

D. Insurance will be maintained that provides for **ILFC** to be named as an additional insured;

E. To return the **ACCIDENT AIRCRAFT** to **ILFC** in the United States at the end of the lease term;

F. That the lease is being delivered in the State of California and will in all respects be governed and construed in accordance with the laws of the State of California.

59. Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, owned and maintained control of that certain 1990 Airbus Model A310-300 aircraft bearing, at the time of the crash, a Yemin registration of 70-ADJ (hereafter "**ACCIDENT AIRCRAFT**").

60. Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, required by and through the Lease, that YEMENIA:

A. Use the ACCIDENT AIRCRAFT in accordance with applicable laws of the State of Registration and of any country, state, territory or municipality into or over which YEMENIA may operate the aircraft.

B. Maintain and repair the ACCIDENT AIRCRAFT, its engine and parts, in accordance with all Manufacturer's scheduled maintenance, the Aviation Authority's Regulations and in accordance with any other regulations or requirements necessary to maintain a valid Certificate of Airworthiness and for issuance of a Standard Certificate of Airworthiness for transport category aircr5aft issued by the FAA in accordance with FAR Part 21;

C. YEMENIA shall maintain, in English, up-to-date records and historical mainteneance records.

D. YEMENIA shall report monthly and annually, in English, to ILFC regarding the maintenance and technical evaluation reports;

E. ILFC maintains control over inspection of the ACCIDENT AIRCRAFT

and its documentation at any time during the Lease.

61. Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, as part of its Master Lease Agreements provides that:

A. Failure to Maintain and/or Insure the **ACCIDENT AIRCRAFT** are considered default of the Lease;

B. Upon a default of the Lease terms require **YEMENIA** to immediately move the **ACCIDENT AIRCRAFT** to an airport or other location designated by **ILFC**;

C. Upon default, **ILFC** may terminate the lease by taking possession of the **ACCIDENT AIRCRAFT** or by serving notice requiring **YEMENIA** to return the **ACCIDENT AIRCRAFT** to **ILFC** at the location specified by **ILFC**. If **ILFC** takes possession of the **ACCIDENT AIRCRAFT**, it may enter premises where the **ACCIDENT AIRCRAFT** is located as permitted by local law.

D. In the event of a default, **ILFC** may take all steps necessary to deregister the **ACCIDENT AIRCRAFT** in and export the **ACCIDENT AIRCRAFT** from the State of registration.

E. If at any time **YEMENIA** fails to maintain insurance, **ILFC** may require the **ACCIDENT AIRCRAFT** to remain at any airport or (as th3e case may be), proceed to and remain at any airport designated by **ILFC**, until such failure is remedied to **ILFC**'s satisfaction.

62. On June 30, 2009, Plaintiffs' decedents were passengers on the **ACCIDENT AIRCRAFT** and were killed when the **ACCIDENT AIRCRAFT** when it plunged into the Indian Ocean after a failed approach into the Moroni-Prince Said Ibrahim International Airport in Moroni, Comoros.

63. The Comoros Islands lie in the Indian Ocean East of Africa closest to Mozambique and West of Madagascar. Moroni, the capital of the Comoros Islands, is located on Grande Comore (also known as Njazidja) the largest of the four semi-

autonomous islands which make up the Comoros archipelago. The Comoros islands were under French rule until three of the four declared independence in 1975, while the fourth island within the archipelago of Comoros, Mayotte, remained under French control. The Comoros Islands maintain a strong French connection.

64. The Accident flight, for many of the passengers, originated on Monday June 29, 2009 at approximately 8:55 a.m., local time, when a Yemenia Airlines Airbus A330-200 designated as Flight number IY 749, departed Charles de Gaulle International Airport, Paris, France destined for Sana'a, Yemen.

65. Yemen is located on the coast of the Arabian Sea and lies between Saudi Arabia to the North and Ethiopia across the Red Sea to the South. The Comoros Islands are approximately 2,900 kilometers (1,800 miles) South of Yemen.

66. Yemenia Flight IY 749, first flew from Paris to Marseille in Southern France with approximately 67 passengers onboard. While stopped in Marseille, the flight took on additional passengers, including Plaintiffs' decedent, then totaling approximately 100 when it departed Marseille heading directly to Sana'a, Yemen.

67. After arriving in Sana'a, the passengers were caused to deplane and board another Yemenia aircraft, an older model Airbus, an A310-300, registered 70-ADJ, the **ACCIDENT AIRCRAFT**. During this process, additional passengers from various Arab states joined the flight. The change of planes was required because the **ACCIDENT AIRCRAFT** was barred from entering French air space due to serious and long standing maintenance deficiencies for which Yemenia was prohibited from landing this aircraft in France and departing directly to Comoros. To avoid the prohibition, Yemenia brought French and other passengers out of France on an aircraft permitted to fly in French airspace, to be then transferred in Sana'a, unbeknownst to them, onto the **ACCIDENT AIRCRAFT** for the remainder of the flight to the Comoros Islands.

68. The Accident flight, then designated as Flight number IY 626, departed Sana'a at approximately 8:00 p.m. local time headed first on a short flight to Djibouti, located south of Yemen and just across the Red Sea on the Gulf of Aden coast.

69. The final and ill-fated leg of Flight IY 626, departed from Djibouti at approximately 9:45 pm local time for its final destination, a four hour flight to the Moroni-Prince Said Ibrahim International Airport (hereafter the "Moroni Airport") in Comoros.

70. Yemenia Flight IY 626 never reached the Moroni airport. As the **ACCIDENT AIRCRAFT** was approaching the Moroni Airport, Air Traffic Control lost contact with the aircraft at approximately 1:51 a.m. local time. It was discovered that Flight IY 626 crashed into the Indian Ocean, approximately 8 nautical miles from the coast of Grande Comore, on a failed approach to the airport just minutes before landing. All persons onboard perished in the crash excepting one 14 year old girl who miraculously survived.

71. Plaintiffs are informed and believe and thereon allege that, prior to September 1999 and at all material times thereafter, **ILFC** had reason to know and did know or, in the exercise or reasonable diligence should have known, that Yemenia Airlines, was incompetent, unfit, inexperienced and/or reckless in its operation as an air carrier, evidenced by, but not limited to, a long and notorious history of poor maintenance on an epic scale, poor pilot training and total lack of compliance with minimum standards of safety at every level of the company from 1999 to the present, all of which did or should have constituted default of the lease, as more fully set forth below:

A. Since 2004, the state of Yemen and the Yemenia state owned company has violated clauses of the Chicago Convention of December 7, 1944 on international civil aviation. This convention, aimed at providing for the safe and orderly development of civil aviation by the International Civil Aviation Organization, requires compliance by all signatory States, including, specifically requisites that concern aviation safety.

B. Yemen ratified the Chicago Convention on April 17, 1964.

C. The International Civil Aviation Organization (ICAO), established uniformity in aviation standards necessary for safety, reliability, regularity and efficiency of air services through established practices and procedures. In practice, compliance with the Convention is reflected in the implementation and adoption of its Standards and Recommended Practices ("SARPs) that address 18 specific topics.

(1). Licenses;

(2). Air Regulation;

(3). Meteorology;

(4). Aeronautical Charts;

(5). Units of measurement in Air/Ground communications;

(6). Aircraft Operations;

(7). Nationality marks and registration;

(8). Certificates of Airworthiness;

(9). Facilitation;

(10). Aeronautical Telecommunications;

(11). Air Traffic Services;

(12). Search and Rescue;

(13). Accident Investigations;

(14). Airfields;

(15). Aeronautical Information Services;

(16). Aircraft Noise;

(17). Safety and protection of international civil aviation against unlawful acts;

(18). Aviation security of dangerous goods.

D. The ICAO inspectors had visited the Yemenia Airlines facilities in April 2004 to audit the correct application of ICAO standards. The ICAO Inspector's audit revealed noncompliance with many of the 18 uniform standards, including, but not limited to, the following:

(1). The regulation of Yemen is, in all respects, inconsistent with ICAO SARPs standards.

(2). The requisite policies and/or training programs for technical staff have not been established.

(3). The Flight Operations Division suffers from a lack of qualified and experienced inspectors.

(4). A comprehensive system for the certification and supervision of air operators required by Annex 6 has not been established.

(5). The CAMA [Yemen civil aviation] does not comply, in many ways, with the SARPs of Annex 6, Chapter 8 and 11 and Annex 8 regarding the supervision of airworthiness of aircraft and control.

(6). A comprehensive global system for maintenance, maintenance programs and to ensure continuous compliance with the requisites of Annex 6 have not been established.

(7). The Yemenia inspectors responsible for the airworthiness of aircraft are not properly qualified and/or experienced to perform their respective roles as inspectors.

(8). Yemenia's Inspectors lack proper training, its regulations are not properly updated and it's documentation and procedures have not been properly developed.

E. The ICAO audit demonstrated that, at least as of April 2004, inadequate resources had been implemented for aircraft maintenance in clear violation of international safety standards established by ICAO.

F. On July 24, 2008, four years after operational and maintenance failures were cited in the ICAO audit, the European Commission noted Yemenia's non-compliance with air safety, stating in Regulation (EC) No 715 of July 24, 2008:

***"It is clear that the carrier Yemenia - Yemen Airways does not satisfy certain specific safety standards established by the Chicago Convention when it operates within the Community.***

> ***These deficiencies have been identified by the competent authorities of France, Germany and Italy, during ground inspections performed under the SAFA program."***

G. According to the European Commission, the French Civil Aviation Central Office (DGAC) has identified four safety violations in 2005, six violations in 2006, four violations in 2007 and two violations in 2008 on Yemenia company aircraft according to the following reports from the DGAC:

(1). DGAC/F-2005-270; DGAC/F-2005-1291; DGAC/F-2005-471; DGAC / F-2005-1054;

(2). DGAC/F-2006-60; DGAC/F-2006-1465; DGAC/F-2006-1760; DGAC/F-2006-716; DGAC/F-2006-2066; DGAC/F-2006-601;

(3). DGAC / F-2007-1332; DGAC / F-2007-119; DGAC / F-2007-2066; DGAC/ F-2007-1002;

(4). DGAC / F-2008-478; DGAC / F-2008-1129.

H. The Federal Office of German Civil Aviation (LBA) has also detected three safety violations in 2006 and one in 2007 on Yemenia Airlines aircraft.

(1). LBA/D-2006-47; LBA/D-2006-103; LBA/D-2006-157;

(2). LBA/D-2007-477.

I. Additionally, the Authority of the Italian Civil Aviation (ENAC) has also identified three safety violations in 2005, one violation in 2006 and one in 2008 concerning Yemenia Airlines aircraft:

(1). ENAC-IT-2005-51 ; ENAC-IT-2005-218 ; ENAC-IT-2005-648;

(2). ENAC-IT-2006-330;

(3). ENAC-IT-2008-126.

J. The European Commission added that a corrective action plan was submitted on May 26, 2008, based on recommendations made by Airbus, but that it did not in any way solve the detected problems. In particular, serious deficiencies persist in it's safety program, technical operations, ground and flight training, as well as, it's maintenance

and engineering technical library. Also, Yemenia Airlines has been invited by the Commission to provide further clarification regarding the revised corrective action plan.

K. The European Agency of Aviation Safety (EASA) discovered during a February 24, 2009 inspection of the Yemenia Airlines headquarters in Sana'a Yemen, serious maintenance deficiencies resulting in an immediate suspension of the approval No. EASA.145.0177 for it's maintenance program.

L. Following the findings of EASA, the French authorities also suspended the airworthiness certificates of the Yemenia aircraft registered in France, specifically, two Airbus A-310s -registered as F-OHPR and F-OHPS, respectively. The **ACCIDENT AIRCRAFT**, an Airbus A310-300 registered 70-ADJ was registered and provided its certificate of airworthiness in Yemen. As stated above, Yemen and Yemenia Airlines were the focus of continuous monitoring, oversight and audits by the ICAO, DGAC, LBA, the ENAC and EASA resulting in repeated citations for demonstrated deficiencies in air safety.

M. Because Yemenia's aircraft was not permitted to enter French airspace and/or land in France, the decedent was caused to change planes in Sana'a and board The **ACCIDENT AIRCRAFT**, an Airbus A310-300 registered 70-ADJ with a destination of Comoros.

72. Consequently, during the early morning hours of June 30, 2009, the A310-300 owned by **ILFC** and Leased to Yemenia, the **ACCIDENT AIRCRAFT**, crashed at sea on a failed approach to the Moroni Airport killing Plaintiffs' decedents.

73. Plaintiffs are further informed and believe and thereon allege that, two weeks after the accident, the European Commission adopted EC Regulation No. 619/2009 of July 13, 2009 that "[was] taking note of the violations of regulations" applicable to the Yemenia airline and which referred to "official discussions" with this company to assess the compliance of its operations and the maintenance of its aircraft with ICAO standards.

74. The operational, maintenance and safety failures of Yemenia Airlines have resulted in numerous aviation accidents culminating in the subject crash taking the lives of all on board, excepting one. These prior accidents include, but are not limited to, the

following:

A. Plaintiffs are informed and believe that, on or about June 26, 2000, a Boeing 737-200C, registered 70-AQC, operated by Yemenia, during a Yemenia flight destined for Khartoum-Civil Airport (KRT/HSSS) Sudan was involved in a failed landing due to pilot error. This 16 year old Boeing was first flown June 14, 1984. Despite plans to carry out a runway 36 approach, the crew landed straight-in on runway 18. As a result, the aircraft departed the left side of the runway. The nose gear collapsed as it contacted obstructions.

B. Plaintiffs are informed and believe that, on or about January 21, 2001, a Boeing 727-2N8, operated by Yemenia Airlines as Yemenia Flight 448 after departing from Sana'a International Airport (SAH/ODSN) in Yemen, was hijacked due to a lack of security.

C. Plaintiffs are informed and believe that, on or about, August 1, 2001, a Boeing 727-2N8, registered 70-ACW and being operated by Yemenia Airlines, during a flight destined for Asmara, overran the runway. Fortunately, none of the 111 occupants were injured. This Yemenia 22 year old Boeing 737 had its first flight September 17, 1979. The subject flight departed Sana'a International Airport (SAH/ODSN) in Yemen and destined for Asmara International Airport (ASM/HAAY) in Eritrea. As it approached Asmara, the weather was good, however, rain had wet the 3000m/9842ft asphalt runway. After touchdown the aircraft did not decelerate as expected and overran the runway. The main landing gear failed after colliding with a large block of concrete.

D. Plaintiffs are informed and believe that, Yemenia Airlines has been under scrutiny by the European Union and numerous other individual countries due specifically to its inefficient, inept and/or reckless operations. Additional examples of publically available information regarding Yemenia Airlines inability to safely operate commercial flights, include, but are not limited to, the following:

(1) Plaintiffs are informed and believe that, the European Union ("EU"), has raised concerns over Yemenia Airlines ability to safely operate commercial flights within European airspace. Concerns over the deficiencies in Yemenia's maintenance

and engineering operations were looked into. The EU's investigation led to the discovery of "verified evidence of non-compliance with specific safety standards." Reportedly, in May of 2008, Yemenia drew up a corrective plan which was found to still be lacking.

(2) Plaintiffs are informed and believe that, it was reported that 70-ADJ was inspected by the French DGAC in 2007. The French DGAC inspectors reportedly found numerous faults on this aircraft during this inspection. As a result of these safety deficiencies, the French Aviation Authorities reportedly banned this specific aircraft from flying in French airspace due to these safety concerns.

(3) Plaintiffs are informed and believe that, publically available documents also evidence the aviation authorities of Italy and Germany having also raised concerns about Yemenia Airlines ability to safely carry out commercial flights in their respective countries.

(4) Plaintiffs are informed and believe that, publically available reports have also disclosed witnesses to Yemenia Airlines permitting more passengers on board certain of its flights than the available seats with some passengers standing for the flight. Others have reported a lack of seatbelts for all the seated passengers.

75. At all times material hereto, the **ACCIDENT AIRCRAFT** was operated as a common air carrier engaged in the business of transporting fare-paying passengers. As a common air carrier, Yemenia Airlines and, by and through its own negligent entrustment, **ILFC**, owed the highest duty of care to its passengers, including Plaintiffs' decedents who perished onboard the **ACCIDENT AIRCRAFT**.

76. As a result of the foregoing, Plaintiffs' decedents who perished on Flight 626, were forced to endure severe mental anguish, fear of impending death and ultimately suffered severe physical blunt force and asphyxiation injuries which caused their death.

77. As a direct consequence and result of the crash of the **ACCIDENT AIRCRAFT** on June 30, 2009 and the matters herein alleged, Plaintiffs, as the heirs of and successors in interest to decedents, have sustained economic, non-economic and pecuniary damages, together with loss of the future contributions from decedents, the value of personal services,

the loss of the decedents' love, companionship, comfort, affection, society, solace and moral support and/or have suffered mental shock and suffering, wounded feelings, grief and sorrow, the loss of companionship and deprivation of society, loss of decedents' experience, knowledge and judgment in business affairs, and loss of decedents' protection, as well as, loss of inheritance, loss of accumulations to the estate, funeral and burial expenses, property damage and all other damages available by law.

78. Immediately prior to decedents' death and as a direct consequence and result of the matters herein alleged, Plaintiffs' decedents, who perished on the **ACCIDENT AIRCRAFT**, suffered pre-impact fear and terror, physical injury, pain and suffering, property damage and were injured in a personal and pecuniary manner.

79. As a direct consequence and result of the crash of the **ACCIDENT AIRCRAFT** on June 30, 2009, the personal property of Plaintiffs' decedents, who perished onboard Flight 626, was damaged, lost and/or destroyed.

**FIRST CAUSE OF ACTION**

**AGAINST DEFENDANT**

**INTERNATIONAL LEASE FINANCE CORPORATION**

**(NEGLIGENT ENTRUSTMENT ALLEGATIONS)**

80. Plaintiffs incorporate herein by reference paragraphs 1 through 79 inclusive, as if fully set forth at length herein.

81. At all times material hereto, defendant **INTERNATIONAL LEASE FINANCE CORPORATION ("ILFC")** owned, controlled, marketed, distributed, leased, sold, serviced, maintained and repaired the **ACCIDENT AIRCRAFT**.

82. Prior to September 1999 and at all material times thereafter, Yemenia Airlines, was incompetent, unfit, inexperienced and/or reckless in its operation as an air carrier, evidenced by, but not limited to, the following:

A. Those factual allegations set forth at paragraphs 71-75, supra, which

Plaintiffs incorporate herein by reference as if fully set forth at length herein.

B. Plaintiffs are informed and believe that, Yemenia Airlines has been under scrutiny by the European Union and numerous other individual countries due specifically to its inefficient, inept and/or reckless operations. Examples of publically available information regarding the concerns over Yemenia Airlines ability to safely operate commercial flights, includes, but is not limited to, the following:

(1) Plaintiffs are informed and believe that, the European Union ("EU"), has raised concerns over Yemenia Airlines ability to safely operate commercial flights within European airspace. Concerns over the deficiencies in Yemenia's maintenance and engineering operations were looked into. The EU's investigation led to the discovery of "verified evidence of non-compliance with specific safety standards." Reportedly, in May of 2008, Yemenia drew up a corrective plan which was found to still be lacking.

(2) Plaintiffs are informed and believe that the **ACCIDENT AIRCRAFT** was inspected by the French DGAC in 2007 whom reportedly found numerous faults on this aircraft during their inspection. As a result of these safety deficiencies, the French Aviation Authorities banned this specific aircraft from flying in French airspace.

(3) Plaintiffs are informed and believe that, publically available documents also evidence the aviation authorities of Italy and Germany having raised concerns about Yemenia Airlines ability to safely carry out commercial flights in their respective countries.

(4) Plaintiffs are informed and believe that, publically available reports have also disclosed witnesses to Yemenia Airlines permitting more passengers on board certain of its flights than the available seats with some passengers standing for the flight. Others have reported a lack of seatbelts for all the seated passengers.

83. Prior to September 1999 and at all material times thereafter, **ILFC** had reason to know and did know or, in the exercise or reasonable diligence should have known, that Yemenia Airlines, as stated above, was incompetent, unfit, inexperienced and/or reckless in its operation as an air carrier.

84. On or about September 1999 and at all material times thereafter, **ILFC** entrusted to Yemenia Airlines a dangerous instrumentality, the **ACCIDENT AIRCRAFT**.

85. At all material times relevant hereto, Yemenia Airline's operation and maintenance of the **ACCIDENT AIRCRAFT** created a risk of harm to the Plaintiffs' decedents.

86. At all material times relevant hereto, **ILFC** maintained, by and through the lease, control over the **ACCIDENT AIRCRAFT** with respect to maintenance, inspections, operations, training and/or compliance with applicable safety standards.

87. On or about June 30, 2009, Yemenia Airlines, operated the **ACCIDENT AIRCRAFT** in an incompetent, unfit, inexperienced and/or reckless manner, failing to properly follow the established landing pattern for the Moroni-Prince Said Ibrahim In Airport in Comoros, resulting in the aircraft impacting the ocean. As a direct and proximate result, Plaintiffs' decedents lost their life and their heirs suffered severe emotional injuries and resulting damages.

88. The crash of the **ACCIDENT AIRCRAFT** carrying Plaintiffs' decedents onboard, resulting in their death, was caused and contributed to by **ILFC**'s negligent entrustment of the **ACCIDENT AIRCRAFT** to Yemenia Airlines, an airlines that has a long history of maintaining and operating its aircraft, in particular, the **ACCIDENT AIRCRAFT** in an incompetent, unfit, inexperienced and/or reckless manner.

89. The liability sought to be imposed upon **ILFC** is not based upon any vicarious liability, rather, liability is based solely on its ownership of the **ACCIDENT AIRCRAFT**. The liability is based upon a common law claim that the aircraft was carelessly entrusted to a third party.

90. Because ILFC, by the terms of its Lease, maintained control over compliance with maintenance and operational requirements and compliance with required safety standards, ILFC knew or should have known that YEMENIA had failed and was continually failing to comply with such requirements, and, thereby, ILFC failed to comply with its own duty to cause the ACCIDENT AIRCRAFT to be deregistered, exported and returned to ILFC

in Los Angeles, California before anyone could be injured.

91. As a direct result and consequence of the acts and/or omissions of defendants, the **ACCIDENT AIRCRAFT** crashed killing Plaintiffs' decedents. As a direct result thereof, Plaintiffs, as the heirs of decedents, who were fatally injured onboard Yemenia Airlines Flight 626, were injured and damaged as alleged herein.

92. Plaintiffs reallege as though fully set forth at length, and incorporate herein by reference, each and every allegation and statement contained in paragraphs 76 through 79 inclusive, of the General Allegations, above, and charge said allegations to the Defendant complained of in this First Cause of Action.

WHEREFORE, Plaintiffs, as the heirs of decedents who perished onboard Flight 626, pray for judgment against Defendants, and each of them, for damages as follows:

1. Pain and suffering, mental anguish, psychological and emotional distress, and disfigurement of Plaintiffs' decedent prior to his death and for his pre-impact fear of death;
2. Loss of care, comfort, love, society, solace, moral support, companionship, guidance, and services of the decedent to the survivors, beneficiaries and heirs and the resulting grief and sorrow;
3. Loss of support and services in money or in kind;
4. Loss of net accumulations;
5. Loss of earnings and earning capacity;
6. Loss of inheritance;
7. Funeral and burial expenses;
8. Mental shock and suffering, wounded feelings, grief and sorrow;
9. Loss of companionship and deprivation of society;
10. Loss of decedent's experience, knowledge and judgment in business affairs;
11. Loss of decedent's protection;
12. Property damage;

13. Prejudgment interest;

14. Costs of suit; and

15. Any other damages to which Plaintiffs and/or the beneficiaries may be entitled under all applicable laws.

DATED: May 11, 2011

ENGSTROM, LIPSCOMB & LACK

By: ______________________
WALTER J. LACK, ESQ.
MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims for which a jury trial is available, pursuant to Federal Rules of civil Procedure 38(a) and (b).

DATED: May 11, 2011

ENGSTROM, LIPSCOMB & LACK

By: ______________________
WALTER J. LACK, ESQ.
MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

# EXHIBIT 2

P.L. 80-656, CIVIL AIRCRAFT-- LIABILITY OF OWNER
Senate Report No. 80-1363,
May 20, 1948 (To accompany S. 2455)
House Report No. 80-2091,
June 1, 1948 (To accompany S. 2455)
The House Report repeats in substance the Senate Report

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL. EACH COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

House Report No. 80-2091
June 1, 1948

THE Committee on Interstate and Foreign Commerce, to whom was referred the bill (S. 2455) to amend the Civil Aeronautics Act of 1938, as amended, by limiting the liability of certain persons not in possession of aircraft, having considered the same, report favorably thereon without amendment and recommend that the bill do pass.

This bill proposes to insert after section 503 of the Civil Aeronautics Act of 1938 a new section 504, as fol- lows:

Sec. 504. No person having a security interest in, or security title to, any civil aircraft under a contract of conditional sale, equipment trust, chattel or corporate mortgage, or other instrument of similar nature, and no lessor of any such aircraft under a bona fide lease of thirty days or more, shall be liable by reason of such interest or title, or by reason of his interest as lessor or owner of the aircraft so leased, for any injury to or death of persons, or damage to or loss of property, on the surface of the earth (whether on land or water) caused by such aircraft, or by the ascent, descent, or flight of such aircraft or by the dropping or falling of an object therefrom, unless such aircraft is in the actual possession or control of such person at the time of such injury, death, damage, or loss.

Provisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liability for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft. This bill would remove this doubt by providing clearly that such persons have no liability under such circumstances.

The relief thus provided from potential unjust and discriminatory liability is necessary to encourage such persons to participate in the financing of aircraft purchases.

The provisions of present law above referred to are section 1(26) of the Civil Aeronautics Act of 1938 and section 5 of the Uniform Aeronautics Act.

Section 1(26) of the Civil Aeronautics Act of 1938 reads as follows:

(26) 'operation of aircraft' or 'operate aircraft' means the use of aircraft for the purpose of air navigation and includes the navigation of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this Act.

Section 4 of the Uniform Aeronautics Act is in force in at least 10 States [1] and Hawaii. That section reads, in part, as follows:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The owner of every aircraft which is operated over the lands or the waters of this State is absolutely liable for injuries to persons or property on the land or water beneath, caused by the ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured, or of the owner or bailee of the property injured. If the aircraft is leased at the time of the injury to persons or property, both owner and lessee shall be liable, and they may be sued jointly or either or both of them may be sued separately.

This provision thus imposes absolute liability on owners of aircraft for damage caused on the surface of the earth. It is susceptible of a construction which would impose liability upon any person registered as owner, even though he holds title only as security under a mortgage or similar security instrument or as lessor under an equipment trust. If such interpretation were adopted, the security title holder could become liable for extensive damages on the surface caused by the operation of the aircraft. An owner in possession or control of aircraft, either personally or through an agent, should be liable for damages caused. A security owner not in possession or control of the aircraft, however, should not be liable for such damages. This bill would make it clear that this generally accepted rule applies and assures the security owner or lessee, that he would not be liable when he is not in possession or control of the aircraft.

The limitation with respect to leases of 30 days or more, in case of lessors of aircraft, was included for the purpose of confining the section to leases executed as a part of some arrangement for financing purchases of aircraft. Any lease in connection with any such arrangement would almost certainly be for a period in excess of 30 days.

In deciding to approve legislation for the above-stated purposes, the committee has given weight to recommendation No. 34 of the report of the Congressional Aviation Policy Board and to the recommendations of the Civil Aeronautics Board. This proposed legislation is endorsed by the Aircraft Industries Association, representing the manufacturers of aircraft, the Air Transport Association, representing the certificated air carries of the United States, the lending institutions, and the Government departments concerned. It is the conviction of the committee that the bill should be passed to remove one of the obstacles to the financing of purchases of new aircraft.

1 Delaware, Indiana, North Carolina, North Dakota, New Jersey, South Carolina, South Dakota, Tennessee, Vermont, and Wisconsin.

(Note: 1. PORTIONS OF THE SENATE, HOUSE AND CONFERENCE REPORTS, WHICH ARE DUPLICATIVE OR ARE DEEMED TO BE UNNECESSARY TO THE INTERPRETATION OF THE LAWS, ARE OMITTED. OMITTED MATERIAL IS INDICATED BY FIVE ASTERISKS: *****. 2. TO RETRIEVE REPORTS ON A PUBLIC LAW, RUN A TOPIC FIELD SEARCH USING THE PUBLIC LAW NUMBER, e.g., TO(99-495))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 3

H

Circuit Court of Illinois,
County Department, Law Division.
Cook County
Jovy LAYUG, as Independent As Independent Administrator of the Estate of Josefina Layug, Deceased, Plaintiff,
v.
AAR PARTS TRADING, INC., et. al., Defendants.
Nos. 00 L 9599, 02 L 4552, 02 L 4574, 02 L 4559, 02 L 4575, 02 L 4562, 02 L 4576, 02 L 4565, 02 L 4577, 02 L 4566, 02 L 4578, 02 L 4567, 02 L 4579, 02 L 4568, 02 L 4580, 02 L 4569, 02 L 4581, 02 L 4570, 02 L 4582, 02 L 4571, 02 L 4747, 02 L 4572, 02 L 4758, 02 L 4573, 02 L 4761.
May 16, 2003.

Memorandum Opinion and Order on Defendants' Joint Motion to Dismiss Amended Complaint Pursuant to 735 ILCS 5/2-615, 2-619(A)(9) and 13-213(B)

Kathy M. Flanagan, Judge.

## I. FACTUAL BACKGROUND

The Plaintiffs in these consolidated cases filed multi-count amended complaints against the Defendants arising out of the plane crash of Air Philippines Flight 547 in the Philippines, on April 19, 2000. The Defendants are the lessors of the subject aircraft. They seek dismissal of the action arguing that all state law claims are preempted by 49 U.S.C. 44112, which exempts from liability aircraft lessors who only maintain a financial interest in the leased aircraft and who do not actually possess or control it.

Alternatively, the Defendants argue that the pleadings are deficient or the claims stated therein are barred in several respects. First the Defendants argue that the strict product liability claims are untimely pursuant to 735 ILCS 5/13-213(b), the statute of repose, as it has been well over 12 years since the plane was first manufactured, delivered and sold. They also argue that the counts sounding in bailment do not state a cause of action. Further, the Defendants maintain warranty claims fail as the complaints do not have the operative lease agreement attached thereto and the lease agreement's "as-is, where-is" disclaimer therein vitiates the warranty claims. In addition, the Defendants argue that the spoliation claims fail to state a cause of action. Finally, the Defendants contend that count VII in the DeJesus amended complaint, 02 L 4565, sounding in survival, fails to state a cause of action and is duplicative of the prior counts.

The Plaintiffs note in the response that all of the cases in the consolidated action are stayed except for the Layug case, 00 L 9599. Thus, the arguments, as well as this ruling, can only be addressed to the Layug Fifth Amended Complaint. The Plaintiffs first argue that the state law action is not federally preempted With regard to those state claims, the Plaintiffs contend that the strict liability claims are not time-barred. Further, the Plaintiffs contend that the bailment claim is adequately pled. In addition, the Plaintiffs maintain that the operative lease agreement does not apply to the breach of warranty claims as the passengers were not parties to said agreement. Finally, the Plaintiffs maintain that the spoliation claims is also adequately pled.

The Court has read the motion, response and reply, as well as all of the supporting materials tendered therewith.

## *II. COURT'S DISCUSSION AND RULING*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Illinois Appellate Court in the First District in *Retzl[text illegible]* *Pratt and Whitney*, 309 Ill.App.3d 906, 243 Ill.Dec. 313, 723 N.E.2d 345 (1st Dist., 1999), clearly held, based upon an analysis of applicable federal and state law, that section 44112 of the Federal Aviation Act does not preempt state law claims against aircraft lessors. The court there also reconciled the Seventh Circuit's holding in *Matei* v. Cessna Aircraft, 35 F.3d 1142 (7th Cir., 1994), finding that the *Matei* court implicitly rejected federal preemption therein and only held that the state claims were not sufficiently pled. The Defendants' argument with regard to the issue of control of the aircraft is without merit as that was a distinction that had no bearing on the issue of preemption in the applicable case law. Accordingly, the Court here finds that the Plaintiffs' state law claims are not preempted by the Federal Aviation Act.

With regard to the strict liability claim, it is not time-barred. Section 13-213(b) provides for a repose period of 12 years from the date the product was first sold, leased or delivered, or 10 years from the date it was first sold, leased or delivered to the initial consumer. The aircraft in question was leased by the Defendants to Air Philippine in 1999, thus, the action is within the repose period *vis-a-vis* the leasing of it. While the Court finds that the leasing of the craft was within the repose period, the Plaintiffs' argument with respect to the alteration/modification exception of section 13-213 does not apply as there are no allegations that the Defendants altered, changed or modified the craft.

With regard to the warranty claim, neither the Plaintiffs nor the Decedents were parties to the lease agreement and therefore cannot claim any warranty coverage therein. Furthermore, even if it could be argued that they were third-party beneficiaries of the lease agreement, it provided for no warranties at all. However, the br[text illegible] of warranty claims contained in the pleading has nothing to do with the Defendants' lease agreement with the airlines or the lack of warranties contained therein. Instead, they allege that there are implied 4 warranties of fitness and merchantability upon which passengers rely when flying an airplane. However, the allegations contained in the pleading do not support such a claim as they are lacking in specific factual support. Accordingly, the breach of warranty claims are dismissed with leave to re-plead.

While ordinarily the Court does not entertain simultaneously 2-615 and 2-619 motions, the Defendants here have brought them with regard to separate counts. To that end, the Court finds that both the bailment and spoliation counts are adequately pled and state a cause of action in each count.

Based on the foregoing, the Defendants' 2-619(a)(9) Portion of the Motion to Dismiss is denied in part and granted in part, granted only with regard to the dismissal of the breach of warranty claims. However, the breach of warranty claims are dismissed without prejudice and with leave to re-plead. The Defendants' 2-615 Portion of the Motion to Dismiss is denied. The Plaintiff is given twenty-one (21) days from the date hereof, on or before June 6, 2003, to file a Sixth Amended Complaint, and the Defendants are given twenty-one (21) days thereafter, on or before June 27, 2003, to answer or otherwise plead.

ENTER:

<<signature>>

Judge Kathy M. Flanagan

Layug v. AAR Parts Trading, Inc.
2003 WL 25744436 (Ill.Cir. ) (Trial Order )

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Walter J. Lack, Esq. (State Bar #57550)
Mark E. Millard, Esq. (State Bar #175169)
ENGSTROM, LIPSCOMB & LACK
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4107
Tel: (310) 552-3800
Fax: (310) 552-9434
Email: wlack@elllaw.com
Email: mmillard@elllaw.com

Thomas V. Girardi, Esq. (State Bar #36603)
Keith D. Griffin, Esq. (State Bar #204388)
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554
Email: tgirardi@girardikeese.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| MMADI MLATAMOU HASSANATI, individually, as heirs and as Successor in Interest to MOHAMED ABDOU SAID, deceased<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-100,<br><br>Defendants. | CASE NO.: 2:11-CV-02251-MMM-Mn<br>Hon Margaret M. Morrow<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S EXHIBITS FILED IN CONNECTION WITH ITS MOTION TO DISMISS**<br><br>**DATE: August 29, 2011**<br>**TIME: 10:00 A.M.**<br>**CTRM: 780** |

TO THE HONORABLE COURT:

Plaintiffs hereby object to the exhibits proffered by Defendant International Lease Finance Corporation accompanying its Notice of Motion and Motion to Dismiss pursuant to Fed. R. Civ. [sic] 12(b)(6), as follows:

1. Exhibit A, Republic of Yemen Air Transport Sector Review Note.

**Basis of Objection:** Relevance (F.R.E. 402), hearsay and lack of foundation for admissibility of writing (F.R.E. 802, 901 and 1002). No basis for its admission as an official writing or self-authenticating writing has been supplied. Moreover, extrinsic evidence is inappropriate to the scope of this proceeding. *Branch v. Tunnell* 14 F.3d 449 (9th Cir. 1994). To the extent the Note contains opinions and conclusions of its authors, Plaintiffs have had no opportunity to elicit the qualifications of those authors or the facts and data underlying the opinions.

2. Exhibit B, Order granting motion to dismiss in *Ellis v. Flying Boat, Inc.* United States District Court for the Southern District of Florida Case No. 06-20066-CIV-SEITZ/MCALILEY.

**Basis of Objection:** Relevance. That matter alleges different facts and factors, including an admission by plaintiffs that the lessee controlled and operated the aircraft, a different fact pattern than is present here. Moreover, the Supreme Court of Florida has since held that 49 U.S.C. §44112 does not preempt claims for injuries to passengers. Claims of negligent entrustment are unaffected by §44112. *Vreeland v. v. Ferrer*, __ So.3d.__, 2011 WL 2652187 (July 8, 2011).

3. Exhibit C, Commission Regulation No. 273/2010.

**Basis of Objection:** Relevance (F.R.E. 402), lack of foundation, outside the scope of this proceeding. The writing demonstrates nothing of relevance to this

///

///

claim, and in particular, sheds no light on the state of knowledge of ILFC when it entrusted the Airbus to Yemenia 12 years ago.

Respectfully submitted,

DATED: July 18, 2011

ENGSTROM, LIPSCOMB & LACK

By: /s/ Mark E. Millard
WALTER J. LACK, ESQ.
MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA )
) SS
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Boulevard, 12th Floor, Los Angeles, California 90067-4113.

I hereby certify that on July 18, 2011, I caused a true and complete copy of the foregoing document(s) described as:

**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S EXHIBITS FILED IN CONNECTION WITH ITS MOTION TO DISMISS**

to be filed and served on the interested parties in this action by the Court's Electronic Filing System on all counsel in the case with an email address and who are registered as CM/ECF Users and have consented to electronic service.

/s/ Sonia Edwards

SONIA EDWARDS

Walter J. Lack, Esq. (State Bar #57550)
Mark E. Millard, Esq. (State Bar #175169)
ENGSTROM, LIPSCOMB & LACK
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4107
Tel: (310) 552-3800
Fax: (310) 552-9434
Email: wlack@elllaw.com
Email: mmillard@elllaw.com

Thomas V. Girardi, Esq. (State Bar #36603)
Keith D. Griffin, Esq. (State Bar #204388)
GIRARDI & KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel: (213) 977-0211
Fax: (213) 481-1554
Email: tgirardi@girardikeese.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| MMADI MLATAMOU HASSANATI, individually, as heirs and as Successor in Interest to MOHAMED ABDOU SAID, deceased<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-100,<br><br>Defendants. | CASE NO.: 2:11-CV-02251-MMM-Mn<br>Hon Margaret M. Morrow<br><br>**PLAINTIFFS' REQUEST FOR ORAL ARGUMENT IN OPPOSITION TO MOTION TO DISMISS**<br><br>**DATE: August 29, 2011**<br>**TIME: 10:00 A.M.**<br>**CTRM: 780** |

TO THE HONORABLE COURT:

Plaintiffs hereby request that they be permitted to present oral argument in connection with Defendant's Motion to Dismiss pursuant to Fed. Rule. Civ. Proc. 12(b)(6), in support of Plaintiffs Opposition to that Motion.

Respectfully submitted,

DATED: July 18, 2011

ENGSTROM, LIPSCOMB & LACK

By: /s/ Mark E. Millard
WALTER J. LACK, ESQ.
MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

WALTER J. LACK, ESQ. (SBN 57550)
MARK E. MILLARD, ESQ. (SBN 175169)
**ENGSTROM, LIPSCOMB & LACK**
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, CA 90067-4107
Tel.: (310) 552-3800
Fax: (310) 552-9434
Email: wlack@elllaw.com
Email: mmillard@elllaw.com

THOMAS V. GIRARDI, ESQ. (SBN 36603)
KEITH D. GRIFFIN, ESQ. (SBN 204388)
**GIRARDI & KEESE**
1126 Wilshire Boulevard
Los Angeles, California 90017
(213)977-0211; Fax (213) 481-1554
Email: tgirardi@girardikeese.com

Attorneys for Plaintiffs,
**Mmadi Mlatamou Hassanati,**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

MMADI MLATAMOU HASSANATI, individually, as heir and as Successor in Interest to MOHAMED ABDOU SAID, deceased;

Plaintiffs,

vs.

INTERNATIONAL LEASE FINANCE CORPORATION and DOES 1-100,

Defendants.

CASE NO.: **2:11-cv-02251-MMM-MAN**
**Hon. Margaret M. Morrow**

CERTIFICATE OF SERVICE

I hereby certify that on **July 18, 2011** a true and correct copy of **OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV.[sic] 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARK E. MILLARD; OBJECTIONS TO DEFENDANT'S EXHIBITS; and REQUEST FOR ORAL ARGUMENT**

was filed electronically and will be served via Notice of Electronic Filing under the Court's CM/ECF system this 18th day of July, 2011, to all parties with an email address of record, who have consented to electronic service in this action.

*/s/ Sonia Edwards*

SONIA EDWARDS