1  WALTER J. LACK, ESQ. (SBN 57550)
   MARK E. MILLARD, ESQ. (SBN 175169)
2  **ENGSTROM, LIPSCOMB & LACK**
   A Professional Corporation
3  10100 Santa Monica Boulevard, 12th Floor
   Los Angeles, CA  90067-4107
4  Tel.:  (310) 552-3800
   Fax:  (310) 552-9434
5  Email: wlack@elllaw.com
   Email: mmillard@elllaw.com
6
   THOMAS V. GIRARDI, ESQ. (SBN 36603)
7  KEITH D. GRIFFIN, ESQ. (SBN 204388)
   **GIRARDI & KEESE**
8  1126 Wilshire Boulevard
   Los Angeles, California 90017
9  (213)977-0211; Fax (213) 481-1554
   Email: tgirardi@girardikeese.com
10
   Attorneys for Plaintiffs,
11 **Mmadi Mlatamou Hassanati, et al.**

12

13              **UNITED STATES DISTRICT COURT**

14    **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

15

16  MMADI MLATAMOU HASSANATI,        )   CASE NO.: **2:11-cv-02251-MMM-MAN**
    as the personal representative for  )   Hon. Margaret M. Morrow
17  MOHAMED ABDOU SAID, deceased;    )
                                     )   **SECOND AMENDED COMPLAINT**
18  RACHIDA BOUAMRANE, as the        )   **FOR DAMAGES FOR WRONGFUL**
    personal representative for SAID    )   **DEATH**
19  MOHAMED AHMED, deceased,         )

20  ABDOUL MADJID YASMINA, as the    )
    personal representative for          )
21  ABDOUNOUROU EL HAD,              )
    deceased;                        )
22                                   )
    MIKIDACHE ABDOURAHIM, as the     )
23  personal representative for          )
    FAHARDINE MIKIDACHE,             )
24  deceased;                        )
                                     )
25  MOINAHADIDJA ABDOU, as the       )
    personal representative for SAID     )
26  BACAR BADRIA, SAID BACAR         )
    WAEL, SAID BACAR WADIWON,        )
27  and MOHAMED EL ARIF WALIA,       )
    deceased;                        )
28                                   )

354992.1                      1

1   DJAE AHAMADA CHANFI, as the
    personal representative for ANZIZA )
2   BOINA (DJAE), DJAE SAMIAT, )
    DJAE MOUNTASSOUIM, and DJAE )
3   DJURAIDJ, deceased; )

4     )
    RABIATA SAID MOHAMOUD, as )
5   the personal representative for FARID )
    HASSANI, deceased; )
6     )

7   MDAHOMA KASSIM, as the personal )
    representative for MDAHOMA )
8   MARIAMA, deceased; )

9     )
    THINEYA HASSAN, as the personal )
10   representative for MOHAMED )
    ABUBAKAR, deceased; )
11     )

12   SAID BACAR ALI, as the personal )
    representative for HALIMA )
13   MOHAMED, aka HALIMA MADI )
    MISA, deceased; )
14     )

15   SAADATI MOHAMED, as the )
    personal representative for FATIMA )
16   MOHAMED SOILINI, deceased; )

17     )
    DJAE MOHAMED, as the personal )
18   representative for ANLIYA DJAE, )
    deceased; )
19     )

20   BOURHANI ABDALLAH, as the )
    personal representative for ICHATA )
21   RACHID, deceased; )

22   ACHATA ALI, as the personal )
    representative for MOHAMED )
23   HAMIDOU, deceased; )

24     )
    ASSOUMANI HADIDJA, as the )
25   personal representative for OUMOURI )
    ALI, deceased; )
26     )

27   TOUMA HAMIDOU, as the personal )
    representative for ABDILLAH )
28   YOUSSOUF ALI, deceased; )

354992.1

2

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

1

2   MOHAMED MMADI MARIE, as the
personal representative for MMADO

3   CHAHARZADE, MMADI LAILA,
and MMADI HOUSSAMDINE,

4   deceased;

5   MONAFATIMA ATTOUMANI, as the
personal representative for BACAR

6   HOUSSEINE, deceased;

7   THAMARATI SAID ALI, as the
personal representative for ALI

8   MOHAMED TOIBIBOU, deceased;

9

10   ZAKIA MDOIHOMA, as the personal
representative for SAID MMADI,

11   deceased;

12   HIKIMA HASSANE ABDALLAH, as
the personal representative for

13   ABDILLAHI MROIVILI BEDJA aka
ABDILLAH YOUSSOUF BEDJA,

14   deceased;

15   MZALENDRO MMADI, as the
personal representative for HALIMA

16   YOUSSUF, deceased;

17

18   SOIBRIDJAMAL RIDJALI, as the
personal representative for HAMID

19   AHMED, deceased;

20   MOHAMED RACHADI, as the
personal representative for ZALBIA

21   ABDALLAH, deceased;

22

23   AHAMADA IBRAHIMA, as the
personal representative for IBRAHIMA

24   ANNIE ALI, deceased;

25   YOUSSOUF MADI, as the personal
representative for BOUNOU (MADI)

26   NASSIMA, YOUSSOUF RAKIB, and
YOUSSOUF RAMZI, deceased;

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

| | |
|---|---|
| 1 | YOUSSOUFA HADIDJA, as the |
| | personal representative for |
| 2 | YOUSSOUFA DJAMALI , deceased; |
| 3 | |
| | YOUSSOUFA FATIMA, as the |
| 4 | personal representative for |
| | YOUSSOUFA HASSANA, deceased; |
| 5 | |
| 6 | YOUSSOUFA ITRISSO FATIMA, as |
| | the personal representative for |
| 7 | YOUSSOUFA HASSANATI, |
| | deceased; |
| 8 | |
| 9 | YOUSSOUF ANTURIAT, as the |
| | personal representative for |
| 10 | YOUSSOUF MARIAME, deceased; |
| 11 | |
| | ALI FATIMA, as the personal |
| 12 | representative for MOHAMED |
| | AHAMADA and MOHAMED |
| 13 | ABIDA, deceased; |
| 14 | |
| | MCHANGAMA ALI, as the personal |
| 15 | representative for YOUSSOUF HADJI, |
| | deceased; |
| 16 | |
| 17 | AHAMADA ZAFALA, as the personal |
| | representative for MOHAMED |
| 18 | MLINDASSE IBRAHIM, deceased; |
| 19 | |
| | MSA MOINDJIE MARIAMA, as the |
| 20 | personal representative for SAID |
| | AMADA MZE, deceased; |
| 21 | |
| 22 | YASSINE AHMED ABDOU, as the |
| | personal representative for AHMED |
| 23 | ABDOU, deceased; |
| 24 | |
| | SAID OMAR BACAR, as the personal |
| 25 | representative for HAIRATI AHMED |
| | BACAR, deceased; |
| 26 | |
| 27 | ALI FATIMA, as the personal |
| | representative for ALI MRAHATI, |
| 28 | deceased; |

354992.1

4

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

1   MOINAKOKO MVOUNA, as the ⟩
    personal representative for M'SA ⟩
2   SOULE MOHAMED, deceased; ⟩

3   MOHAMED SAID HAMADI, as the ⟩
    personal representative for ECHAT ⟩
4   MOIRABOU, deceased; ⟩

5 ⟩

6   MOHAMED SAID HAMADI, as the ⟩
    personal representative for ⟩
    AFFOUSSOITA SAID, deceased; ⟩
7 ⟩

8   FATIMA MMADI, as the personal ⟩
    representative for ABDALLAH ⟩
9   MOHAMED SAID, deceased; ⟩

10 ⟩

11   HAKI ASSIATI, as the personal ⟩
    representative for TOIYBA AHMED, ⟩
    deceased; ⟩
12 ⟩

13   FATIMA ALI MDAHOMA, as the ⟩
    personal representative for SAID ALI ⟩
14   MDAHOMA, deceased; ⟩

15 ⟩

16   MOINAKARIMA ABDOU, as the ⟩
    personal representative for EL- ⟩
    HADADE ABDOU NOUROU, ⟩
17   deceased; ⟩

18            Plaintiffs, ⟩

19    vs. ⟩

20   INTERNATIONAL LEASE FINANCE ⟩
    CORPORATION and DOES 1-10, ⟩
21 ⟩

22            Defendants. ⟩

23

24       1.     MMADI MLATAMOU HASSANATI, as the personal representative for

25 MOHAMED ABDOU SAID, deceased, assert claims for damages for wrongful death

26 pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court

27 determines apply pursuant to any foreign or domestic laws.

28

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

2.     RACHIDA BOUAMRANE, as the personal representative for SAID MOHAMED AHMED, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

3.     ABDOUL MADJID YASMINA, as the personal representative for ABDOUNOUROU EL HAD, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

4.     MIKIDACHE ABDOURAHIM, as the personal representative for FAHARDINE MIKIDACHE, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

5.     MOINAHADIDJA ABDOU, as the personal representative for SAID BACAR BADRIA, SAID BACAR WAEL, SAID BACAR WADIWON, and MOHAMED EL ARIF WALIA, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

6.     DJAE AHAMADA CHANFI, as the personal representative for ANZIZA BOINA (DJAE), DJAE SAMIAT, DJAE MOUNTASSOUIM, and DJAE DJURAIDJ, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

7.    RABIATA SAID MOHAMOUD, as the personal representative for FARID HASSANI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

8.    MDAHOMA KASSIM, as the personal representative for MDAHOMA MARIAMA, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

9.    THINEYA HASSAN, as the personal representative for MOHAMED ABUBAKAR, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

10.    SAID BACAR ALI, as the personal representative for HALIMA MOHAMED, aka HALIMA MADI MISA, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

11.    SAADATI MOHAMED, as the personal representative for FATIMA MOHAMED SOILINI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

12.    DJAE MOHAMED, as the personal representative for ANLIYA DJAE, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

foreign or domestic laws.

13. BOURHANI ABDALLAH, as the personal representative for ICHATA RACHID, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

14. ACHATA ALI, as the personal representative for MOHAMED HAMIDOU, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

15. ASSOUMANI HADIDJA, as the personal representative for OUMOURI ALI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

16. TOUMA HAMIDOU, as the personal representative for ABDILLAH YOUSSOUF ALI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

17. MOHAMED MMADI MARIE, as the personal representative for MMADO CHAHARZADE, MMADI LAILA, and MMADI HOUSSAMDINE, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

18.     MONAFATIMA ATTOUMANI, as the personal representative for BACAR HOUSSEINE, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

19.     THAMARATI SAID ALI, as the personal representative for ALI MOHAMED TOIBIBOU, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

20.     ZAKIA MDOIHOMA, as the personal representative for SAID MMADI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

21.     HIKIMA HASSANE ABDALLAH, as the personal representative for ABDILLAHI MROIVILI BEDJA aka ABDILLAH YOUSSOUF BEDJA, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

22.     MZALENDRO MMADI, as the personal representative for HALIMA YOUSSUF, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

23.     SOIBRIDJAMAL RIDJALI, as the personal representative for HAMID AHMED, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C.

§§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

24.  MOHAMED RACHADI, as the personal representative for ZALBIA ABDALLAH, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

25.  AHAMADA IBRAHIMA, as the personal representative for IBRAHIMA ANNIE ALI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

26.  YOUSSOUF MADI, as the personal representative for BOUNOU (MADI) NASSIMA, YOUSSOUF RAKIB, and YOUSSOUF RAMZI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

27.  YOUSSOUFA HADIDJA, as the personal representative for YOUSSOUFA DJAMALI , deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

28.  YOUSSOUFA FATIMA, as the personal representative for YOUSSOUFA HASSANA, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

29.   YOUSSOUFA ITRISSO FATIMA, as the personal representative for YOUSSOUFA HASSANATI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

30.   YOUSSOUF ANTURIAT, as the personal representative for YOUSSOUF MARIAME, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

31.   ALI FATIMA, as the personal representative for MOHAMED AHAMADA and MOHAMED ABIDA, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

32.   MCHANGAMA ALI, as the personal representative for YOUSSOUF HADJI, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

33.   AHAMADA ZAFALA, as the personal representative for MOHAMED MLINDASSE IBRAHIM, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

34.   MSA MOINDJIE MARIAMA, as the personal representative for SAID AMADA MZE, deceased, assert claims for damages for wrongful death pursuant to 46

1 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply

2 pursuant to any foreign or domestic laws.

3

4     35.    YASSINE AHMED ABDOU, as the personal representative for AHMED

5 ABDOU, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C.

6 §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant

7 to any foreign or domestic laws.

8

9     36.    SAID OMAR BACAR, as the personal representative for HAIRATI AHMED

10 BACAR, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C.

11 §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant

12 to any foreign or domestic laws.

13

14     37.    ALI FATIMA, as the personal representative for ALI MRAHATI, deceased,

15 assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307

16 et seq. And any other damages the Court determines apply pursuant to any foreign or

17 domestic laws.

18

19     38.    MOINAKOKO MVOUNA, as the personal representative for M'SA SOULE

20 MOHAMED, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C.

21 §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant

22 to any foreign or domestic laws.

23

24     39.    MOHAMED SAID HAMADI, as the personal representative for ECHAT

25 MOIRABOU, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C.

26 §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant

27 to any foreign or domestic laws.

28

354992.1

12

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

40.     MOHAMED SAID HAMADI, as the personal representative for AFFOUSSOITA SAID, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

41.     FATIMA MMADI, as the personal representative for ABDALLAH MOHAMED SAID, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

42.     HAKI ASSIATI, as the personal representative for TOIYBA AHMED, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

43.     FATIMA ALI MDAHOMA, as the personal representative for SAID ALI MDAHOMA, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

44.     MOINAKARIMA ABDOU, as the personal representative for EL-HADADE ABDOU NOUROU, deceased, assert claims for damages for wrongful death pursuant to 46 U.S.C. §§30302, 30306, 30307 et seq. And any other damages the Court determines apply pursuant to any foreign or domestic laws.

45.     Plaintiffs are informed and believe and thereon allege that defendant, INTERNATIONAL LEASE FINANCE CORPORATION (hereinafter referred to as "ILFC") is and at all times herein mentioned was a corporation duly organized and existing

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

under the laws of the State of California with its principal place of business in Los Angeles, California. Plaintiffs are further informed and believe and thereon allege that defendant, **ILFC** is and at all times herein mentioned was a corporation, regularly doing business in the State of California, including, but not limited to, Los Angeles County, California.

46.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10 and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of such fictitiously-named defendants is tortuously responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages were proximately caused by the acts or omissions of each of them.

47.    Defendant and DOES 1-10 are and at all times mentioned herein were the agents, servants and employees and/or joint venturers of their co-defendants and, in doing the things herein alleged, were acting within the course, scope, purpose and authority of said agency, employment, and/or joint venture and as agents, servants and employees acted with the permission and consent of their co-defendants and/or said acts and/or actions were ratified by their co-defendants. That each and every defendant as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every defendant as an agent, servant, employee or joint venturer.

48.    At all times herein mentioned, Defendant and DOES 1-10, and each of them, were in the business of designing, manufacturing, fabricating, converting, maintaining, repairing, modifying, assembling, servicing, inspecting, warrantying, advertising, marketing, distributing, selling, buying, leasing, operating, flying and/or chartering aircraft and aircraft component parts, including the **ACCIDENT AIRCRAFT** and its component parts, for use in international commerce, including California, and for use by pilots transporting

354992.1

14

1   passengers, as well as others. Defendants knew, or in the exercise of reasonable care should

2   have known, that the **ACCIDENT AIRCRAFT** and its component parts would be used in

3   the   manner   for   which   they   were   designed   and   manufactured,   including   transporting

4   passengers and would be used without inspection for defects in parts, mechanisms or design.

5

6                                    **GENERAL ALLEGATIONS**

7         49.    Plaintiffs are informed and believe and thereon allege that, defendant **ILFC** is

8   in the business of owning and leasing aircraft to airlines on a worldwide basis.

9

10        50.    ILFC generates revenue by aircraft leases which "generally provide for the

11  payment of a fixed, periodic rent."  The rental agreement/Operating leases are for a fixed

12  term up to 15 years.  The Subject Lease agreement was for a fixed term.

13

14        51.    ILFC leased, for a fixed term, the Subject Airbus to Yemenia.  The transaction

15  was for a set term with the aircraft scheduled to be returned to ILFC at the end of the fixed

16  lease term.  This was not a sale or financing for the purchase of the aircraft; this was a

17  standard rental agreement.

18

19        52.    Plaintiffs are further informed and believe and thereon allege that, defendant

20  **ILFC**, owned, controlled, leased, rented, operated, serviced and/or maintained that certain

21  1990 Airbus Model A310-300 aircraft bearing, at the time of the crash, a Yemin registration

22  of 70-ADJ (hereafter "**ACCIDENT AIRCRAFT**").

23

24        53.    This Complaint brings claims seeking damages pursuant to DOHSA and any

25  other  foreign  or  domestic  laws  found  to  be  applicable  to  this  case  by  the  Personal

26  Representatives of the decedents who were fare paying passengers killed onboard the

27  **ACCIDENT AIRCRAFT**.

28

354992.1                                        15

54. Plaintiffs are informed and believe that in approximately September 1999, as part of its Aircraft Lease Services, **ILFC** entered into an Aircraft Lease Agreement with Yemenia Airlines, owned by the Governments of Yemen and Saudi Arabia (Yemen is a 51% owner and the Government of Saudi Arabia owns the other 49%) and headquartered in Yemen.

55. The Yemenia Airlines Lease Agreement entrusted the **ACCIDENT AIRCRAFT** to Yemenia Airlines for use in commercial passenger transportation.

56. Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, as part of its Master Lease Agreements provides that ILFC maintains control over the aircraft subject to replevin as follows:

A.  The title to the **ACCIDENT AIRCRAFT** remains vested in **ILFC**;

B.  **ILFC** shall have the right to inspect the **ACCIDENT AIRCRAFT** at any time upon reasonable notice;

C.  The **ACCIDENT AIRCRAFT** shall maintain affixed to its airframe and engine at all times identification plates stating that "This Aircraft/Engine is owned by International Lease Finance Corporation";

D.  Insurance will be maintained that provides for **ILFC** to be named as an additional insured;

E.  To return the **ACCIDENT AIRCRAFT** to **ILFC** in the United States at the end of the lease term;

F.  That the lease is being delivered in the State of California and will in all respects be governed and construed in accordance with the laws of the State of California.

57. Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, owned and maintained control of that certain 1990 Airbus Model A310-300 aircraft

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

bearing, at the time of the crash, a Yemin registration of 70-ADJ (hereafter "**ACCIDENT AIRCRAFT**").

58.   Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, required by and through the Lease, that YEMENIA:

         A.     Use the ACCIDENT AIRCRAFT in accordance with applicable laws of the State of Registration and of any country, state, territory or municipality into or over which YEMENIA may operate the aircraft.

         B.     Maintain and repair the ACCIDENT AIRCRAFT, its engine and parts, in accordance with all Manufacturer's scheduled maintenance, the Aviation Authority's Regulations and in accordance with any other regulations or requirements necessary to maintain a valid Certificate of Airworthiness and for issuance of a Standard Certificate of Airworthiness for transport category aircr5aft issued by the FAA in accordance with FAR Part 21;

         C.     YEMENIA shall maintain, in English, up-to-date records and historical maintenance records.

         D.     YEMENIA shall report monthly and annually, in English, to ILFC regarding the maintenance and technical evaluation reports;

         E.     ILFC maintains control over inspection of the ACCIDENT AIRCRAFT and its documentation at any time during the Lease.

59.   Plaintiffs are further informed and believe and thereon allege that, defendant **ILFC**, as part of its Master Lease Agreements provides that:

         A.     Failure to Maintain and/or Insure the **ACCIDENT AIRCRAFT** are considered default of the Lease;

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

B.  Upon a default of the Lease terms require **YEMENIA** to immediately move the **ACCIDENT AIRCRAFT** to an airport or other location designated by **ILFC**;

C.  Upon default, **ILFC** may terminate the lease by taking possession of the **ACCIDENT AIRCRAFT** or by serving notice requiring **YEMENIA** to return the **ACCIDENT AIRCRAFT** to **ILFC** at the location specified by **ILFC**.  If **ILFC** takes possession of the **ACCIDENT AIRCRAFT**, it may enter premises where the **ACCIDENT AIRCRAFT** is located as permitted by local law.

D.  In the event of a default, **ILFC** may take all steps necessary to deregister the **ACCIDENT AIRCRAFT** in and export the **ACCIDENT AIRCRAFT** from the State of registration.

E.  If at any time **YEMENIA** fails to maintain insurance, **ILFC** may require the **ACCIDENT AIRCRAFT** to remain at any airport or (as th3e case may be), proceed to and remain at any airport designated by **ILFC**, until such failure is remedied to **ILFC**'s satisfaction.

60.  On June 30, 2009, Plaintiffs' decedents were passengers on the **ACCIDENT AIRCRAFT** and were killed when the **ACCIDENT AIRCRAFT** when it plunged into the Indian Ocean after a failed approach into the Moroni-Prince Said Ibrahim International Airport in Moroni, Comoros.

61.  The Comoros Islands lie in the Indian Ocean East of Africa closest to Mozambique and West of Madagascar.  Moroni, the capital of the Comoros Islands, is located on Grande Comore (also known as Njazidja) the largest of the four semi-autonomous islands which make up the Comoros archipelago. The Comoros islands were under French rule until three of the four declared independence in 1975, while the fourth

island within the archipelago of Comoros, Mayotte, remained under French control. The Comoros Islands maintain a strong French connection.

62. The Accident flight, for many of the passengers, originated on Monday June 29, 2009 at approximately 8:55 a.m., local time, when a Yemenia Airlines Airbus A330-200 designated as Flight number IY 749, departed Charles de Gaulle International Airport, Paris, France destined for Sana'a, Yemen.

63. Yemen is located on the coast of the Arabian Sea and lies between Saudi Arabia to the North and Ethiopia across the Red Sea to the South. The Comoros Islands are approximately 2,900 kilometers (1,800 miles) South of Yemen.

64. Yemenia Flight IY 749, first flew from Paris to Marseille in Southern France with approximately 67 passengers onboard. While stopped in Marseille, the flight took on additional passengers, including Plaintiffs' decedent, then totaling approximately 100 when it departed Marseille heading directly to Sana'a, Yemen.

65. After arriving in Sana'a, the passengers were caused to deplane and board another Yemenia aircraft, an older model Airbus, an A310-300, registered 70-ADJ, the **ACCIDENT AIRCRAFT**. During this process, additional passengers from various Arab states joined the flight. The change of planes was required because the **ACCIDENT AIRCRAFT** was barred from entering French air space due to serious and long standing maintenance deficiencies for which Yemenia was prohibited from landing this aircraft in France and departing directly to Comoros. To avoid the prohibition, Yemenia brought French and other passengers out of France on an aircraft permitted to fly in French airspace, to be then transferred in Sana'a, unbeknownst to them, onto the **ACCIDENT AIRCRAFT** for the remainder of the flight to the Comoros Islands.

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

66.     The Accident flight, then designated as Flight number IY 626, departed Sana'a at approximately 8:00 p.m. local time headed first on a short flight to Djibouti, located south of Yemen and just across the Red Sea on the Gulf of Aden coast.

67.     The final and ill-fated leg of Flight IY 626, departed from Djibouti at approximately 9:45 pm local time for its final destination, a four hour flight to the Moroni-Prince Said Ibrahim International Airport (hereafter the "Moroni Airport") in Comoros.

68.     Yemenia Flight IY 626 never reached the Moroni airport. As the **ACCIDENT AIRCRAFT** was approaching the Moroni Airport, Air Traffic Control lost contact with the aircraft at approximately 1:51 a.m. local time. It was discovered that Flight IY 626 crashed into the Indian Ocean, approximately 8 nautical miles from the coast of Grande Comore, on a failed approach to the airport just minutes before landing. All persons onboard perished in the crash excepting one 14 year old girl who miraculously survived.

69.     Plaintiffs are informed and believe and thereon allege that, prior to September 1999 and at all material times thereafter, **ILFC** had reason to know and did know or, in the exercise or reasonable diligence should have known, that Yemenia Airlines, was incompetent, unfit, inexperienced and/or reckless in its operation as an air carrier, evidenced by, but not limited to, a long and notorious history of poor maintenance on an epic scale, poor pilot training and total lack of compliance with minimum standards of safety at every level of the company from 1999 to the present, all of which did or should have constituted default of the lease, as more fully set forth below:

        A.     Since 2004, the state of Yemen and the Yemenia state owned company has violated clauses of the Chicago Convention of December 7, 1944 on international civil aviation. This convention, aimed at providing for the safe and orderly development of civil aviation by the International Civil Aviation Organization, requires compliance by all signatory States, including, specifically requisites that concern aviation safety.

  B. Yemen ratified the Chicago Convention on April 17, 1964.

  C. The International Civil Aviation Organization (ICAO), established uniformity in aviation standards necessary for safety, reliability, regularity and efficiency of air services through established practices and procedures. In practice, compliance with the Convention is reflected in the implementation and adoption of its Standards and Recommended Practices ("SARPs) that address 18 specific topics.

    (1). Licenses;

    (2). Air Regulation;

    (3). Meteorology;

    (4). Aeronautical Charts;

    (5). Units of measurement in Air/Ground communications;

    (6). Aircraft Operations;

    (7). Nationality marks and registration;

    (8). Certificates of Airworthiness;

    (9). Facilitation;

    (10). Aeronautical Telecommunications;

    (11). Air Traffic Services;

    (12). Search and Rescue;

    (13). Accident Investigations;

    (14). Airfields;

    (15). Aeronautical Information Services;

    (16). Aircraft Noise;

    (17). Safety and protection of international civil aviation against unlawful acts;

    (18). Aviation security of dangerous goods.

  D. The ICAO inspectors had visited the Yemenia Airlines facilities in April 2004 to audit the correct application of ICAO standards. The ICAO Inspector's audit

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

revealed noncompliance with many of the 18 uniform standards, including, but not limited to, the following:

(1).  The regulation of Yemen is, in all respects, inconsistent with ICAO SARPs standards.

(2).  The requisite policies and/or training programs for technical staff have not been established.

(3).  The Flight Operations Division suffers from a lack of qualified and experienced inspectors.

(4).  A comprehensive system for the certification and supervision of air operators required by Annex 6 has not been established.

(5).  The CAMA [Yemen civil aviation] does not comply, in many ways, with the SARPs of Annex 6, Chapter 8 and 11 and Annex 8 regarding the supervision of airworthiness of aircraft and control.

(6).  A comprehensive global system for maintenance, maintenance programs and to ensure continuous compliance with the requisites of Annex 6 have not been established.

(7).  The Yemenia inspectors responsible for the airworthiness of aircraft are not properly qualified and/or experienced to perform their respective roles as inspectors.

(8).  Yemenia's Inspectors lack proper training, its regulations are not properly updated and it's documentation and procedures have not been properly developed.

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

1    E.    The ICAO audit demonstrated that, at least as of April 2004, inadequate
2  resources had been implemented for aircraft maintenance in clear violation of international
3  safety standards established by ICAO.

4    F.    On July 24, 2008, four years after operational and maintenance failures
5  were cited in the ICAO audit, the European Commission noted Yemenia's non-compliance
6  with air safety, stating in Regulation (EC) No 715 of July 24, 2008:

7    *"It is clear that the carrier Yemenia - Yemen Airways does not*
8    *satisfy certain specific safety standards established by the*
9    *Chicago Convention when it operates within the Community.*
10   *These deficiencies have been identified by the competent*
11   *authorities of France, Germany and Italy, during ground*
12   *inspections performed under the SAFA program."*

13   G.    According to the European Commission, the French Civil Aviation
14  Central Office (DGAC) has identified four safety violations in 2005, six violations in 2006,
15  four violations in 2007 and two violations in 2008 on Yemenia company aircraft according
16  to the following reports from the DGAC:

17    (1).   DGAC / F-2005-270; DGAC / F-2005-1291; DGAC / F-2005-471;
18           DGAC / F-2005-1054;

19    (2).   DGAC / F-2006-60; DGAC / F-2006-1465; DGAC / F-2006-1760;
20           DGAC / F-2006-716; DGAC / F-2006-2066; DGAC / F-2006-601;

21    (3).   DGAC / F-2007-1332; DGAC / F-2007-119; DGAC / F-2007-
22           2066; DGAC/ F-2007-1002;

23    (4).   DGAC / F-2008-478; DGAC / F-2008-1129.

24   H.    The Federal Office of German Civil Aviation (LBA) has also detected
25  three safety violations in 2006 and one in 2007 on Yemenia Airlines aircraft.

26    (1).   LBA/D-2006-47; LBA/D-2006-103; LBA/D-2006-157;

27    (2).   LBA/D-2007-477.

28

354992.1

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH

—

1         I.    Additionally, the Authority of the Italian Civil Aviation (ENAC) has also

2    identified three safety violations in 2005, one violation in 2006 and one in 2008 concerning

3    Yemenia Airlines aircraft:

4         (1).   ENAC-IT-2005-51 ; ENAC-IT-2005-218 ; ENAC-IT-2005-648;

5         (2).   ENAC-IT-2006-330;

6         (3).   ENAC-IT-2008-126.

7         J.    The European Commission added that a corrective action plan was

8    submitted on May 26, 2008, based on recommendations made by Airbus, but that it did not

9    in any way solve the detected problems. In particular, serious deficiencies persist in it's

10   safety program, technical operations, ground and flight training, as well as, it's maintenance

11   and engineering technical library. Also, Yemenia Airlines has been invited by the

12   Commission to provide further clarification regarding the revised corrective action plan.

13        K.    The European Agency of Aviation Safety (EASA) discovered during a

14   February 24, 2009 inspection of the Yemenia Airlines headquarters in Sana'a Yemen, serious

15   maintenance deficiencies resulting in an immediate suspension of the approval No.

16   EASA.145.0177 for it's maintenance program.

17        L.    Following the findings of EASA, the French authorities also suspended

18   the airworthiness certificates of the Yemenia aircraft registered in France, specifically, two

19   Airbus A-310s -registered as F-OHPR and F-OHPS, respectively. The **ACCIDENT**

20   **AIRCRAFT**, an Airbus A310-300 registered 70-ADJ was registered and provided its

21   certificate of airworthiness in Yemen.  As stated above, Yemen and Yemenia Airlines were

22   the focus of continuous monitoring, oversight and audits by the ICAO, DGAC, LBA, the

23   ENAC and EASA resulting in repeated citations for demonstrated deficiencies in air safety.

24        M.    Because Yemenia's aircraft was not permitted to enter French airspace

25   and/or land in France, the decedent was caused to change planes in Sana'a and board The

26   **ACCIDENT AIRCRAFT**, an Airbus A310-300 registered 70-ADJ with a destination of

27   Comoros.

28

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

70. Consequently, during the early morning hours of June 30, 2009, the A310-300 owned by **ILFC** and Leased to Yemenia, the **ACCIDENT AIRCRAFT**, crashed at sea on a failed approach to the Moroni Airport killing Plaintiffs' decedents.

71. Plaintiffs are further informed and believe and thereon allege that, two weeks after the accident, the European Commission adopted EC Regulation No. 619/2009 of July 13, 2009 that "[was] taking note of the violations of regulations" applicable to the Yemenia airline and which referred to "official discussions" with this company to assess the compliance of its operations and the maintenance of its aircraft with ICAO standards.

72. The operational, maintenance and safety failures of Yemenia Airlines have resulted in numerous aviation accidents culminating in the subject crash taking the lives of all on board, excepting one. These prior accidents include, but are not limited to, the following:

A. Plaintiffs are informed and believe that, on or about June 26, 2000, a Boeing 737-200C, registered 70-AQC, operated by Yemenia, during a Yemenia flight destined for Khartoum-Civil Airport (KRT/HSSS) Sudan was involved in a failed landing due to pilot error. This 16 year old Boeing was first flown June 14, 1984. Despite plans to carry out a runway 36 approach, the crew landed straight-in on runway 18. As a result, the aircraft departed the left side of the runway. The nose gear collapsed as it contacted obstructions.

B. Plaintiffs are informed and believe that, on or about January 21, 2001, a Boeing 727-2N8, operated by Yemenia Airlines as Yemenia Flight 448 after departing from Sana'a International Airport (SAH/ODSN) in Yemen, was hijacked due to a lack of security.

C. Plaintiffs are informed and believe that, on or about, August 1, 2001, a Boeing 727-2N8, registered 70-ACW and being operated by Yemenia Airlines, during a flight destined for Asmara, overran the runway. Fortunately, none of the 111 occupants were injured. This Yemenia 22 year old Boeing 737 had its first flight September 17, 1979. The

1  subject flight departed Sana'a International Airport (SAH/ODSN) in Yemen and destined for
2  Asmara International Airport (ASM/HAAY) in Eritrea.  As it approached Asmara, the
3  weather was good, however, rain had wet the 3000m/9842ft asphalt runway.  After
4  touchdown the aircraft did not decelerate as expected and overran the runway.  The main
5  landing gear failed after colliding with a large block of concrete.

6          D.  Plaintiffs are informed and believe that, Yemenia Airlines has been under
7  scrutiny by the European Union and numerous other individual countries due specifically to
8  its inefficient, inept and/or reckless operations.  Additional examples of publically available
9  information regarding Yemenia Airlines inability to safely operate commercial flights,
10  include, but are not limited to, the following:

11          (1)  Plaintiffs are informed and believe that, the European Union
12  ("EU"), has raised concerns over Yemenia Airlines ability to safely operate commercial
13  flights within European airspace. Concerns over the deficiencies in Yemenia's maintenance
14  and engineering operations were looked into.  The EU's investigation led to the discovery
15  of "verified evidence of non-compliance with specific safety standards." Reportedly, in May
16  of 2008, Yemenia drew up a corrective plan which was found to still be lacking.

17          (2)  Plaintiffs are informed and believe that, it was reported that 70-ADJ
18  was inspected by the French DGAC in 2007. The French DGAC inspectors reportedly found
19  numerous faults on this aircraft during this inspection.  As a result of these safety
20  deficiencies, the French Aviation Authorities reportedly banned this specific aircraft from
21  flying in French airspace due to these safety concerns.

22          (3)  Plaintiffs are informed and believe that, publically available
23  documents also evidence the aviation authorities of  Italy and Germany having also raised
24  concerns about Yemenia Airlines ability to safely carry out commercial flights in their
25  respective countries.

26          (4)  Plaintiffs are informed and believe that, publically available reports
27  have also disclosed witnesses to Yemenia Airlines permitting more passengers on board
28

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

1 certain of its flights than the available seats with some passengers standing for the flight.
2 Others have reported a lack of seatbelts for all the seated passengers.

3

4    73.    At all times material hereto, the **ACCIDENT AIRCRAFT** was operated as a
5 common air carrier engaged in the business of transporting fare-paying passengers. As a
6 common air carrier, Yemenia Airlines and, by and through its own negligent entrustment,
7 **ILFC**, owed the highest duty of care to its passengers, including Plaintiffs' decedents who
8 perished onboard the **ACCIDENT AIRCRAFT**.

9

10    74.    As a result of the foregoing, Plaintiffs' decedents who perished on Flight 626,
11 were forced to endure severe mental anguish, fear of impending death and ultimately suffered
12 severe physical blunt force and asphyxiation injuries which caused their death.

13

14    75.    As a direct consequence and result of the crash of the **ACCIDENT AIRCRAFT**
15 on June 30, 2009 and the matters herein alleged, Plaintiffs, as the heirs of and successors in
16 interest to decedents, have sustained economic, non-economic and pecuniary damages,
17 together with loss of the future contributions from decedents, the value of personal services,
18 the loss of the decedents' love, companionship, comfort, affection, society, solace and moral
19 support and/or have suffered mental shock and suffering, wounded feelings, grief and
20 sorrow, the loss of companionship and deprivation of society, loss of decedents' experience,
21 knowledge and judgment in business affairs, and loss of decedents' protection, as well as,
22 loss of inheritance, loss of accumulations to the estate, funeral and burial expenses, property
23 damage and all other damages available by law.

24

25    76.    Immediately prior to decedents' death and as a direct consequence and result of
26 the matters herein alleged, Plaintiffs' decedents, who perished on the **ACCIDENT**
27 **AIRCRAFT**, suffered pre-impact fear and terror, physical injury, pain and suffering,
28 property damage and were injured in a personal and pecuniary manner.

354992.1

27.

**SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

77.     As a direct consequence and result of the crash of the **ACCIDENT AIRCRAFT** on June 30, 2009, the personal property of Plaintiffs' decedents, who perished onboard Flight 626, was damaged, lost and/or destroyed.

# FIRST CAUSE OF ACTION
## AGAINST DEFENDANT
### INTERNATIONAL LEASE FINANCE CORPORATION
### (NEGLIGENT ENTRUSTMENT ALLEGATIONS)

78.     Plaintiffs incorporate herein by reference paragraphs 1 through 77 inclusive, as if fully set forth at length herein.

79.     At all times material hereto, defendant **INTERNATIONAL LEASE FINANCE CORPORATION ("ILFC")** owned, controlled, marketed, distributed, leased, rented, sold, serviced, maintained and repaired the **ACCIDENT AIRCRAFT**.

80.     Prior to September 1999 and at all material times thereafter, Yemenia Airlines, was incompetent, unfit, inexperienced and/or reckless in its operation as an air carrier, evidenced by, but not limited to, the following:

A.     Those factual allegations set forth at paragraphs 69-73, supra, which Plaintiffs incorporate herein by reference as if fully set forth at length herein.

B.     Plaintiffs are informed and believe that, Yemenia Airlines has been under scrutiny by the European Union and numerous other individual countries due specifically to its inefficient, inept and/or reckless operations. Examples of publically available information regarding the concerns over Yemenia Airlines ability to safely operate commercial flights, includes, but is not limited to, the following:

(1)     Plaintiffs are informed and believe that, the European Union ("EU"), has raised concerns over Yemenia Airlines ability to safely operate commercial

1 flights within European airspace. Concerns over the deficiencies in Yemenia's maintenance

2 and engineering operations were looked into. The EU's investigation led to the discovery

3 of "verified evidence of non-compliance with specific safety standards." Reportedly, in May

4 of 2008, Yemenia drew up a corrective plan which was found to still be lacking.

5         (2)    Plaintiffs are informed and believe that the **ACCIDENT**

6 **AIRCRAFT** was inspected by the French DGAC in 2007 whom reportedly found numerous

7 faults on this aircraft during their inspection. As a result of these safety deficiencies, the

8 French Aviation Authorities banned this specific aircraft from flying in French airspace.

9         (3)    Plaintiffs are informed and believe that, publically available

10 documents also evidence the aviation authorities of Italy and Germany having raised

11 concerns about Yemenia Airlines ability to safely carry out commercial flights in their

12 respective countries.

13         (4)    Plaintiffs are informed and believe that, publically available reports

14 have also disclosed witnesses to Yemenia Airlines permitting more passengers on board

15 certain of its flights than the available seats with some passengers standing for the flight.

16 Others have reported a lack of seatbelts for all the seated passengers.

17

18     81.    Prior to September 1999 and at all material times thereafter, **ILFC** had reason

19 to know and did know or, in the exercise or reasonable diligence should have known, that

20 Yemenia Airlines, as stated above, was incompetent, unfit, inexperienced and/or reckless in

21 its operation as an air carrier.

22

23     82.    On or about September 1999 and at all material times thereafter, **ILFC** entrusted

24 to Yemenia Airlines a dangerous instrumentality, the **ACCIDENT AIRCRAFT**.

25

26     83.    At all material times relevant hereto, Yemenia Airline's operation and

27 maintenance of the **ACCIDENT AIRCRAFT** created a risk of harm to the Plaintiffs'

28 decedents.

354992.1

29

84.     At all material times relevant hereto, **ILFC** maintained, by and through the lease, control over the **ACCIDENT AIRCRAFT** with respect to maintenance, inspections, operations, training and/or compliance with applicable safety standards.

85.     On or about June 30, 2009, Yemenia Airlines, operated the **ACCIDENT AIRCRAFT** in an incompetent, unfit, inexperienced and/or reckless manner, failing to properly follow the established landing pattern for the Moroni-Prince Said Ibrahim In Airport in Comoros, resulting in the aircraft impacting the ocean. As a direct and proximate result, Plaintiffs' decedents lost their life and their heirs suffered severe emotional injuries and resulting damages.

86.     The crash of the **ACCIDENT AIRCRAFT** carrying Plaintiffs' decedents onboard, resulting in their death, was caused and contributed to by **ILFC**'s negligent entrustment of the **ACCIDENT AIRCRAFT** to Yemenia Airlines, an airlines that has a long history of maintaining and operating its aircraft, in particular, the **ACCIDENT AIRCRAFT** in an incompetent, unfit, inexperienced and/or reckless manner.

87.     The liability sought to be imposed upon **ILFC** is not based upon any vicarious liability, rather, liability is based solely on its ownership of the **ACCIDENT AIRCRAFT**. The liability is based upon a common law claim that the aircraft was carelessly entrusted to a third party.

88.     Because ILFC, by the terms of its Lease, maintained control over compliance with maintenance and operational requirements and compliance with required safety standards, ILFC knew or should have known that YEMENIA had failed and was continually failing to comply with such requirements, and, thereby, ILFC failed to comply with its own duty to cause the ACCIDENT AIRCRAFT to be deregistered, exported and returned to ILFC in Los Angeles, California before anyone could be injured.

89.     As a direct result and consequence of the acts and/or omissions of defendants, the **ACCIDENT AIRCRAFT** crashed killing Plaintiffs' decedents. As a direct result thereof, Plaintiffs, as the heirs of decedents, who were fatally injured onboard Yemenia Airlines Flight 626, were injured and damaged as alleged herein.

90.     Plaintiffs reallege as though fully set forth at length, and incorporate herein by reference, each and every allegation and statement contained in paragraphs 76 through 79 inclusive, of the General Allegations, above, and charge said allegations to the Defendant complained of in this First Cause of Action.

WHEREFORE, Plaintiffs, as the Personal Representatives of decedents who perished onboard Flight 626, pray for judgment against Defendants, and each of them, for damages provided by 46 U.S.C. §§30306, 30307 and any other laws foreign or domestic which the Court may find apply, including, but not limited to the following:

1.      Pain and suffering, mental anguish, psychological and emotional distress, and disfigurement of Plaintiffs' decedent prior to his death and for his pre-impact fear of death;

2.      Loss of care, comfort, love, society, solace, moral support, companionship, guidance, and services of the decedent to the survivors, beneficiaries and heirs and the resulting grief and sorrow;

3.      Loss of support and services in money or in kind;

4.      Loss of net accumulations;

5.      Loss of earnings and earning capacity;

6.      Loss of inheritance;

7.      Funeral and burial expenses;

8.      Mental shock and suffering, wounded feelings, grief and sorrow;

9.      Loss of companionship and deprivation of society;

10.     Loss of decedent's experience, knowledge and judgment in business affairs;

354992.1

31

11.  Loss of decedent's protection;

12.  Property damage;

13.  Prejudgment interest;

14.  Costs of suit; and

15.  Any other damages to which Plaintiffs and/or the beneficiaries may be entitled under all applicable laws.

DATED: September  26 , 2011                    ENGSTROM, LIPSCOMB & LACK

By: _____
WALTER J. LACK, ESQ.
MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for all claims for which a jury trial is available, pursuant to Federal Rules of civil Procedure 38(a) and (b).

DATED: September  26 , 2011                    ENGSTROM, LIPSCOMB & LACK

By: _____
WALTER J. LACK, ESQ.
MARK E. MILLARD, ESQ.
Attorneys for Plaintiffs

354992.1

SECOND AMENDED COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH