1  LOCKE LORD LLP
2  Susan J. Welde (SBN: 205401)
   swelde@lockelord.com
3  Patricia Arias Musitano (SBN: 197662)
   pmusitano@lockelord.com
4  300 South Grand Avenue, Suite 2600
5  Los Angeles, CA  90071
   213-485-1500
6

7  Attorneys for Defendant
8  **INTERNATIONAL LEASE FINANCE CORPORATION**

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12  MMADI MLATAMOU HASSANATI, )   CASE NO. 2:11-cv-02251-MMM-MAN
    et al.,                   )
13                            )   Hon. Margaret M. Morrow
14            Plaintiffs,     )
                              )
15     vs.                    )   **DEFENDANT INTERNATIONAL**
16                            )   **LEASE FINANCE CORPORATION'S**
    INTERNATIONAL LEASE FINANCE )  **NOTICE OF MOTION AND**
17  CORPORATION and DOES 1-100, )  **MOTION TO DISMISS BASED ON**
                              )   ***FORUM NON CONVENIENS***
18            Defendants.     )
19                            )   (Filed Concurrently with [Proposed]
20                            )   Order)
                              )
21  _____)

22      **TO THE HONORABLE MARGARET M. MORROW, TO ALL**
23  **PARTIES, AND THEIR COUNSEL OF RECORD:**
24      **PLEASE TAKE NOTICE** that on April 23, 2012 at 10:00 a.m., or as soon
25  thereafter as the matter may be heard in the above-entitled Court, Defendant
26  International Lease Finance Corporation ("ILFC") will bring for hearing before the
27  Honorable Margaret M. Morrow, United States District Judge, in Courtroom No. 780
28

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    of the United States Courthouse, Roybal Building, located at 255 East Temple Street,

2    Los Angeles, CA 90012 , a Motion to Dismiss Based On *Forum Non Conveniens*.

3          ILFC moves to dismiss the Second Amended Complaint on the common law

4    ground of *forum non conveniens* as France is a more appropriate and convenient

5    alternative forum that is adequate and available to Plaintiffs for adjudicating the

6    controversy.  This Motion is based on this Notice of Motion and Motion, the

7    Memorandum of Points and Authorities, the expert declaration filed in support of the

8    Motion, the pleadings, papers and records on file in this case, and such oral argument

9    as may be presented at the hearing.

10         This motion is made following conference of counsel pursuant to local rule 7-3.

11

12

13   Dated:  February 29, 2012              Respectfully submitted,

14                                           LOCKE LORD LLP

15

16                                           By:    s/ Patricia Arias Musitano

17                                                  Susan J. Welde

18                                                  Patricia Arias Musitano
                                             Attorneys for Defendant
19                                           **INTERNATIONAL LEASE FINANCE**

20                                           **CORPORATION**

21                                           Of Counsel:

22                                           Gary W. Westerberg, *pro hac vice*
                                             gwesterberg@lockelord.com
23                                           Matthew J. Kalas, *pro hac vice*
                                             mkalas@lockelord.com
24                                           LOCKE LORD LLP

25                                           111 South Wacker Drive

26                                           Chicago, Illinois 60606

27                                           (312) 443-0700 Phone; (312) 443-0336 Fax

28

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................ 1

II.   BACKGROUND ...................................................................... 4

III.  ARGUMENT............................................................................. 5

    A.    FRANCE IS AN ADEQUATE AND AVAILABLE
        ALTERNATIVE FORUM............................................................ 7

        1.    France is an Available Forum for Plaintiffs' Claims............ 7

        2.    The French Forum is Adequate as it Affords Plaintiffs
            a Potential and Appropriate Remedy.................................... 8

    B.    THE PRIVATE AND PUBLIC INTEREST FACTORS
        HEAVILY FAVOR DISMISSAL ............................................. 9

        1.    The Private Interest Factors Strongly Favor Dismissal......... 10

            (a)    Relative Ease of Access to Sources of Proof ............. 11

            (b)    Residence of the Parties and Witnesses ..................... 13

            (c)    Availability of Compulsory Process for
                Unwilling Witnesses.................................................. 14

            (d)    Costs of Bringing Willing Witnesses and Parties
                 to the Place of Trial .................................................. 15

            (e)    Access to Physical Evidence and Other Sources
                of Proof .................................................................... 15

            (f)    Enforceability of Judgments....................................... 16

            (g)    Other Practical Problems and Considerations............. 16

        2.    The Public Interest Factors Heavily Favor Dismissal .......... 17

            (a)    Administrative Difficulties Flowing from
                Court Congestion....................................................... 18

            (b)    Local Interest in Having the Matter Decided
                Locally ..................................................................... 19

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

i

(c)    Familiarity with Governing Law and
Avoidance of Unnecessary Problems in Conflicts
of Law or Application of Foreign Law ...................... 21

(d)    The Unfairness of Burdening Citizens with
Jury Duty .................................................. 23

IV.    CONCLUSION….. .................................................. 24

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Chang v. Baxter Healthcare Corp.*,
No. 09-2280, 2010 WL 1136521 (7th Cir. Mar. 26, 2010) .................................1

*Clerides v. Boeing Co.*,
534 F. 3d 623 (7th Cir. 2008) .................................................................................1

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*,
918 F. 2d 1446 (9th Cir. 1990) ........................................................................6, 10

*Da Rocha v. Bell Helicopter Textron, Inc.*,
451 F. Supp. 2d 1318 (S.D. Fla. 2006) .................................................................1

*DeAguilar v. Boeing Co.*,
11 F. 3d 55 (5th Cir. 1993) .....................................................................................1

*Esheva v. Siberia Airlines*,
499 F. Supp. 2d 493 (S.D.N.Y. 2007) .............................................................1, 19

*Fredriksson v. Sikorsky Aircraft Corp., Inc.*,
No. 3:08CV450, 2009 WL 2952225 (D. Conn. Sept. 2, 2009) ...........................1

*Gambra v. Int'l Lease Fin. Corp.*,
377 F. Supp. 2d 810 (C.D. Cal. 2005) ..........................................1, 7, 8, 13, 22

*Gschwind v. Cessna Aircraft Co.*,
161 F. 3d 602 (10th Cir. 1998) ........................................................................7, 9

*Gulf Oil v. Gilbert*,
330 U.S. 501 (1947)...........................................................................10, 17, 23

*In re Air Crash at Madrid, Spain, on August 20,2008*,
2011 U.S. Dist. LEXIS 29841, CCH Prod. Liab. Rep. P18,601 (C.D. Cal. 2011) ........................................................................................................................1

*In re Air Crash at Madrid*,
2011 U.S. Dist. LEXIS 62974 (C.D. Cal. 2011) .................................................1

*In re Air Crash Over the Mid-Atlantic on June 1, 2009*,
760 F. Supp. 2d 832 (N.D. Cal. 2010)......................................1, 7, 8, 10, 19, 20

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

*In re Air Crash Over the Mid-Atlantic on June 1, 2009*,
    792 F. Supp. 2d 1090 (N.D. Cal. 2011) ....................................................1, 7, 19

*In re Air Crash Over the Taiwan Straits on May 25, 2002*,
    331 F. Supp. 2d 1176 (C.D. Cal. 2004) ............................1, 7, 8, 9, 13, 18, 20, 22

*Kryvicky v. Scandinavian Airlines Sys.*,
    807 F. 2d 514 (6th Cir. 1986) ...........................................................................1

*Leetsch v. Freedman*,
    260 F. 3d 100 (9th Cir. 2001) ..........................................................................17

*Lleras v. Excelaire Svcs. Inc.*,
    No. 08-3823-cv, 2009 WL 4282112 (2d Cir. Dec. 2, 2009) ...............................1

*Lockman Found. v. Evangelical Alliance Mission*,
    930 F. 2d 764 (9th Cir. 1991) ...................................................................4, 5, 16

*Lueck v. Sundstrand Corp.*,
    236 F. 3d 1137 (9th Cir. 2001) ...........................................1, 6, 11, 12, 13, 20, 22

*Macedo v. Boeing Co.*,
    693 F. 2d 683 (7th Cir. 1982) ..........................................................................20

*Magnin v. Teledyne Cont'l Motors*,
    91 F. 3d 1424 (11th Cir. 1996) ...........................................................7, 9, 14, 15, 21

*Melgares v. Sikorsky Aircraft Corp.*,
    613 F. Supp. 2d 231 (D. Conn. 2009) ...............................................................1

*Nai-Chao v. Boeing Co.*,
    555 F. Supp. 9 (N.D. Cal. 1982) .................................................................11, 12

*Navarrete De Pedrero v. Schweizer Aircraft Corp.*,
    635 F. Supp. 2d 251 (W.D.N.Y. 2009) ..............................................................1

*Pain v. United Techs. Corp.*,
    637 F. 2d 775 (D.C. Cir. 1980) ........................................................................13

*Piper Aircraft v. Reyno*,
    454 U.S. 235 (1981) ...........................................................1, 6, 7, 8, 17, 20, 21

*Satz v. McDonnell Douglas Corp.*,
    244 F. 3d 1279 (11th Cir. 2001) .......................................................................1

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

iv

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
   549 U.S. 422 (2007).......................................................................6, 13

*Van Schijndel v. Boeing Co.*,
   434 F. Supp. 2d 766 (C.D. Cal. 2006)..............1, 4, 10, 11, 12, 13, 16, 17, 19, 23

*Vivendi v. T-Mobile USA, Inc.*,
   586 F. 3d 689 (9th Cir. 2009) ...........................................................23

*Vorbiev v. McDonnell Douglas Helicopters, Inc.*,
   No. C 08-05539, 2009 WL 1765675 (N.D. Cal. June 18, 2009) ........................1

**FEDERAL STATUTES**

49 U.S.C. § 44112.........................................................................3

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

### MEMORANDUM OF POINTS AND AUTHORITIES

3

## I.       INTRODUCTION AND SUMMARY OF ARGUMENT

4          Since the Supreme Court's decision in *Piper Aircraft v. Reyno,* 454 U.S. 235

5    (1981)*,* Federal courts in this Circuit and throughout the country have routinely

6    dismissed claims filed by foreign plaintiffs arising from foreign aviation accidents

7    based on the doctrine of *forum non conveniens*.[1]  This is just such a case.  The instant

8    wrongful death litigation arises out of the June 30, 2009 crash of a French designed

9    and manufactured Airbus A310 aircraft (the "Subject Aircraft"), during Flight IY 626

10   ("Subject Flight"), into the Indian Ocean while on approach to land at Moroni airport

11   on the island of Grand Comoros ("the Accident").

12          The Subject Aircraft was operated by non-party Yemen Airways-Yemenia

13   ("Yemenia"), a Yemen-based airline which exclusively operated and maintained the

14   Subject Aircraft for nearly 10 years prior to the Accident.  Movant, International

15   Lease Finance Corporation ("ILFC") had leased the Subject Aircraft to Yemenia since

16   October 1999, when the Subject Aircraft and its maintenance records were delivered

17   to Yemenia at Bordeaux, France.  There were no U.S. citizens or residents aboard the

18   Subject Flight.

19

20

21   ---

[1] *See e.g. In re Air Crash Over the Mid-Atlantic on June 1, 2009*, 792 F. Supp. 2d 1090 (N.D. Cal. 2011); *In re Air Crash at Madrid, Spain, on August 20,2008*, 2011 U.S. Dist. LEXIS 29841, CCH Prod. Liab. Rep. P18,601 (C.D. Cal. 2011) , reconsideration denied by, in part, granted in part, mod'fd and dismissed by *In re Air Crash at Madrid*, 2011 U.S. Dist. LEXIS 62974 (C.D.Cal. 2011)(appeal pending); *In re Air Crash Over the Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d 832 (N.D.Cal. 2010) ("Courts inside and outside the Ninth Circuit have dismissed on *forum non conveniens* grounds air crash cases brought primarily by foreign Plaintiffs."); *Vorbiev v. McDonnell Douglas Helicopters, Inc.*, No. C 08-05539, 2009 WL 1765675 (N.D. Cal. June 18, 2009); *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766 (C.D. Cal. 2006); *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 827 (C.D. Cal. 2005); *In re Air Crash Over the Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176 (C.D. Cal. 2004); *Lueck v. Sundstrand Corp., 236 F.3d 1137 (9th Cir. 2001).*

*See also Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008) and *Chang v. Baxter Healthcare Corp.*, No. 09-2280, 2010 WL 1136521 (7th Cir. Mar. 26, 2010); *Lleras v. Excelaire Svcs. Inc.*, No. 08-3823-cv, 2009 WL 4282112 (2d Cir. Dec. 2, 2009); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279 (11th Cir. 2001); *DeAguilar v. Boeing Co.*, 11 F.3d 55, 58-59 (5th Cir. 1993); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514 (6th Cir. 1986); *Fredriksson v. Sikorsky Aircraft Corp., Inc.*, No. 3:08CV450, 2009 WL 2952225 (D. Conn. Sept. 2, 2009); *Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251 (W.D.N.Y. 2009); *Melgares v. Sikorsky Aircraft Corp.*, 613 F. Supp. 2d 231 (D. Conn. 2009); *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493 (S.D.N.Y. 2007); *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318 (S.D. Fla. 2006).

*Locke Lord LLP*
*300 South Grand Avenue, Suite 2600*
*Los Angeles, CA, 90071-3119*

The relevant facts are predominately connected to France, where substantial amounts of claims have been filed and are presently pending -- including claims by these very Plaintiffs.[2]  In terms of evidence and witnesses, the Subject Flight departed from Sanaa, Yemen and was en route to the island of Grande Comoros, a former French territory.  The significant majority of the passengers on the Subject Aircraft were either French citizens or residents en route from France.  As noted above, the Subject Aircraft, was designed and manufactured in Europe.  In addition, the French government is conducting an ongoing criminal investigation into the cause of the Accident and the French Bureau d'Enquetes et d'Analyses pour la Securite de l'Aviation Civile ("BEA") has played a substantial role in the official Chicago Convention Annex 13 investigation into the Accident.

Indeed, Plaintiffs' own Second Amended Complaint makes several references to France's interest in their allegations claiming: that "[t]he Comoros Islands maintain a strong French connection"  (ECF Doc. No. 43, Second Amended Complaint ("SAC") ¶61); that many of the passengers began their journeys in France (SAC ¶62); that French authorities previously identified some issue or discrepancy with the Subject Aircraft and/or Yemenia such that the Subject Aircraft was allegedly barred from French air space (SAC ¶65); that Airbus, the French designer and manufacturer of the Subject Aircraft, actively assisted Yemenia in addressing alleged concerns of the European Aviation Safety Association ("EASA") (SAC ¶69(J)); and, that plaintiffs intend to sue Airbus but have not yet  done so (SAC ¶¶46-48).

Where, as here, there is a lack of connection to the United States, suits by foreign plaintiffs arising out of foreign crashes are rarely allowed to proceed in this country as federal precedent holds the convenient forum is that which provides better access to evidence, parties and witnesses.  Here, the connections to France, as

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

---

[2] Alleged beneficiaries of at least 24 of the very same decedents for which the instant claims are asserted have instituted actions in France.  In total there are at least 50 actions on behalf of passengers on the subject flight pending in France with at least 256 claimants.  Delebecque ¶¶3, 14-17.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

compared to California, are unavoidably superior.  Accordingly, California is decidedly not a convenient forum in this case.

The instant foreign Plaintiffs – who do not even have a claim under U.S. law[3] – are unable to show any meaningful distinction from the substantial precedence establishing these claims should be litigated outside the U.S.  Plaintiffs' own allegations thus indisputably confirm the significant connections between France and the Accident.  The evidence regarding causation and damages exists and/or is most easily accessible in France, and not here, which commands the conclusion that these claims should be asserted **in France**.

Federal courts, including those here in the Ninth Circuit, have also regularly and recently held France to be an adequate alternative forum in cases involving aircraft accidents such as this one.  The declaration of French legal expert, Professor Philippe Delebecque, attached hereto as Exhibit A ("Delebecque") and which describes the French legal system, clearly supports this conclusion.  Even if Plaintiffs were to argue there are differences in pre-trial proceedings or substantive law between France and the U.S., such an argument is without merit.  That a foreign forum undoubtedly addresses litigation in its own way does not render such forum inadequate or unavailable.  If it did, there would never be another adequate or available forum under the doctrine.  That some Plaintiffs are Comoran and not French also fails to change the conclusion that France is the proper forum for this litigation.  The claims of these Comoran Plaintiffs – that are already included in the Second Amended Complaint with the French Plaintiffs – can readily and conveniently be brought in France.  Indeed, in France these Plaintiffs will have easy access to non-

---

[3] Plaintiffs have yet to identify the specific foreign law they assert will apply to this matter, despite having filed their Second Amended Complaint seeking relief under foreign law.  As discussed in prior filings with the Court (see e.g. ECF Docs. 24 and 32) California state law does not apply and does not afford a cause of action to plaintiffs.  And, claims against an aircraft lessor are preempted and barred by federal statute 49 U.S.C. §44112.  Further, the Act of State Doctrine and international treaty restricts this Court from finding a foreign airline incompetent to operate aircraft outside the U.S. when the airline has been approved to do so and monitored by a foreign State – here Yemen.  It is a necessary element of plaintiffs' alleged claims that the airline is determined incompetent.  Thus, the doctrinal principle of separation of powers restricts this Court from addressing the merits of plaintiffs' claims, even if they had any that were colorable.

3

parties the Plaintiffs stated they intend to sue, but have not yet done so here, namely Airbus, the French manufacturer of the Accident aircraft.  Nonetheless, it would stretch credulity to consider these Plaintiffs do not want to pursue the airline they have alleged to be incompetent.  In fact, many have already sued the airline, Yemenia – in France.  Courts in the Central District of California have previously observed that plaintiffs splitting their causes of action and pursuing different defendants in different forums, as is being done in this case, is inappropriate and prejudicially creates the risk of multiple, fragmented proceedings and inconsistent results.  *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 780 (C.D. Cal. 2006) (describing the importance of preventing fragmented litigation); *see also Lockman Found. v. Evangelical Alliance Mission*, 930 F. 2d 764, 770 (9th Cir. 1991)(same).

This matter is best litigated in France, an indisputably adequate and available forum, where: the majority of the decedents were citizens, residents, or had significant contact; the aircraft was designed and manufactured; the investigation into the cause of the crash is ongoing; access to evidence is easier and within the power of the foreign court; the public is vastly more interested in the case's outcome; and, there is ongoing litigation to which this matter could be readily joined.

## II.    BACKGROUND

The Subject Flight was operated by Yemenia Airways, the sovereign flagship airline of Yemen.  SAC ¶54.  The Subject Aircraft was designed and built in France by Airbus, a party these Plaintiffs allege they intend to pursue but have not yet sued in the United States.  SAC ¶¶ 46-48.  The Accident aircraft was originally certified as airworthy by French aviation authorities and subsequently Yemeni aviation authorities.  SAC ¶52.  The Plaintiffs have alleged Yemenia – which is not a party to litigation in the U.S. – was incompetent to operate commercial aircraft and that the Yemen government was incompetent to oversee the airline's operations such that it was negligent for defendant ILFC to have leased the Subject Aircraft to the airline.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

4

SAC ¶72(D).  And, significant to this motion, a number of Plaintiffs here have sued
the airline in France.  Delebecque ¶3.

There are no U.S. citizen Plaintiffs or decedents.  The majority of the decedents
in this case were either French citizens or residents en route from France.  The single
survivor of the Accident is French and resides in France and is not a party to this
action.  French naval authorities led the search and recovery efforts and recovered the
wreckage and cockpit voice and flight data recorders ("black boxes"), both of which
were analyzed by the French BEA.  Delebecque ¶13.  France plays a lead role in the
comprehensive investigation into the cause(s) of the Accident pursuant to Annex 13 of
the Chicago Convention. *Id*.  Further, the air transport division of the French national
law enforcement agency, Gendarmerie du Transport Aerien (the "GTA") is
conducting a parallel criminal investigation. Delebecque ¶18.  None of these
investigators are available in the U.S., but all are available in France. *Id*.  All of the
Plaintiffs here are foreign and seek wrongful death damages on behalf of foreign
citizens.  Indeed, Plaintiffs admit to the significant connections to France having pled
exactly that in their Second Amended Complaint and a number of them have instituted
actions in France against the airline.  Delebecque ¶¶3, 14-17; *see also* SAC ¶61-62,
65, 69.

While directed at ILFC, Plaintiffs' allegations, notably their claim that Yemenia
was incompetent to operate the Subject Aircraft, relate directly to Yemenia's
operations into and out of France.  Likewise, Plaintiffs have put the conduct of
Yemenia and its personnel at issue as the proximate cause of the Accident.  Plaintiffs
further contend they seek to hold the French designer and manufacturers of the
Subject Aircraft, Airbus, liable as a proximate cause of the Accident. SAC ¶¶46-48.
None of these parties are in California, but they are in France.

## III.   ARGUMENT

Under the doctrine of *forum non conveniens*, "a federal district court may
dismiss an action on the ground that a court abroad is the more appropriate and

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).  As the Supreme Court has instructed, when foreign plaintiffs bring suit in the U.S., their choice of forum *cannot* be presumed to be based on convenience, for "[w]hen the plaintiff's choice is not its home forum…the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'"  *Id.* at 430; *Piper Aircraft*, 454 U.S. at 255-56.  Accordingly, cases filed by foreign plaintiffs are properly subject to dismissal based on the doctrine of *forum non conveniens*. *Id.*

"Dismissal for forum non conveniens reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem,* 549 U.S. at 429 *citing Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996).  Thus, a *forum non conveniens* dismissal "is a determination that the merits should be adjudicated elsewhere." *Id.* at 432.  "A district court therefore may dispose of an action by a forum non conveniens dismissal…when considerations of convenience, fairness, and judicial economy so warrant." *Id.  Forum non conveniens* dismissal is warranted in this case.

A District Court properly addresses the considerations noted by the U.S. Supreme Court and should dismiss an action based on *forum non conveniens* if (1) there is an adequate alternative forum and (2) the balance of certain private and public interest factors favors dismissal. *Lueck v. Sundstrand Corp.*, 236 F. 3d 1137, 1142-43 (9th Cir. 2001); *see also Piper Aircraft*, 454 U.S. at 256 n. 23; *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F. 2d 1446, 1449 (9th Cir. 1990).  In this case, French civil courts are adequate, available and the balance of private and public interest factors strongly favors France.  Accordingly, France "is the more appropriate and convenient forum for adjudicating the controversy" asserted by these foreign Plaintiffs and arising from this foreign aviation accident.  *Sinochem,* 549 U.S. 425.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

Dismissal of this action in favor of France based on the doctrine of *forum non conveniens* is thus warranted and appropriate.

## A.   FRANCE IS AN ADEQUATE AND AVAILABLE ALTERNATIVE FORUM

The first step of the two-step *forum non conveniens* analysis is to determine whether the proposed alternative forum, here France, is adequate and available to address the litigation.  An alternative forum is considered adequate and available if the defendant is amenable to process and the subject matter of the lawsuit is cognizable there.  *In re Air Crash over the Taiwan Straits*, 331 F. Supp. 2d 1176, 1181 (C.D. Cal. 2004).  Both of these conditions are readily satisfied in this case.

Courts have consistently held that France is an adequate and available alternative forum for wrongful death cases.  *See e.g. In re Aircrash over the Mid-Atlantic on June 1, 2009,* 760 F. Supp. 2d 832, 834 (N.D. Cal. 2010) recon'd denied 792 F. Supp. 2d 1090 842 (N.D. Cal. 2011); *Gschwind v. Cessna Aircraft Co.*, 161 F. 3d 602 (10th Cir. 1998); *Magnin v. Teledyne Cont'l Motors*, 91 F. 3d 1424, 1429 (11th Cir. 1996); *Gambra*, 377 F. Supp. 2d 810 (C.D. Cal. 2005).  There is no reason to conclude differently in this case.  In fact, there are hundreds of claimants, including at least 24 of the instant Plaintiffs, already pursing claims in France against the airline. Delebecque ¶¶3, 14-17.  Thus, France is a patently available and adequate forum for the resolution of wrongful death claims arising out of the subject air crash.  This adequacy and availability of France is further confirmed by the declaration of Defendant's French law expert, Prof. Philippe Delebecque, who describes the jurisdiction, substantive law and procedure in France.

### 1.   France is an Available Forum for Plaintiffs' Claims

A forum's availability for purposes of the *forum non conveniens* analysis is determined by assessing whether "the defendant is amenable to process in the other jurisdiction."  *Piper Aircraft*, 454 U.S. at 265 n. 22 *citing Gulf Oil v. Gilbert*, 330 U.S. 501, 506-507 (1947).  As Professor Delebecque notes, all of these Plaintiffs can bring

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

their claim against ILFC in France.  Delebecque ¶¶19, 27.  Nonetheless, ILFC will also agree to consent to and not raise an objection to the jurisdiction of a French civil court in connection with this matter.  Delebecque ¶28.  Additionally, France is also available for claims against the airline and the aircraft manufacturer.  Delebecque ¶20.  Further, the earliest potentially applicable statute of limitations for claims filed by Plaintiffs in France does not run until 2014, a period of five years from the date of the 2009 crash. Delebecque ¶26.  Even so, ILFC will agree to waive, for a period of 60 days following a dismissal by this Court based on *forum non conveniens,* application of any statute of limitation potentially applicable to a French action. *Id.*

## 2.    The French Forum is Adequate as it Affords Plaintiffs a Potential and Appropriate Remedy

The Ninth Circuit has noted that it is the rare case in which "the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory[] that it is no remedy at all" *In re Air Crash over the Taiwan Straits*, 331 F. Supp. 2d at 1186 *citing Lueck*, 236 F. 3d at 1143 ("The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate. . . . However, it is only in 'rare circumstances . . . where the remedy provided by the alternative forum . . . is so clearly inadequate or unsatisfactory, that it is no remedy at all,' that this requirement is not met," *quoting Lockman Found. v. Evangelical Alliance Mission*, 930 F. 2d 764, 768 (9th Cir. 1991)).  Here, the Central District has also previously determined that French courts are adequate and afford an appropriate remedy in wrongful death claims such as those of the Plaintiffs here.  *Gambra*, 377 F. Supp. 2d at 817.  Other federal courts have likewise found France an adequate alternative forum.  *In re Aircrash Over the Mid-Atlantic*, 760 F. Supp. 2d at 842, recon'd denied by, dismissed by 2011 U.S. Dist. LEXIS 68154 (N.D. Cal., June 15, 2011), *citing Dattner v. Conagra Foods, Inc.*, 91 Fed. Appx. 179, **2 (2d Cir. 2004) (affirming district court dismissal on *forum non conveniens* grounds following

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

conclusion that France was an adequate alternative forum); *Gschwind*, 161 F. 3d at 606-607 (France is an adequate forum); *Magnin*, 91 F. 3d at 1429 (same).

Prof. Delebecque further establishes the adequacy of the French forum in his declaration where he notes French courts can and do: entertain litigation involving the subject matter of this dispute; provide procedural safeguards for the parties; and, award damages as appropriate for categories such as moral and economic damages. Delebecque ¶¶31-32; see also ¶¶4-13. In fact, Plaintiffs have already received interim payments from Yemenia in the course of the French litigation. Delebecque ¶¶14-17. French courts can compel evidence and testimony from party and non-party witnesses, appoint technical experts and consolidate related proceedings. *Id*. Further, if dissatisfied with judgments rendered by the French trial court, Plaintiffs can appeal to an intermediate appellate and then supreme court. Delebecque ¶5. As this Court has previously noted, declarations such as that provided by Prof. Delebecque are sufficient evidence of the adequacy of an alternative forum's law and remedies. *In re Air Crash over the Taiwan Straits*, 331 F. Supp. 2d at 1184.

Accordingly, the civil courts of France are an adequate and available alternative forum for this litigation satisfying the threshold inquiry of *forum non conveniens*.

## B.   THE PRIVATE AND PUBLIC INTEREST FACTORS HEAVILY FAVOR DISMISSAL

The second and final step of the *forum non conveniens* analysis is to balance the private and public interest factors. As established below, French courts have better and in some instances exclusive access to key sources of proof going to the heart of the claims at issue. France further has the far stronger interest in the Accident, these cases, and the significant amounts of claims already pending in France against the airline. Delebecque. ¶¶14-18; 32-35. As such, the balance of the private and public interest factors confirm that trials in this U.S. forum will be oppressive and vexatious to ILFC and out of proportion to any convenience of Plaintiffs proceeding here.

**1.       The Private Interest Factors Strongly Favor Dismissal**

The relevant private interest factors that a Court considers include: (1) relative ease of access to sources of proof; (2) residence of the parties and witnesses; (3) availability of compulsory process for unwilling witnesses; (4) costs of bringing willing witnesses and parties to the place of trial; (5) access to physical evidence and other sources of proof; (6) enforceability of judgments; and, (7) other practical problems that make trial of a case easy, expeditious and inexpensive. *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 775 (C.D. Cal 2006) aff'd 263 Fed. Appx. 555 (9th Cir. 2008) *citing Gulf Oil Corp*, 330 U.S. at 508; *Contract Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F. 2d 1446, 1449 (9th Cir. 1990).  While Plaintiffs theory against ILFC in this case is a claim of negligent entrustment by a lessor, the claims are entirely dependent upon a finding that Yemenia and its crew were the cause of the accident and that this cause was the result of incompetence of which ILFC was aware. *See e.g.* ECF Doc. No. 32, discussion at p. 11, line 14.  In fact, Plaintiffs also allege that the French designer and manufacturer of the subject aircraft was "tortuously responsible in some manner for the occurrences herein alleged and that Plaintiffs' damages were proximately caused by the acts or omissions of each of them."  SAC ¶46.

Nonetheless, the *forum non conveniens* analysis is not limited to whatever evidence Plaintiffs may argue is important to their allegations.  "Plaintiffs argue that the evidence in France is simply not important to their case or to the Defendants. The Court finds this position implausible. The cause of the crash is hotly disputed. It is simply not the case that the evidence in the possession of [the air carrier], Airbus, S.A.S. (which, among other things, designed and manufactured the aircraft and performed all testing of it in France) … is plainly irrelevant to determining whether the crash was caused by one or more defective products or by, for example, pilot negligence." *In re Aircrash Over the Mid-Atlantic*, 760 F. Supp. 2d at 844 n. 9 *citing Piper Aircraft*, 454 U.S. at 259 n. 27 (access to operator's evidence is important);

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    *Lueck*, 236 F. 3d at 1146 (airline and aircraft records and "records regarding the

2    qualifications of the flight crew and their employment" are relevant); *Van Schijndel*,

3    434 F. Supp. 2d at 776 ("maintenance records may well be crucial.")

4        A review of these factors in light of the nature of this case demonstrates that

5    dismissal of Plaintiffs' claims in favor of litigation in France is appropriate.

6                    *(a)    Relative Ease of Access to Sources of Proof*

7        The largest portion, indeed nearly all of the relevant causation and damages

8    evidence is either in France and / or written in French implicating the need for

9    significant translation efforts: the French BEA investigators' analysis into the cause of

10   the crash is in France; the French criminal investigators are in France; the airline that

11   operated the aircraft for nearly 10 years prior to the Accident is already engaged in

12   litigation in France; the aircraft manufacturer is in France; the bulk of the Plaintiffs

13   themselves are in France and litigating there already; and, French is an official

14   language of the Comoros, a former French territory.  Delebecque ¶¶12-13, 34.  The

15   Plaintiffs have also alleged France had barred Yemenia from operating into France

16   and that inspections of Yemenia aircraft there resulted in the alleged ban.  The

17   Plaintiffs also allege that Airbus actively assisted Yemenia in addressing alleged

18   concerns of the EASA.  While ILFC disputes Plaintiffs' allegations, all of this

19   evidence is in France, mostly in French, and central to the Plaintiffs' case or ILFC's

20   defense as a lessor of the aircraft.

21       As already noted, in aviation accident cases such as this one, the important

22   evidence addresses accident causation, damage claims, and government

23   investigations. *See Lueck*, 236 F. 3d at 1146-47; *Van Schijndel*, 434 F. Supp. 2d at

24   778; *Nai-Chao v. Boeing Co.*, 555 F. Supp. 9, 17 (N.D. Cal. 1982).  None of this

25   evidence is in the U.S.  The official Annex 13 investigation in this case remains

26   ongoing, a preliminary report has not even issued.  The only report to date comes from

27   the Yemen embassy in Canada, which notes the French interest and response to this

28   Accident.  *See* ECF Doc. No. 1, Ex. B.  The French have also expended significant

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

11

resources, at least 3 million Euros, in the search and rescue efforts, including the significant efforts to retrieve the "black box" flight data and cockpit voice recorders from the ocean depths and analyze available data in France.  Delebecque ¶13.  Incredibly, a single French girl survived the accident and resides in France.  The French are also engaged in a separate criminal investigation into the crash.  Delebecque ¶18.  Again, none of this evidence is in the U.S.  As Prof. Delebecque notes, all of this evidence is within the jurisdictional reach of the French civil courts.  *Id*.  In fact, plaintiffs in France can participate in the criminal investigation and have access to evidence and testimony collected by the criminal and BEA investigators. *Id*.  Perhaps most importantly, if the case continues in the U.S. another analysis into the cause of the accident will have to take place here in the context of this litigation, which is not only costly, but risks inconsistent results.  *Van Schijndel*, 434 F. Supp. 2d at 780 (recognizing the inefficiency of trying aviation accident cases such as this in the U.S. when it is already the subject of a foreign investigation and litigation).  "Actions pending in a foreign forum should be taken into account by courts, as the doctrine of *forum non conveniens* was designed in part to avoid these inconveniences."  *Id*.

The relative ease of access to evidence in France is far superior to that of the U.S. and strongly favors litigation in France.  Indeed, even where some evidence may be in the U.S. (in this matter such evidence is limited to copies of a modicum of lessor records pertaining to a lease agreement), but more evidence is located in the alternative foreign forum and inaccessible in the U.S., dismissal is appropriate.  The Ninth Circuit has addressed this very issue stating, "[i]t is clear that evidence important to this dispute exists in both the United States and New Zealand.  However, because the district court cannot compel production of much of the New Zealand evidence, whereas parties control, and therefore can bring, all the United States evidence to New Zealand, the private interest factors weigh in favor of dismissal."  *Lueck*, 236 F. 3d at 1147.  This recognition was also reiterated in other Central District

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

matters.  *Gambra*, 377 F. Supp.2d at 820 ("Given that a large volume of relevant evidence is either located in France now or can be made available there by agreement, while much of the evidence located in France would be difficult, if not impossible, to obtain in California, the Court finds that this factor favors dismissal");  *In Re Air Crash Over the Taiwan Straits*, 331 F. Supp. 2d at 1199 (recognizing "a majority of the liability evidence regarding the accident aircraft is located in Taiwan.")  Dismissal to France is appropriate because the relative ease of access to sources of evidence is far greater in France.

### *(b)     Residence of the Parties and Witnesses*

Again, none of the Plaintiffs or their decedents are U.S. citizens or residents. The only party that is a U.S. resident is ILFC, the lessor of the subject aircraft.  Airbus designed and manufactured the subject aircraft in France; Plaintiffs have, in fact, expressed their intention to sue this party.  In recent aviation accident litigation, Airbus has asserted that its documents and witnesses pertaining to the design, manufacture, assembly, maintenance, instructions and post-delivery support services for its aircraft are in France, as are their documents and witnesses pertaining to flight manuals that are prepared and updated in France.  *See In re Aircrash over the Mid-Atlantic on June 1, 2009*, Case No. 3:10-MD-2144 CRB, ECF Doc. 140, p. 26.  As the cause of the subject crash is still under investigation, and because a *forum non conveniens* analysis considers "what evidence will bear on the plaintiff's claim or on defenses to the claim" all of these witnesses are relevant to this litigation.  *Sinochem*, 549 U.S. at 432; *see also Lueck*, 236 F. 3d at 1146; *Pain v. United Techs. Corp.*, 637 F. 2d 775, 788 (D.C. Cir. 1980); *Van Schijndel*, 434 F. Supp. 2d at 776-77.  The airline, Yemenia Airways, is already litigating cases in France. Delebecque ¶¶14-17, 32.  And, a significant number of the instant Plaintiffs themselves are prosecuting claims in France against the airline along with hundreds of others. *Id*.  It is likely that most witnesses relevant to determining these Plaintiffs' alleged damages, including the family and friends of the Plaintiffs and decedents, their employers and healthcare

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    providers, are in France and speak French.  None of these witness, except the

2    Plaintiffs themselves, could be compelled to testify in the U.S. nor could any of their

3    documents be subject to compulsory process, but they would be available in France.

4    *See Magnin*, 91 F. 3d at 1430; *see also* Delebecque ¶31.

5            Accordingly, with the French investigators, the aircraft manufacturer

6    representatives, and the airline's witnesses already obligated to be in France, but not

7    in the U.S., this factor favors France.  While some damages witnesses may also be in

8    the Comoros, they are decidedly not in the U.S. and much closer to France.  As French

9    is an official language of the Comoros, and Plaintiffs themselves have pled France's

10   significant connection to the Comoros, this factor heavily favors a French forum.

11   Delebecque ¶34.

12                       *(c)      Availability of Compulsory Process for Unwilling Witnesses*

13           Again, given the pending litigation in France, the predominate number of

14   Plaintiffs and decedents that are or were French citizens or residents, the French

15   manufacturers and French investigators all in France, there is significant potential for

16   a number of witnesses to decline to testify and provide evidence in the U.S.  Neither

17   this Court nor any other U.S. court has compulsory authority over these foreign

18   witnesses. *See Magnin*, 91 F. 3d at 1430.  However, in a French proceeding these

19   witnesses and documents are readily obtainable.  Delebecque ¶¶9-11.  As Prof.

20   Delebecque notes, the ability for a French court to obtain evidence from persons in the

21   Comoros is improved, "[i]n that the Comoros is a French-speaking country, where

22   French law was applied for a long time and, in some matters, still applies…Moreover,

23   diplomatic action should be counted on due to the close political and economic links

24   existing between France and the Comoros Islands."  *Id*. at ¶12.  The United States has

25   no comparable relationship with the Comoros.  Thus, this factor favors dismissal in

26   favor of proceedings in France.

27

28

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

(d)      *Costs of Bringing Willing Witnesses and Parties to the Place of Trial*

France is also the proper forum for this litigation because it will be less costly to obtain the attendance of willing witnesses there than to do so in the United States. This factor is indisputable as the Plaintiffs already have litigation pending in France and all parties and witnesses aside from ILFC appear to reside in France, have existing connections to France, and/or speak French. *See e.g. Magnin*, 91 F. 3d at 1430 (*forum non conveniens* dismissal is appropriate given "cost of attendance of any French witnesses who agree to come to this country to testify."). The liability witnesses are already subject to appear in France due to the pending litigation against the airline (Yemenia), the employees of Airbus are in France, the French investigators are in France, and the French Plaintiffs, their families, friends, employers and healthcare providers are in France. Even as to those witnesses who are not in France, they are far closer to France, than the United States. This factor certainly highlights the inconvenience of this California forum in comparison to France and weighs in favor of dismissal.

(e)      *Access to Physical Evidence and Other Sources of Proof*

The wreckage from the Accident is in the Comoros or elsewhere outside the United States. Further, because the Annex 13 investigation has authority and control over the recovered wreckage and because the French involvement in that investigation is significant,[4] France has better access to physical evidence than the United States. Delebecque ¶13. A French civil court can also produce its own technical analysis with appointed technical experts available to the parties in the litigation, providing an ability to garner access to the Accident's causes superior to that in the United States. *Id*. at ¶31. And, while ILFC's minimal records related to the lease agreement and

---

[4] Namely France's expenditure of nearly 3 million Euros for underwater searches that led to the recovery of the flight data and cockpit voice recorders.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1  appurtenant documents are in the U.S., these are readily transportable to France and

2  ILFC will agree to do so.  This factor, thus, favors dismissal to France.

3                      *(f)      Enforceability of Judgments*

4          The enforceability of a judgment likely cannot favor a particular forum because

5  U.S. judgments are presumed enforceable, but it is a factor rendered neutral where a

6  defendant has "agreed to pay any final, post-appeal judgment awarded against them

7  by a [foreign] court in the refiled action." *Van Schijndel*, 434 F. Supp. 2d at 779.  In

8  this case, ILFC will agree that any final, post-appeal judgment awarded against it by a

9  French court subsequent to this Court's *forum non conveniens* dismissal will be paid

10 or caused to be paid on its behalf, rendering this factor neutral.  *Id.*

11                     *(g)      Other Practical Problems and Considerations*

12         The last of the private interest factors considers all other practical problems

13 related to litigation in the disputed forum.  These other considerations confirm that the

14 private interest factors strongly favor France.  In particular, the fact that Plaintiffs

15 have already split their causes of action and are attempting to proceed against different

16 defendants in different forums is a significant factor supporting dismissal.  Such

17 fragmented litigation creates unacceptable risks of inconsistent rulings and

18 prejudicially burdens the parties with engaging in efforts already under way in other

19 forums.  *Van Schijndel*, 434 F. Supp. 2d at 780 ("allowing Plaintiffs to split their

20 cause of action and sue [defendants] in the United States after having sued [the airline]

21 in Singapore would be prejudicial based on the risks of multiple proceedings,

22 inconsistent results, and forcing Defendants to litigate the accident's cause without

23 [the airline's] presence.")*; see also Lockman Found. v. Evangelical Alliance Mission*,

24 930 F. 2d 764, 770 (9th Cir. 1991) (describing importance of preventing "fragmented

25 litigation"). Indeed, Prof. Delebecque concludes:

26         Furthermore, an action in France would allow one and the same court to

27         examine the actions brought against all of the potentially responsible

28         parties and rule on all issues relating to the liability incurred following

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

the Yemenia accident. In particular, several hundred plaintiffs have already brought actions before the District Court of Aix-en-Provence in order to obtain full compensation from the Yemenia company for the losses resulting from the death of the passengers in the air catastrophe. Delebecque ¶32.

Moreover, these plaintiffs have already obtained interim payments to be applied against final compensation. It is a fact that the liability of the airline, both on the basis of the Montreal Convention and the Warsaw Convention, is at the heart of the French civil proceeding. Delebecque ¶32.

Not only does a *forum non conveniens* dismissal address the problem of splitting causes of action, but also addresses in this case the potentially significant language barriers given the number of French speaking parties involved. *See e.g. Leetsch v. Freedman*, 260 F. 3d 100, 1103 (9th Cir. 2001)(dismissing based on *forum non conveniens* in part because "[t]he German court would be more competent than a United States court to hear the claim because of its familiarity with the German language…"). In short, duplicative and potentially inconsistent proceedings are prevented by dismissing these cases in favor of proceedings in France, where they can be addressed by a French court familiar with the predominate language and already engaged in the process of investigating the unknown cause of the Accident.

## 2.    The Public Interest Factors Heavily Favor Dismissal

The public interest factors the Court considers include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having the matter decided locally; (3) familiarity with governing law and avoidance of unnecessary problems in conflicts of law or application of foreign law; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty." *Van Schijndel*, 434 F. Supp. 2d at 781*; Piper Aircraft*, 454 U.S. at 241; *Gulf Oil Corp.*, 330 U.S. at 508-09. Some courts have noted the public interest factors might alone justify dismissal. *Id.* at 782 *citing Pain v. United Techs. Corp.*, 637 F. 2d 775, 791-92 (D.C. Cir. 1980)("even

when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant *forum non conveniens* dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.")

In this case, not only do the private interest factors strongly support dismissal, but as discussed below the public interest factors also favor dismissal.

(a)      *Administrative Difficulties Flowing from Court Congestion*

The comparative court congestion between the Central District of California and the District Courts of France favors dismissal to France. The Central District remains one of the busiest courts in America and the most recent statistics for the Central District note that civil cases from filing to trial to take on average 19.7 months. *See* Exhibit B, Table C-5, "Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition"[5]; *see also In re Air Crash over the Taiwan Straits*, 331 F. Supp. 2d at 1202("[t]he Central District of California . . . is one of the busiest districts in the country.")  In contrast, Prof. Delebecque notes that cases in the District courts of France take on average 10 to 18 months to complete. Delebecque ¶8. While these figures are not orders of magnitude different, it is important to consider that courts in France are already addressing this litigation, have instituted investigations into the cause of the subject crash and have awarded interim damage payments to the Plaintiffs.  Given the access to evidence issues and the need to translate a majority of the evidence, one would expect these cases would progress on a timeline greater than the "average" Central District case. Further, if these actions are re-filed in France they can be consolidated with the cases pending against Yemenia.  Delebecque ¶¶21, 29.

---

[5] Available at: http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/June2011.aspx

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1    The Central District in *Van Schijndel* has also noted "[i]n addition to imposing a

2  burden on the community whose tax dollars would have to support the expense of

3  trying this case and whose time would be taken up by sitting as jurors, moreover,

4  Plaintiffs' suit would also impede the ability of local litigants to try their cases in this

5  district." *Van Schijndel,* 434 F. Supp. 2d at 782.  In view of the foregoing, and also

6  considering the previously noted French language barriers that will necessitate

7  significant translation costs, this factor favors dismissal.

8                    (b)    *Local Interest in Having the Matter Decided Locally*

9    France's interest in this litigation is significant and its courts are already

10  handling multiple lawsuits against the airline, Yemenia, arising from the subject

11  accident.  Plaintiffs cannot dispute this significant interest.  Plaintiffs cannot dispute

12  the substantial connection France has to the Comoros where the Accident occurred

13  and where French is a national language, nor can they dispute the significant Comoran

14  community residing in France, of which a significant number of the Plaintiffs are

15  members.  Delebecque ¶34.  Plaintiffs cannot dispute the heightened interest the

16  French BEA has demonstrated in respect of the official civil accident investigation

17  and its progress, including the expenditure of 3 million Euros to retrieve the so-called

18  "black boxes."  Delebecque ¶13.  Nor can Plaintiffs dispute that the active French

19  criminal investigation likewise demonstrates the country's substantial interest in this

20  matter. Delebecque ¶18.  These investigations alone demonstrate the obvious interest

21  of France in this litigation.  *See In re Aircrash over the Mid-Atlantic on June 1, 2009,*

22  760 F. Supp. 2d 832, 846 (N.D. Cal. 2010) recon'd denied 792 F. Supp. 2d 1090

23  (N.D. Cal. 2011) ("France's interest is especially obvious here because it is also

24  conducting the official civil investigation and an official criminal investigation")

25  *citing Clerides*, 534 F. 3d at 630 ("Greece and Cyprus have demonstrated interest in

26  the case through their respective criminal investigations into the crash and through

27  Greece's official investigation of the crash"); *see also Esheva v. Siberia Airlines*, 499

28

1   F. Supp. 2d 493, 500 (S.D.N.Y. 2007) (noting Russia's strong interest in accident

2   involving a Russian airline based on Russian technical and criminal investigations).

3          The U.S. has no comparable interest.  There were no U.S. passengers and there

4   are no U.S. Plaintiffs.  As noted in the preceding, the controversy at issue is not

5   limited to the allegations of interest to Plaintiffs; it is also the cause of the crash, the

6   defenses to liability and the involvement of other potential tortfeasors.  *In re Aircrash*

7   *over the Mid-Atlantic on June 1, 2009,* 760 F. Supp. 2d at 844; *cf. Macedo v. Boeing*

8   *Co.*, 693 F. 2d 683, 686 (7th Cir. 1982)("Plaintiffs cannot, by characterizing their

9   causes of action as products liability claims, eliminate the very intimate relation of

10  Portugal to the accident; the products liability claims arise in the context of a

11  Portuguese accident."); *In re Air Crash Over the Taiwan Straits*, 331 F. Supp. 2d at

12  1205 ("[P]laintiffs cannot obscure the strength of the connection between their actions

13  and [Singapore] by characterizing the cases as products liability suits against

14  Boeing.")

15         The involvement in this lawsuit of a California resident defendant is insufficient

16  to overcome France's far stronger interest in this lawsuit.   Indeed, the U.S. Supreme

17  Court and the Ninth Circuit have held that a generalized interest in deterring allegedly

18  tortious conduct of domestic entities is "simply not sufficient to justify the enormous

19  commitment of judicial time and resources that would inevitably be required" to try

20  cases arising from a foreign aviation accident.  *Piper Aircraft*, 454 U.S. at 261; *see*

21  *also Lueck*, 236 F. 3d at 1147("The citizens of Arizona certainly have an interest in

22  the manufacturing of defective products by corporations located in their forum.

23  However, this interest is slight compared to the time and resources the district court in

24  Arizona would expend if it were to retain jurisdiction over this dispute.")

25         Even so, Plaintiffs are ultimately alleging there was a lack of conduct, not in

26  this forum, but in Yemen such that ILFC did not usurp the role of a foreign Civil

27  Aviation Authority and stop a properly licensed foreign air carrier from operating

28  properly licensed aircraft in a foreign country.  Yet, this theory is the only part of

**Locke Lord LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA, 90071-3119**

Plaintiffs' negligent entrustment claim that potentially connects this case to the U.S. The balance of this cause of action requires Plaintiffs to prove what happened, the incompetency of the airline and the subject pilots, and that this incompetence was a proximate cause of the accident. All of the proof necessary to support such claims (which ILFC denies) is outside the U.S. Regardless, the competency of the foreign airline, here Yemenia, that is necessarily part of Plaintiffs' allegations, is already at issue in France. This case involves foreign Plaintiffs suing for damages arising from a foreign accident involving a foreign-built and operated product – yet Plaintiffs have not named the French product designer or manufacturer and are suing the foreign operator in France. These Plaintiffs have tried to make a claim against a lessor to serve as an anchor to U.S. jurisdiction for litigation over a decidedly foreign matter. The U.S. Supreme Court has noted that allowing suits such as these to proceed in the U.S. serves to make, "American courts, which are already extremely attractive to foreign plaintiffs,…even more attractive" and cause the "flow of litigation into the United States [to] increase and further congest already crowded courts." *Piper Aircraft*, 454 U.S. at 252.

France's superior interest in this litigation is not reasonably disputed. Accordingly, this public interest factor strongly favors dismissal.

> (c)     *Familiarity with Governing Law and Avoidance of Unnecessary Problems in Conflicts of Law or Application of Foreign Law*

This Court has previously determined that the Death on the High Seas Act ("DOHSA") provides the exclusive basis for these Plaintiffs to even file a suit in the U.S. In response, Plaintiffs have now alleged they have a claim under unspecified foreign law. Presumably, most of these Plaintiffs are referring to French law, or perhaps Comoran law, itself based significantly on French law as a former French territory where French is the national language. Either way, France is clearly the better forum to address such claims in comparison to the U.S. *See e.g. Magnin*, 91 F.

1   3d at 1430 ("Far better that the case be tried in France by one or more jurists as

2   familiar with French law as we are unfamiliar with it.").

3       Regardless, the *forum non conveniens* doctrine in a case such as this is merely

4   concerned with the potential for having to address choice of law problems and the

5   potential need to apply foreign law.  "The purpose of a choice of law inquiry in a

6   forum non conveniens analysis is to determine if one of these statutes [requiring

7   venue] would apply." *Lueck*, 236 F. 3d at 1148; *In Re Air Crash Over the Taiwan*

8   *Straits*, 331 F. Supp. 2d at 1207.  As DOHSA does not require venue in the United

9   States, a choice of law determination is not necessary.  *Lueck*, 236 F. 3d 1148.  Here,

10   with Plaintiffs alleging they have a foreign law claim but not even identifying what

11   that foreign law is, this public interest factor favors dismissal.  *Gambra*, 377 F. Supp.

12   2d at 825 ("Generally, the need to apply foreign law favors dismissal") *citing Piper*

13   *Aircraft*, 454 U.S. at 260 (*citing Gulf Oil*, 330 U.S. 501).

14       In order to make the complex admiralty choice of law analysis under DOHSA,

15   numerous factors addressing the foreign and U.S. interests are weighed.[6]  Not unlike

16   the foregoing balancing of the private and public interest factors itself, this

17   governmental interest comparison clearly does not favor U.S. interests.  The Subject

18   Aircraft was registered in and thus flying the flag of Yemen and was operated by that

19   country's state-owned carrier based in Yemen.  The Accident occurred in the Indian

20   Ocean near Comoros and the Plaintiffs are mostly French and perhaps Comoran.  The

21   Plaintiffs did not purchase their tickets in the U.S.; most presumably did so in France,

22   Comoros or Yemen.  As detailed above, the French forum is accessible to the

23   Plaintiffs and the only connection to the U.S. is that ILFC is here.  Additionally,

24

25

26   [6] *Gambra*, 377 F. Supp. 2d at 827 n. 17 ("As the *Taiwan Straits* court noted, the factors considered in applying admiralty
law include the following: "(1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the
injured seaman; (4) the allegiance of the defendant shipowner; (5) the place where the contract of employment was
27   made; (6) the inaccessibility of the foreign forum; and (7) the law of the forum" as well as "the shipowner's base of
operations." *Taiwan Straits* at 1209 (*citing Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and
28   *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970))).

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

22

France is naturally familiar with its own law and certainly more so with French-based Comoran law than the U.S.

Accordingly, as it is likely that some foreign law may apply as the Plaintiffs themselves have generally alleged, this factor weighs in favor of dismissal.

*(d)    The Unfairness of Burdening Citizens with Jury Duty*

The final public interest factor to consider, the burden associated with trying claims of over 50 decedents with over 300 alleged beneficiaries, favors dismissal to France. As noted above, this Court remains one of the busiest courts in the federal system. See Ex. B. The potential need of empanelling juries for these trials and the prospective costs to this judicial district, this Court, and the taxpayers ultimately paying for same favors dismissal.[7] *Vivendi v. T-Mobile USA, Inc.*, 586 F. 3d 689, 696 (9th Cir. 2009)("[t]he burden on local courts and juries unconnected to the case and the cost of resolving…dispute[s] unrelated to the forum…favors dismissal"); *Gulf Oil*, 330 U.S. at 508-509 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.")

Certainly, these claims will create burdens wherever tried, but these burdens should be those of the forum with the greater interest in the litigation, here France. "As the Supreme Court has noted, '[a]dministrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. . . . There is a local interest in having localized controversies decided at home.'" *Van Schijndel*, 434 F. Supp. 2d at 784 *citing Gulf Oil*, 330 U.S. at 508-509. This is particularly true in this case given the significant resources France has already invested into determining the cause of the Accident and the significant amount of litigation pending against Yemenia in France.

_____

[7] While a claim in admiralty under DOHSA does not provide Plaintiffs with a jury, they have still requested one and so defendants address this factor accordingly. Nonetheless, the burdens attendant on this particular Court are only incensed by the potential need to conduct bench trials addressing issues that are already before French courts.

ILFC'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

## IV.   CONCLUSION

This case is far more connected to France than the U.S.  The Plaintiffs' own allegations demonstrate the significant connection to France and coupled with the balancing of the private and public interest factors these connections confirm these claims should be dismissed for re-filing in France under the doctrine of *forum non conveniens*.  Consistent with the substantial precedence of the Supreme Court, Ninth Circuit, Central District of California and other federal courts throughout the U.S., France provides far better access to evidence and witnesses and permits the forum with far greater interest in the accident to address litigation arising from it.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

1       Accordingly, ILFC respectfully requests this Court to dismiss Plaintiffs' claims

2   based on the doctrine of *forum non conveniens* in favor of re-filing in France.[8]

3

4   Dated:  February 29, 2012           Respectfully submitted,

5                                       LOCKE LORD LLP

6

7                                       By:   s/ Patricia Arias Musitano

8                                           Susan J. Welde

9                                           Patricia Arias Musitano

10                                    Attorneys for Defendant

                                  **INTERNATIONAL LEASE FINANCE**

11                                      **CORPORATION**

12                                      Of Counsel:

13                                      Gary W. Westerberg, *pro hac vice*

14                                      gwesterberg@lockelord.com

                                  Matthew J. Kalas, *pro hac vice*

15                                      mkalas@lockelord.com

16                                      LOCKE LORD LLP

                                    111 South Wacker Drive

17                                      Chicago, Illinois 60606

18                                      (312) 443-0700 Phone; (312) 443-0336 Fax

19

20

21

22

23

24

25

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-3119

---

26  [8] Should the court deem conditions of dismissal appropriate, ILFC will consent to the following: (1) to submit to the jurisdiction of a French Civil Court in respect of actions re-filed there by these plaintiffs; (2) toll any statute of

27  limitations that might apply to these re-filed claims for a period of 60 days after dismissal by this Court; (3) make available in France in such re-filed actions upon appropriate request of the French civil courts any evidence and

28  witnesses in ILFC's possession, custody and control; and, (4) subject to all available rights of appeal, pay or cause to be paid on their behalf any final money judgment awarded against ILFC by a French civil court in such re-filed actions.